BOTTINI & BOTTINI, INC.
Francis A. Bottini, Jr. (SBN 175783)
    fbottini@bottinilaw.com
Albert Y. Chang (SBN 296065)
    achang@bottinilaw.com
7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone: (858) 914-2001
Facsimile:   (858) 914-2002

*Counsel for John Hancock, Shashank Bagul, John Spadaro,*
*Dr. Mustapha Hotait, and Marco Starace and Proposed Lead Counsel*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| DINKO MIHAYLOV, individually and on behalf of all others similarly situated,<br><br>                              Plaintiffs,<br><br>vs.<br><br>TATTOOED CHEF, INC., SALVATORE GALLETTI, and STEPHANIE DIECKMANN,<br><br>                              Defendants. | Case No. 2:22-cv-9311-GW-E<br><br>Class Action<br><br>**Memorandum of Points and Authorities in Opposition to Competing Motions for Appointment as Lead Plaintiffs, and Approval of Counsel**<br><br>Judge:      Hon. George H. Wu<br>Date:       March 23, 2023<br>Time:       8:30 a.m.<br>Courtroom: 9D, 9th Floor |

**Table of Contents**

I.      INTRODUCTION ............................................................................................1

II.     ARGUMENT .................................................................................................4

    A.     The Court Should Appoint the TTCF Investor Group or John Hancock Individually as Lead Plaintiff Because the Group and Mr. Hancock Are the Presumptive "Most Adequate Plaintiffs" ...............................................................................................4

    B.     The Court Should Approve the TTCF Investor Group's Selection of Lead Counsel ................................................................6

    C.     The Court Must Refrain from Considering the Competing Movants' Candidacy Because They Claim Smaller Losses Than the TTCF Investor Group, and Their Group Members Claim Smaller Losses Than Mr. Hancock Individually ...............7

    D.     Even If the Court Were to Consider the Competing Movants' Candidacy, Those Movants Are Atypical and Inadequate and Are Subject to Unique Defenses .......................................................8

III.    CONCLUSION.............................................................................................11

i

Movants John Hancock, Shashank Bagul, John Spadaro, Dr. Mustapha Hotait, and Marco Starace (collectively, the "TTCF Investor Group") respectfully submit this memorandum in opposition to the competing motions (Dkt. Nos. 22 and 26) for (1) appointment of lead plaintiff pursuant to Section 21D(a)(3)(B) of the Securities and Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(a)(3)(B); and (2) approval of the lead plaintiff's selection of lead counsel for the putative class.[1]    Because, as discussed below, the TTCF Investor Group is the presumptive most adequate plaintiff under the PSLRA, and because there is no evidence to rebut that presumption, the Court should grant its motion (Dkt. No. 28), and appoint the TTCF Investor Group (or, in the alternative, John Hancock) as lead plaintiff and approve the group's selection of Bottini & Bottini, Inc. as lead counsel.  The Court should deny both competing motions (Dkt. Nos. 22 and 26).

## I.    INTRODUCTION

Based on the recoverable losses claimed by all remaining competing movant groups, the TTCF Investor Group, as well as lead group member John Hancock, have the largest financial interest in this litigation:

| Name | Losses |
|---|---|
| The TTCF Investor Group (Dkt. No. 28) | **$1,366,365.34** |
| John Hancock | **$494,102.54** |

In contrast, the two competing movant groups claim far smaller losses than the TTCF Investor Group, and each of their group members also claims far smaller losses than Mr. Hancock individually:

[1] This memorandum adopts all terms defined in the TTCF Investor Group's February 21, 2023 memorandum in support of its motion (Dkt. No. 28-1).

1

| Name | Losses |
|---|---|
| Ben Ganje, Mohamed Saad, and Nassib Awad (Dkt. No. 26) | $699,250.00 |
| Group member claiming the largest loss — Ben Ganje | $374,405.00 |

| Name | Losses |
|---|---|
| Saphira TrangDai Tran and Abdiselam Abdulahi (Dkt. No. 22) | $97,990.01 |
| Group member claiming the largest loss — Saphira TrangDai Tran | $84,489.51 |

When compared either as a group or individually, the TTCF Investor Group's aggregate losses of $1,366,365.34 and Mr. Hancock's individual losses of $494,102.54 are larger than those of any other movants. The TTCF Investor Group and Mr. Hancock are — without a doubt — the movants having the "largest financial interest in the relief sought by the class." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(bb). As the Ninth Circuit held in *In re Cavanaugh*, once the court "determines which plaintiff has the biggest stake, the court *must appoint that plaintiff as lead*, unless it finds that he does not satisfy the typicality or adequacy requirements." 306 F.3d 726, 732 (9th Cir. 2002) (emphasis added).

Here, the TTCF Investor Group and Mr. Hancock satisfy the typicality and adequacy requirements of Federal Rule of Civil Procedure 23(a). As demonstrated in the certifications and joint declaration of the group members (Dkt. Nos. 28-4, 28-6), the TTCF Investor Group and Mr. Hancock's claims are typical because they are based on the same legal theories and arise from the same events that give rise to the claims of other class members. *See Barry v. Colony Northstar, Inc.*, 2018 U.S. Dist. LEXIS 247803, at **10–11 (C.D. Cal. July

2

16, 2018) (Wu, J.). And the TTCF Investor Group and Mr. Hancock can adequately represent the class because their interests are clearly aligned with the interests of the putative class. *See id*. As such, the TTCF Investor Group and Mr. Hancock are the presumptive "most adequate plaintiff." *See id.* at *3.

In *In re Mersho*, the Ninth Circuit recently admonished that courts must "give effect to the presumption [of the 'most adequate plaintiff']" by imposing the burden of rebutting this presumption on the competing movants, and by requiring "*proof* that the presumptive lead plaintiff will not adequately represent the class." *See* 6 F.4th 891, 900–01 (9th Cir. 2021) (emphasis added). Here, absent any evidence to rebut that presumption, the PSLRA requires that the Court appoint the TTCF Investor Group, or Mr. Hancock individually, as lead plaintiff. *See, e.g.*, *Inchen Huang v. Depomed, Inc.*, 289 F. Supp. 3d 1050, 1053 (N.D. Cal. 2017) (appointing a group as lead plaintiff because one of its members, "without aggregating with the other [group] members … has the largest interest of any movant").

Because the two other competing movant groups — one consisting of Ben Ganje, Mohamed Saad, and Nassib Awad and another consisting of Saphira TrangDai Tran and Abdiselam Abdulahi — claim losses vastly smaller than the TTCF Investor Group, the Court is required to refrain from assessing the typicality and adequacy of these competing groups. This is so because the Ninth Circuit held in *Cavanaugh*, "[t]he court must examine potential lead plaintiffs *one at a time, starting with the one who has the greatest financial interest, and continuing in descending order if and only if the presumptive lead plaintiff is found inadequate or atypical*." 306 F.3d at 733 (emphases added). But even if the Court were to consider these competing group's motions, substantial doubts exist as to whether they can meet Rule 23(a)'s requirements. Saad, for example, bought *and sold* 431,189 shares of Tattooed Chef stock during the Class Period in over

3

920 trades.  As both a day-trader and a so-called "in-and-out" trader, Saad's trading pattern renders him vulnerable to the unique defenses.  Likewise, Ganje sold nearly one-third of his holdings — 9,881 shares — of Tattooed Chef stock, making him vulnerable to the same unique defense.  These defects doom these competing movants' candidacy, even if they could claim the largest financial interest in the relief sought by the class.

Accordingly, the Court should deny the competing motions and appoint the TTCF Investor Group or Mr. Hancock individually as lead plaintiff and approve the group's selection of Bottini & Bottini, Inc. as lead counsel.

## II.    ARGUMENT

**A.    The Court Should Appoint the TTCF Investor Group or John Hancock Individually as Lead Plaintiff Because the Group and Mr.  Hancock Are the Presumptive "Most Adequate Plaintiffs"**

As this Court stated in *Barry*, in determining the movants' financial stake, district courts in the Ninth Circuit consider "'the approximate losses suffered … as most definitive in identifying the plaintiff with the largest financial loss.'" *See* 2018 U.S. Dist. LEXIS 247803, at *8 (quoting *Knox v. Yingli Green Energy Holding Co.*, 136 F. Supp. 3d 1159, 1163–64 (C.D. Cal. 2015)).  Here, the TTCF Investor Group purchased 107,306 shares of Tattooed Chef stock and have suffered losses of approximately $1,366,365.34:[2]

---

[2] The value of the shares retained post-Class Period is calculated based on $2.62 per share — the "90-day look-back price" under 15 U.S.C. § 78u-4(e)(1)— the average daily closing price of Tattooed Chef stock for the period between October 12, 2022 and January 9, 2023.  *See* Dkt. No. 28-5 at 2.  The competing movants, including the Ganje-Saad-Awad group, use the price of $2.57 per share based on a "look-back" period that started on October 13, 2022 — the first day after the truth of Tattooed Chef's financial condition was disclosed to the public.  *See* Dkt. No. 1 (Compl.) ¶ 32.  This start date is inconsistent with the text of the PSLRA because, under 15 U.S.C. § 78u-4(e)(1), the "90-day look-back" period "begin[s] on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market."  Although the use of $2.57 makes the competing movants' claimed losses slightly larger, this discrepancy is immaterial for purposes of comparing the claimed losses.

| Group Name | Losses |
|---|---|
| The TTCF Investor Group (Dkt. No. 28) | **$1,366,365.34** |
| Ben Ganje, Mohamed Saad, and Nassib Awad (Dkt. No. 26) | ~~$699,250.00~~ |
| Saphira TrangDai Tran and Abdiselam Abdulahi (Dkt. No. 22) | ~~$97,990.01~~ |

Moreover, Mr. Hancock alone has lost $494,102.54 from his purchases of 42,000 shares of Tattooed Chef stock:

| Individual Name | Losses |
|---|---|
| The TTCF Investor Group member claiming the largest loss —John Hancock | **$494,102.54** |
| The Ganje-Saad-Awad group member claiming the largest loss — Ben Ganje | ~~$374,405.00~~ |
| The Tran-Abdulahi group member claiming the largest loss — Saphira TrangDai Tran | ~~$84,489.51~~ |

In light of the substantial differences between the losses of the TTCF Investor Group and Mr. Hancock on the one hand, and the competing movants on the other hand, the Court must find that the TTCF Investor Group and Mr. Hancock have the "largest financial interest" in the relief sought by the class. *See Barry*, 2018 U.S. Dist. LEXIS 247803, at **8–10. The Court then must determine whether the TTCF Investor Group and Mr. Hancock "have made a preliminary showing of typicality and adequacy." *See Ferrari v. Gisch*, 225 F.R.D. 599, 606 (C.D. Cal. 2004).

Here, the TTCF Investor Group and Mr. Hancock's claims are typical of

the claims of the other members of the putative class because, like all other class members, the group purchased Tattooed Chef shares at prices artificially inflated by Defendants' materially false and misleading statements or omissions, and suffered damages as a consequence.  *See Barry*, 2018 U.S. Dist. LEXIS 247803, at **10–11; *see also Newberg, et al.*, NEWBERG ON CLASS ACTIONS, § 3:13 (4th ed. 2008).  Moreover, both the TTCF Investor Group and Mr. Hancock are adequate class representatives because, as demonstrated in their joint declaration (Dkt. No. 28-6), they possess common interests and an absence of conflict with fellow class members, and because their counsel (Bottini & Bottini, Inc.) is qualified, experienced, and able to conduct the litigation.  *See Ferrari*, 225 F.R.D. at 607.  In addition, the TTCF Investor Group can function as a cohesive group because the group members have established a protocol to work together, are committed to representing the class, and share the same goal of obtaining the largest possible recovery for the class.  *See, e.g., Sabbagh v. Cell Therapeutics, Inc.*, 2010 U.S. Dist. LEXIS 93614, at *18 (W.D. Wash. Aug. 2, 2010) (appointing a group as lead plaintiff); *Ferrari*, 225 F.R.D. at 607 (same).

Accordingly, the TTCF Investor Group and Mr. Hancock are the presumptive "most adequate plaintiffs" under the PSLRA.  Because there is no evidence to rebut that presumption, the Court must appoint the TTCF Investor Group, or Mr. Hancock individually, as lead plaintiff.  *See Cavanaugh*, 306 F.3d at 733; *see also Mersho*, 6 F.4th at 900–01.

**B.     The Court Should Approve the TTCF Investor Group's Selection of Lead Counsel**

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the court's approval.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).  In making this determination, the Court should not disturb the lead plaintiff's choice of counsel unless it is necessary to "protect the interests of the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Here, the TTCF Investor Group and Mr. Hancock have selected Bottini & Bottini to represent the class.  As demonstrated in the firm's resume (Dkt. No. 28-7), the firm has substantial experience in the prosecution of securities fraud class actions and possesses the necessary resources to efficiently conduct this litigation.  The Court should therefore approve the selection of Bottini & Bottini as lead counsel for the class.

**C.    The Court Must Refrain from Considering the Competing Movants' Candidacy Because They Claim Smaller Losses Than the TTCF Investor Group, and Their Group Members Claim Smaller Losses Than Mr. Hancock Individually**

At the first step in considering competing motions for lead-plaintiff appointment under the PSLRA, the Court must identify the movant with "the largest financial interest in the relief sought by the class."  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(bb).  To that end, as the Ninth Circuit instructed in *Cavanaugh*, "[t]he court must examine potential lead plaintiffs one at a time, starting with the one who has the greatest financial interest, and continuing in descending order *if and only if* the presumptive lead plaintiff is found inadequate or atypical."  306 F.3d at 733 (emphasis added).

Under this instruction, because the TTCF Investor Group has larger losses than any competing movant groups, and because Mr. Hancock has higher losses than any competing individual movants, the Court must accord the TTCF Investor Group the status of the presumptive "most adequate plaintiff" so long as the group makes a *prima facie* showing of typicality and adequacy under Rule 23(a).  *See*, *e.g.*, *Hodges v. Akeena Solar, Inc.*, 263 F.R.D. 528, 533 (N.D. Cal. 2009) (appointing a group as lead plaintiff where one group member "has the greatest financial stake in the litigation of any movant"); *Bruce v. Suntech Power Holdings Co.*, 2012 U.S. Dist. LEXIS 167702, at **6–8 (N.D. Cal. Nov. 13, 2012) (disregarding arguments that an investor group was

7

"cobbled together" because the group had the largest financial interest, both as a whole and as to one member individually); *Inchen Huang*, 289 F. Supp. 3d at 1053 (same).  Accordingly, in light of the financial stake of the TTCF Investor Group and Mr. Hancock, the Court must appoint them as lead plaintiff and refrain from considering the competing motions.

**D.**   **Even If the Court Were to Consider the Competing Movants' Candidacy, Those Movants Are Atypical and Inadequate and Are Subject to Unique Defenses**

In light of the fact that the competing movant groups (the Ganje-Saad-Awad group and the Tran-Abdulahi group) claim far smaller losses than either the TTCF Investor Group or Mr. Hancock individually, the Court should not consider these competing group's ability to meet Rule 23(a)'s requirements. *See Cavanaugh*, 306 F.3d at 733.  But even if the Court were to do so, substantial doubts exist as to whether the Ganje-Saad-Awad group or the Tran-Abdulahi group can meet Rule 23(a)'s requirements of typicality and adequacy.

One key member of the Ganje-Saad-Awad group, Mohamed Saad, is a day trader — "a very active stock trader who holds positions for a very short time and makes several trades each day."[3]  Day traders "typically focus on technical price movements rather than price," which could subject such a plaintiff to a unique defense that the plaintiff would have purchased the stock at issue regardless of defendant's alleged misstatements.  *See, e.g., In re Safeguard Scientifics*, 216 F.R.D. 577, 583 (E.D. Pa. 2003).  Here, as demonstrated in Mr. Saad's trading records (Dkt. No. 34-5 at 8–21),[4] he executed over 920 trades between November 10, 2021 and March 2, 2022.  In a two-day period between November 10 and 11, 2021, for example, Mr. Saad purchased 4,150

---

[3] *Taubenfeld v. Career Educ. Corp.*, 2004 U.S. Dist. LEXIS 4363, at *10 n.2 (N.D. Ill. Mar. 19, 2004) (defining "day trader").

[4] Citations to the page numbers of documents on the docket refer to the page numbers assigned by CM/ECF (on the top of each page of the documents).

8

shares of Tattooed Chef stock in seven trades and immediately sold them in 27 trades — making a profit of $2,715.85. *See* Dkt. No. 34-5 at 8, 13–14. Because Mr. Saad's trading pattern renders him vulnerable to the unique defense as a day trader, courts in the Ninth Circuit have routinely declined to appoint investors like him as lead plaintiffs. *See, e.g.*, *Applestein v. Medivation, Inc.*, 2010 U.S. Dist. LEXIS 98255, at \*9 (N.D. Cal. Sept. 17, 2010) (holding that the presumptive lead plaintiff was a day trader and therefore rebutted the presumption that he suffered the greatest loss); *Eichenholtz v. Verifone Holdings, Inc.*, 2008 U.S. Dist. LEXIS 64633, at \*36 (N.D. Cal. Aug. 22, 2008) (rejecting a movant "due to the vulnerability created by the unique day-trader defense").

Mr. Saad is also an "in-and-out" trader — retaining zero shares of Tattooed Chef stock after the Class Period. *See* Dkt. No. 34-3 at 14. Courts have also refused to "count losses … by 'in-and-out' traders … when determining the plaintiff with the greatest financial interest in the litigation." *See, e.g.*, *In re McKesson HBOC, Inc. Sec. Litig.*, 97 F. Supp. 2d 993, 998 (N.D. Cal. 1999). Courts have also found that "in-and-out" traders who sell all of their stock before the corrective disclosures may not be typical because of difficulties in proving their damages. *See, e.g.*, *In re Silicon Storage Tech., Inc.*, 2005 U.S. Dist. LEXIS 45246, at \*26 (N.D. Cal. May 3, 2005) (rejecting movant "because both members of this group are in/out traders, and as such, are potentially subject to unique defenses"); *In re Bally Total Fitness Sec. Litig.*, 2005 U.S. Dist. LEXIS 6243, at \*18 (N.D. Ill. Mar. 15, 2005) (in-and-out traders "face difficulties in attributing the decline in the price of their stock to the alleged fraudulent conduct").

Likewise, Ben Ganje — the lead member of the Ganje-Saad-Awad group — sold nearly one-third of his holdings — 9,881 shares — of Tattooed Chef stock during the Class Period. *See* Dkt. No. 34-3 at 17. These Class Period sales — some at as high as $22.08 per share (*see* Dkt. No. 34-3 at 16 (September 1,

9

2022 trade)) also make Mr. Ganje vulnerable to the same unique defense.

In addition, there are errors in the trading data in the PSLRA-mandated certifications submitted by the Ganje-Saad-Awad group and the Tran-Abdulahi group.  The Ganje-Saad-Awad group has submitted at least ten trades that contain share prices falling outside the daily trading range:[5]

| Mohamed Saad | Date | Incorrect Price Submitted | Daily Low | Daily High |
|---|---|---|---|---|
| Dkt. No. 34-5 at 8 | 11/10/2021 | $16.26 | $16.88 | $17.61 |
| | 11/10/2021 | $16.33 | | |
| | 11/10/2021 | $16.35 | | |
| | 11/10/2021 | $16.36 | | |
| | 11/10/2021 | $16.38 | | |
| | 11/10/2021 | $16.37 | | |
| Dkt. No. 34-5 at 10 | 5/9/2022 | $6.77 | $7.40 | $7.90 |
| Dkt. No. 34-5 at 11 | 9/7/2022 | $6.46 | $6.16 | $6.45 |

| Nassib Awad | Date | Incorrect Price Submitted | Daily Low | Daily High |
|---|---|---|---|---|
| Dkt. No. 34-5 at 24 | 8/12/2021 | $18.50 | $19.83 | $20.85 |

| Ben Ganje | Date | Incorrect Price Submitted | Daily Low | Daily High |
|---|---|---|---|---|
| Dkt. No. 34-5 at 5 | 4/16/2021 | $20.00 | $17.92 | $18.88 |

Likewise, the Tran-Abdulahi group has submitted at least two trades that contain share prices falling outside the daily trading range:

| Abdiselam Abdulahi | Date | Incorrect Price Submitted | Daily Low | Daily High |
|---|---|---|---|---|
| Dkt. No. 24-2 at 6 | 11/10/2021 | $16.35 | $16.88 | $17.61 |
| | 3/11/2022 | $11.00 | $11.30 | $12.52 |

These errors cast doubt as to the competing movants' adequacy to represent the class.  Courts have denied lead-plaintiff motions on the basis of the movants' errors.  *See, e.g., Camp v. Qualcomm Inc.*, 2019 U.S. Dist. LEXIS 10269, at \**8–10 (S.D. Cal. Jan. 22, 2019) (errors in transactions records prohibit a movant from satisfying the adequacy and typicality requirements); *In re Boeing Co. Aircraft Sec. Litig.*, 2020 U.S. Dist. LEXIS 15012, at \**16–17 (N.D. Ill. Jan. 28, 2020) (rejecting movants who submitted incorrect loss calculations).

---

[5] The daily trading price ranges are obtained through *Yahoo! Finance Online*.

## III.    CONCLUSION

For all the foregoing reasons, John Hancock, Shashank Bagul, John Spadaro, Dr. Mustapha Hotait, and Marco Starace respectfully request that the Court (1) appoint them as a group or, in the alternative, John Hancock individually, as lead plaintiff; (2) approve the group's selection of Bottini & Bottini, Inc. to serve as lead counsel; and (3) deny all competing motions.

Dated:  March 2, 2023

Respectfully submitted,

BOTTINI & BOTTINI, INC.

s/ Francis A. Bottini, Jr.

Francis A. Bottini, Jr.
Albert Y. Chang
7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone:  (858) 914-2001
Facsimile:   (858) 914-2002
Email:       fbottini@bottinilaw.com
             achang@bottinilaw.com

*Counsel for John Hancock, Shashank Bagul, John Spadaro, Dr. Mustapha Hotait, and Marco Starace and Proposed Lead Counsel*

11

**Certificate of Compliance**

The undersigned, counsel of record for John Hancock, Shashank Bagul, John Spadaro, Dr. Mustapha Hotait, and Marco Starace, certifies that this brief contains 3,064 words, which complies with the word limit of L.R. 11-6.1.

Dated:  March 2, 2023

                                       s/ Francis A. Bottini, Jr.
                                       Francis A. Bottini, Jr.

1