POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Counsel for Movants Ben Ganje, Mohamed Saad, and Nassib Awad and Proposed Lead Counsel for the Class*

*[Additional Counsel on Signature Page]*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DINKO MIHAYLOV, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TATTOOED CHEF, INC., SALVATORE GALLETTI, and STEPHANIE DIECKMANN,<br><br>Defendants. | Case No. 2:22-cv-09311-GW-E<br><br>MEMORANDUM OF POINTS AND AUTHORITIES: (1) IN FURTHER SUPPORT OF MOTION OF THE TATTOOED CHEF INVESTOR GROUP FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF COUNSEL; AND (2) IN IPPOSITION TO COMPETING MOTIONS<br><br>DATE:  March 23, 2023<br>TIME:  8:30 a.m.<br>JUDGE:  George H. Wu<br>CTRM:  9D, 9th Floor |

MEMORANDUM OF POINTS AND AUTHORITIES - 2:22-cv-09311-GW-E

## TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ......................................................................1

II.     ARGUMENT .................................................................................................6

    A.      THE GANJE GROUP SHOULD BE APPOINTED LEAD PLAINTIFF ....6

        1.      The Ganje Group Has the Largest Financial Interest in the Relief Sought by the Class ...................................................................................6

        2.      The Ganje Group Satisfies the Requirements of Rule 23 ........................7

    B.      LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED ................................................................................................10

    C.      THE HANCOCK GROUP IS INADEQUATE UNDER RULE 23 ............10

        1.      The Hancock Group's Failure to Demonstrate Its Cohesiveness Renders It Inadequate .............................................................................................11

        2.      Errors in the Hancock Group's Motion Papers Render It Inadequate ...16

III.    CONCLUSION.............................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Borteanu v. Nikola Corporation*,
562 F. Supp. 3d 174 (D. Ariz. 2021) ........................................................................ 9

*Haideri v. Jumei Int'l Holding Limited*,
No. 20-cv-02751-EMC, 2020 WL 5291872 (N.D. Cal. Sept. 4, 2020) ............ *passim*

*Harari v. PriceSmart, Inc.*,
19-CV-958 JLS (LL), 2019 WL 4934277 (S.D. Cal. Oct. 7, 2019)....................... 3, 8

*In re Boeing Co. Aircraft Sec. Litig.*,
No. 19-cv-02394, 2020 WL 476658 (N.D. Ill. Jan. 28, 2020) ................................. 17

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) ................................................................................ 6, 7

*In re Gemstar-TV Guide Intern., Inc. Sec. Litig.*,
209 F.R.D. 447 (C.D. Cal. 2002).............................................................................. 14

*In re Microstrategy Sec. Litig.*,
110 F. Supp. 2d 427 (E.D. Va. 2000) ................................................................ 11, 14

*In re Vonage Initial Pub. Offering Secs. Litig.*,
No. 07-177 (FLW), 2007 WL 2683636 (D.N.J. Sept. 6, 2007) ............................... 17

*Karinski v. Stamps.com, Inc.*,
CV 19-1828-R, 2019 WL 8013753 (C.D. Cal. June 5, 2019)................................ 3, 8

*Knox v. Yingli Green Energy Holding Co.*,
136 F. Supp. 3d 1159 (C.D. Cal. 2015) ..................................................................... 6

*Lako v. Loandepot, Inc.*,
8:21-cv-01449-JLS-JDE, 2022 WL 1314463 (May 2, 2022)..................... 4, 5, 11, 17

*Nicolow v. Hewlett Packard Co.*,
No. 12-05980 CRB, 2013 U.S. Dist. LEXIS 29876 (N.D. Cal. Mar. 4, 2013) ........... 6

*Peters v. Colony Credit Real Estate, Inc.*,
No. CV 20-8305 PSG, 2020 WL 11884392 (C.D. Cal. Dec. 11, 2020) ................... 9

*Rodriguez v. DraftKings Inc.*, *et al.*,
  21 Civ. 5739 (PAE) 2021 WL 5282006 (S.D.N.Y. Nov. 12, 2021) ................... 5, 17

*Sabbagh v. Cell Therapeutics, Inc.*,
  No. C10-414MJP, 2010 WL 3064427 (W.D. Wash. Aug. 2, 2010) .......................... 9

*Vataj v. Johnson*,
  19-CV-06996-HSG, 2020 WL 532981 (N.D. Cal. Feb. 3, 2020) ...................... 3, 7, 8

**Statutes**

15 U.S.C. § 78u-4............................................................................................ 2, 6, 10

Private Securities Litigation Reform Act of 1995 .................................................... *passim*

**Rules**

Fed. R. Civ. P. 23 ............................................................................................. *passim*

Movants Ben Ganje, Mohamed Saad, and Nassib Awad (collectively, the "Ganje Group")[1] respectfully submit this Memorandum of Points and Authorities in further support of the Ganje Group's motion for appointment as Lead Plaintiff and approval of its selection of Pomerantz[2] as Lead Counsel (Dkt. No. 26); and in opposition to the competing motions of: (i) John Hancock, Shashank Bagul, John Spadaro, Mustapha Hotait, and Marco Starace (collectively, the "Hancock Group") (Dkt. No. 28); and (ii) Saphira TrangDai Tran and Abdiselam Abdulahi (collectively, the "Tran Group") (Dkt. No. 22).[3]

## I.   PRELIMINARY STATEMENT

This Action is a putative securities class action lawsuit on behalf of investors in Tattooed Chef securities.  As with all federal class action securities lawsuits, a lead plaintiff must be appointed.  The PSLRA governs that process and, pursuant to the PSLRA, the Court must appoint as Lead Plaintiff the movant with the greatest financial

---

[1] Messrs. Ganje, Saad and Awad referred to themselves collectively as the "Tattooed Chef Investor Group" in their initial motion papers. *See generally* Dkt. No. 30.  Given that several other groups of Tattooed Chef investors filed similar competing motions, for the avoidance of confusion, the respective movant groups are differentiated herein by reference to the last name of one member of each group.

[2] All capitalized terms herein are defined in the Ganje Group's moving brief, unless otherwise indicated. *See* Dkt. No. 30.

[3] Initially two other investor groups, respectively comprised of putative Class members: (i) Dolev Cohen, Eric Staley, Daryl Wood, and Minderpal Gulati (collectively, the "Cohen Group"); and (ii) Viktor Grigorescu, Gyrosol V. Johnston, Dan Kogan, and Kogan Holdings Limited (collectively, the "Grigorescu Group") filed similar motions. Dkt. Nos. 27, 18.  On February 28, 2023, the Cohen Group filed a notice of non-opposition to the competing motions (Dkt. No. 36), and the Grigorescu Group filed a notice of withdrawal of its motion (Dkt. No. 37).

interest in the outcome of the action; ***and*** who satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Here, that movant is the Ganje Group, having incurred loss of approximately $696,033 in connection with its purchases of Tattooed Chef securities as a result of the Defendants' alleged malfeasance.  The table below sets forth the Ganje Group's losses compared to those of the competing movants:

| Movant | Loss |
|---|---|
| Ganje Group | $696,033 |
| Tran Group | $226,871 |
| ~~Hancock Group~~ | ~~$1,371,107~~ |

As the table reflects, the Ganje Group's loss of $696,033 is the largest loss incurred by any eligible competing movant, more than three times the $226,871 loss incurred by the Tran Group, the only other eligible movant.  Although one competing movant, the Hancock Group, claims a larger loss than the Ganje Group, the Hancock Group and its members are ineligible for appointment because they are inadequate within the meaning of Rule 23, as discussed in detail below.  Accordingly, the Ganje Group possesses the largest financial interest in this litigation of any eligible movant.

In addition to its significant financial interest, the Ganje Group also satisfies the adequacy and typicality requirements of Rule 23.  With respect to adequacy, the Ganje Group is aware of no conflict between its interests and those of the Class, its losses incurred as a result of the Defendants' alleged misconduct give it a sufficient stake in the outcome of this action to ensure vigorous advocacy, and in Pomerantz, the Ganje Group

has retained qualified and experienced counsel. *Karinski v. Stamps.com, Inc.*, CV 19-1828-R, 2019 WL 8013753, at \*1 (C.D. Cal. June 5, 2019); *Harari v. PriceSmart, Inc.*, 19-CV-958 JLS (LL), 2019 WL 4934277, at \*3 (S.D. Cal. Oct. 7, 2019).  Moreover, the Ganje Group has submitted a detailed Joint Declaration executed by its three members, which contains, *inter alia*, detailed biographical information about each group members, a meaningful explanation of its members' reasons for seeking appointment jointly as Co-Lead Plaintiffs, and attestations to communications among its members prior to the filing of their motion. *See generally* Dkt. No. 34-2.  With respect to typicality, the Ganje Group's claims in this litigation are based on the same legal theory and arise from the same events and course of conduct as the claims of the other Class members.  *See, e.g.*, *Vataj v. Johnson*, 19-CV-06996-HSG, 2020 WL 532981, at \*3 (N.D. Cal. Feb. 3, 2020).

In contrast, the Hancock Group, the only competing movant claiming a larger loss than the Ganje Group, is inadequate for at least two separate reasons.

First, the Hancock Group has failed to demonstrate that it is a cohesive group whose members are prepared to work collaboratively to prosecute this Action on behalf of the Class, and the group is thus inadequate under Rule 23.  Although the Hancock Group has submitted a Joint Declaration ostensibly in support of its motion, the Joint Declaration only illustrates the group's deficiencies.  It provides only minimal biographical information about each member, stating each member's profession, but fails to disclose, *inter alia*, where three of the five group members reside, their ages,

MEMORANDUM OF POINTS AND AUTHORITIES - 2:22-cv-09311-GW-E

3

professions, educational background, investment experience, or whether any of the group members have prior experience supervising counsel. The Declaration also lacks any meaningful explanation as to why these five individuals chose to seek appointment together as Co-Lead Plaintiffs, leaving the only reasonable inference that the group exists for the sole purpose of aggregating its members' losses to game the PSLRA's "largest financial interest" requirement. Finally, the Joint Declaration does not attest to *any* communications having occurred between the five group members prior to the filing of their motion. The group's wholesale failure to demonstrate any degree of cohesiveness plainly renders it inadequate under Rule 23. *See*, *e.g.*, *Lako v. Loandepot, Inc.*, 8:21-cv-01449-JLS-JDE, 2022 WL 1314463, at *6 (May 2, 2022) (denying motion where movant group "provided sparse information regarding the individual members of the group [and] recited only boilerplate assurances that its members would work together to oversee the litigation"); *Haideri v. Jumei Int'l Holding Limited*, No. 20-cv-02751-EMC, 2020 WL 5291872, at *5 (N.D. Cal. Sept. 4, 2020) (denying motion by movant group, citing "lack of involvement" and lack of information about "how they would cooperate and manage the litigation given their status as a group.").

Second, the schedule of Class Period transactions in Tattooed Chef shares submitted by one group member, Mr. Hatoit, contains significant and disqualifying errors. Specifically, Mr. Hatoit, has testified under penalty of perjury to having purchased a total of 5,700 shares of Tattooed Chef stock at prices well outside of the price range within

which Tattooed Chef shares traded on the dates in questions.  *See* Dkt. No. 28-4 at \*8. Courts routinely deny Lead Plaintiff motions on the basis of such errors, as they raise questions regarding a movant's fitness to supervise a complex securities class action.  *See*, *e.g.*, *Loandepot*, 2022 WL 1314463, at \*5 (denying motion where movant group's submissions suggested that movant "lack[ed] the knowledge or expertise to litigate a major securities class action"); *Rodriguez v. DraftKings Inc.*, 21 Civ. 5739 (PAE) *et al.*, 2021 WL 5282006, at \*9 (S.D.N.Y. Nov. 12, 2021) (denying motion, finding that errors in movant's submission "'speak[] to a level of carelessness' that rightly calls into doubt [movant's] adequacy to be lead plaintiff.") (quoting *Plaut v. Goldman Sachs Grp., Inc.*, No. 18 Civ. 12084 (VSB), 2019 WL 4512774, at \*5 (S.D.N.Y. Sept. 19, 2019).  This is fatal not only to Mr. Hatoit's motion, but to that of the Hancock Group as a whole, because it demonstrates that the group's members failed to meaningfully review the motion papers submitted by their counsel prior to the motion deadline.  *See*, *e.g.*, *Jumei*, 2020 WL 5291872, at \*5 (denying movant group's motion, citing "lack of involvement" that did "not reflect commitment to the litigation on the part of the [group's] members").

For the reasons set forth herein, the Ganje Group respectfully submits that its motion should be granted in its entirety and that the competing motions should be denied.

## II.    ARGUMENT

### A.    THE GANJE GROUP SHOULD BE APPOINTED LEAD PLAINTIFF

The PSLRA creates a strong presumption that the Lead Plaintiff is the "person or group of persons" that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The movant that has the largest financial interest need only make a *prima facie* showing at this stage that it satisfies the adequacy and typicality requirements of Rule 23. *In re Cavanaugh*, 306 F.3d 726, 730-31 (9th Cir. 2002). Once this presumption is triggered, it may be rebutted only upon proof that the presumptive Lead Plaintiff will not fairly represent the interests of the Class. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II). Here, the most adequate class representative for the Class is the Ganje Group.

### 1.    The Ganje Group Has the Largest Financial Interest in the Relief Sought by the Class

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). While the PSLRA itself does not provide any guidance concerning the method of calculating which plaintiff has the "largest financial interest," courts recognize that the amount of financial loss is the most significant factor to be considered. *See, e.g.*, *Knox v. Yingli Green Energy Holding Co.*, 136 F. Supp. 3d 1159, 1163 (C.D. Cal. 2015); *Nicolow v. Hewlett Packard*

*Co.*, No. 12-05980 CRB, 2013 U.S. Dist. LEXIS 29876, at *18-*19 (N.D. Cal. Mar. 4, 2013).

Under the foregoing analysis, no movant eligible for appointment as Lead Plaintiff in this Action has a larger financial interest in the litigation than the Ganje Group. As the chart at p. 2 reflects, the Ganje Group's loss of $696,033 is more than three times the size of the loss incurred by the Tran Group, the only eligible competing movant. Although one competing movant, the Hancock Group, has alleged a larger loss than the Ganje Group, the Hancock Group is inadequate within the meaning of Rule 23 and thus disqualified from consideration, as discussed *infra* at Section II.C.

### 2. The Ganje Group Satisfies the Requirements of Rule 23

In addition to possessing the largest financial interest in the relief sought by the Class, the Ganje Group has also made the requisite *prima facie* showing that it satisfies the typicality and adequacy requirements of Rule 23. *See Cavanaugh*, 306 F.3d at 730-31. First, the Ganje Group's claims satisfy the typicality requirement of Rule 23(a)(3) because they are based on the same legal theory and arise from the same events and course of conduct as the Class's claims. *See, e.g.*, *Vataj*, 2020 WL 532981, at *3. The Ganje Group, like all members of Class, purchased Tattooed Chef securities during the Class Period at prices artificially inflated by Defendants' misrepresentations or omissions and was damaged upon the disclosure of those misrepresentations and/or omissions. These shared claims, which are based on the same legal theory, and arise from the same events

and course of conduct as the Class's claims, satisfy the requirements of Rule 23. *Vataj*, 2020 WL 532981, at *3. Second, the Ganje Group satisfies the adequacy requirement of Rule 23(a)(4) because it has a sufficient stake in the outcome of this litigation to ensure vigorous advocacy on behalf of the Class. *See, e.g.*, *Karinski*, 2019 WL 8013753, at *1; *Harari*, 2019 WL 4934277, at *3.

The Ganje Group has further demonstrated its adequacy by the submission, with its motion papers, of a sworn Joint Declaration, in which the group's three members:

- Provide detailed information about themselves, including their age, city and state of residence, professional and educational background, investment experience, and prior experience supervising attorneys (Dkt. No. 34-2 ¶¶ 2-4);

- Explain their reasons for seeking appointment jointly as Co-Lead Plaintiffs (*id.* ¶ 10) ("We each determined that we could ***maximize the Class's recovery by pooling our respective resources and experiences*** by jointly seeking appointment as Co-Lead Plaintiffs. After reviewing the allegations . . . and consulting with each other and our counsel, we each independently determined to seek joint appointment as Co-Lead Plaintiffs, and subsequently approved the filing of a joint motion seeking our appointment as Co-Lead Plaintiffs. We agree that ***our collective resources and our ability to engage in joint decision-making will mutually benefit and advance the interests of the Class*** in this case.") (emphases added);

- Attest in detail to their understanding of the responsibilities of a Lead Plaintiff appointed pursuant to the PSLRA and their readiness to undertake those responsibilities (*id.* ¶¶ 5-8, 13-14); and

- Attest to their communications with one another prior to the filing of their motion (*id.* ¶ 5) ("We have discussed this case ***with each other*** and our counsel. . . . We held a conference call ***with each other*** and our counsel to discuss this litigation. We approved the filing of a motion on our behalf seeking appointment Jointly as Co-Lead Plaintiffs.") (emphases added).

Courts in the Ninth Circuit routinely find movant groups to be adequate where, as here, they have robustly demonstrated their cohesiveness via detailed, as opposed to merely boilerplate, joint declarations. *See*, *e.g.*, *Peters v. Colony Credit Real Estate, Inc.*, No. CV 20-8305 PSG (PVCx), 2020 WL 11884392, at *4 (C.D. Cal. Dec. 11, 2020) (appointing movant group that submitted a "Joint Declaration detail[ing] their participation in a conference call with one another prior to filing this motion, their backgrounds, their investing experience, their understanding of the responsibilities of a lead plaintiff pursuant to the PSLRA, their decision to seek appointment jointly as co-lead plaintiffs, and the steps that each of them are prepared to take cooperatively to prosecute this litigation on behalf of the putative class."); *Borteanu v. Nikola Corporation*, 562 F. Supp. 3d 174, 187 (D. Ariz. 2021) (same); *Sabbagh v. Cell Therapeutics, Inc.*, No. C10-414MJP, 2010 WL 3064427, at *6 (W.D. Wash. Aug. 2, 2010) (same).

*****

Because the Ganje Group has the largest financial interest of any eligible Lead Plaintiff candidate in the relief sought by the Class and otherwise satisfies the requirements of Rule 23, it is the presumptive "most adequate plaintiff" of the Class within the meaning of the PSLRA.

To overcome the strong presumption entitling the Ganje Group to appointment as Lead Plaintiff, the PSLRA requires "***proof***" that the presumptive Lead Plaintiff is

inadequate.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (emphasis added).  No such proof exists in this case and any speculative arguments to the contrary should be flatly rejected.

### B.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).  The Court should interfere with the Lead Plaintiff's selection only when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Here, the Ganje Group has selected Pomerantz as Lead Counsel for the Class.  As its resume reflects, Pomerantz is highly experienced in the areas of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors.  *See* Dkt. No. 34-6.  Thus, the Court may be assured that by approving the Ganje Group's selection of counsel, the members of the Class will receive the best legal representation available.

### C.    THE HANCOCK GROUP IS INADEQUATE UNDER RULE 23

Although the Hancock Group claims to have incurred a significant loss as a result of the Defendants' alleged malfeasance, the Hancock Group cannot trigger the "most adequate plaintiff" presumption, irrespective of its financial interest, because the Hancock Group fails to satisfy the adequacy and/or typicality requirements of Rule 23.

### 1.    The Hancock Group's Failure to Demonstrate Its Cohesiveness Renders It Inadequate

The Hancock Group's wholesale failure to demonstrate any degree of cohesiveness renders it inadequate under Rule 23.   Although the PSLRA plainly permits the appointment of investor groups, courts generally deny motions by groups whose members have not shown that they are prepared to act cooperatively on behalf of the Class.   Under highly similar circumstances in *Loandepot*, the Honorable Josephine L. Staton, U.S.D.J., recently denied a motion by a four-member investor group, noting that, although the group had submitted a Joint Declaration with its motion, it "provided sparse information regarding the individual members of the group [and] recited only boilerplate assurances that its members would work together to oversee the litigation."  *Loandepot*, 2022 WL 1314463, at *6.   Judge Staton concluded that, "[i]n essence, while the [movant group] seeks the advantage of aggregating its group members' individual losses, it has failed to take on the corresponding burden to demonstrate that each individual member, and the group collectively, satisfies Rule 23's adequacy and typicality requirements." *Id. See also Jumei*, 2020 WL 5291872, at *5 (denying motion by movant group, citing "lack of involvement" and lack of information about "how they would cooperate and manage the litigation given their status as a group."); *In re Microstrategy Sec. Litig.*, 110 F. Supp. 2d 427, 437 (E.D. Va. 2000) (denying motion where movant group failed to show it members "had ever communicated with one another about their roles").

Here, the Hancock Group has submitted a Joint Declaration that the group claims "is sufficient to demonstrate [its] adequacy for group appointment." Dkt. No. 28-1 at 6. In reality, the Joint Declaration only demonstrates the group's glaring ***inadequacy***, for the reasons set forth below:

First, the Joint Declaration provides almost no information about the Hancock Group's members. Whereas the Ganje Group's Joint Declaration attests to its members' professional and education backgrounds, cities and states of residence, investment experience, and any prior experience supervising counsel (in the case of Mr. Ganje (*see* Dkt. No. 34-2 ¶ 2)), the Hancock Group's Declaration merely states its five members' respective professions and, oddly, only generally states the region (Silicon Valley) in which two of the five members, Messrs. Hancock and Bagul, reside. *See* Dkt. No. 28-6 ¶ 4. The absence of any further information begs numerous questions: Where do the other three group members live? Are they within or outside of the United States? Are there significant differences in time zones that will hamper communications? Even more significantly, do the five members of the group all know where the other members live? What, if anything, do the Hancock Group's members even know about one another?

Second, the Joint Declaration articulates no meaningful rationale for its members' decision to seek appointment jointly as Co-Lead Plaintiffs. Whereas the Ganje Group's members have attested that their group motion was motivated by a desire to share their resources and experience for the benefit of the absent Class

members (*see* Dkt. No. 34-2 ¶ 10), the Hancock Group's members have only stated that "[w]e decided to seek appointment as lead plaintiff jointly because we believe that we are the most adequate applicants to represent the interests of the entire class." Dkt. No. 28-6 ¶ 2. This statement is so general as to be effectively meaningless. At best, it is a mere regurgitation of the PSLRA's "most adequate plaintiff" standard, bereft of any underlying support. Moreover, the Joint Declaration's lack of any significant information about any of its members makes this statement about its members' purported "belief" difficult to credit. Evidently knowing nothing about one another beyond their professions (as discussed *supra*) and having attested to *zero* communications with one another prior to filing their motion (as discussed *infra*), it is unclear what possible basis the group's members could have for "believ[ing] that [they] are the most adequate applicants" to serve as Lead Plaintiff. In the absence of any other explanation, the most obvious inference is that the Hancock Group exists solely to aggregate its members' losses for the purposes of securing a leadership role for its counsel in this litigation.

Third, the Joint Declaration does not attest to *any* communications having occurred among the Hancock Group's five members prior to the filing of their motion. The declaration attests that its members "have discussed serving as lead plaintiff with our counsel" (Dkt. No. 28-6 ¶ 5), "have established protocols to

communicate" (*id.* ¶ 10), and "will continue to communicate regularly" (*id.*), but the Hancock Group's members have not actually attested to having communicated ***with each other*** at all—a fact that the Joint Declaration's phrasing seems designed to obscure. The only communications that the Joint Declaration attests to are between the group's members individually and their counsel, a fact that only amplifies concerns about the group's evidently attorney-driven nature. The Hancock Group's motion brief—an unsworn submission—states that "[t]he group members ***have*** communicated ***with each other***" and cites the Joint Declaration in support of this assertion. Dkt. No. 28-1 ¶ 6 (emphases added). Yet, as discussed above, the Joint Declaration in fact does not attest to ***any*** such communications having taken place. If the Hancock Group's members did, in fact, communicate with one another prior to this litigation, presumably the group will have no difficulty unambiguously stating as much in a sworn statement accompanying its reply papers. If not, then the Ganje Group respectfully submits that the Hancock Group's motion brief requires correction.

Considered alongside the dearth of information about its members, the Hancock Group's size also militates against its appointment. *See*, *e.g.*, *In re Gemstar-TV Guide Intern., Inc. Sec. Litig.*, 209 F.R.D. 447, 450 (C.D. Cal. 2002) (denying movant group's motion, finding that the group "has too many members to

manage effectively this litigation" and "[t]he court has no assurance that the group will be able to meet on short notice."). Consisting of five members, each with his or her own schedule to manage, the group will presumably face significant logistical difficulties in coordinating its activities and communications. Compounding these concerns is that, given the near-total absence of information in the Joint Declaration, the Court has no idea where three of these five individuals even live—nor is it clear that all of the group members themselves even know where the others live. The simple need to coordinate five different schedules will create logistical difficulties that will foreseeably impede the Hancock Group's ability to simply function, which obviously undermines the group's ability to prosecute the Class's fraud claims. By contrast, the Court can be assured that the three members of the Ganje Group, all of whom have attested to living in the continental United States (*see* Dkt. No. 24-2 ¶¶ 2-4), will have significantly less difficulty in coordinating their efforts than the more numerous Hancock Group.

In sum, the Hancock Investor Group has abjectly failed to demonstrate that it is a cohesive investor group whose members are prepared to act cooperatively for the benefit of the Class in this litigation. The Joint Declaration's lack of detail, including *zero* attestations to any communications having occurred between the Hancock Group's members, leaves it entirely unclear whether the group's members actually know anything

about one another at all.  This obviously significantly undermines the group's claims with respect to, *inter alia*, its members' supposed readiness to work together and their belief that they are "the most adequate applicants" for appointment as Lead Plaintiff.  The circumstances suggest that the Hancock Group is nothing more than an attorney-created construct, consisting of nominal members with little meaningful engagement in this litigation.  *See*, *e.g.*, *Jumei*, 2020 WL 5291872, at *5 (N.D. Cal. Sept. 4, 2020) (denying motion by movant group, citing "lack of involvement" and lack of information about "how they would cooperate and manage the litigation given their status as a group.").  The Ganje Group respectfully submits that the Court should not entrust the Class's claims to such dubious leadership.

### 2.    Errors in the Hancock Group's Motion Papers Render It Inadequate

Separate and apart from its lack of cohesiveness, the Hancock Group's submissions—specifically, the Certification of one group member, Mr. Hotait—contain errors that preclude not only Mr. Hotait's appointment as Lead Plaintiff, but that of the Hancock Group altogether.

As required by the PSLRA, Mr. Hotait has filed a Certification, under penalty of perjury, appended to which is a schedule setting forth his "transactions during the Class Period in the securities of Tattooed Chef, Inc."  Dkt. No. 28-4 at *8.  Among the transactions Mr. Hotait has attested to are the purchase of a total of 5,700 shares, in a series of transactions comprising the majority of his Class Period trading activity, between

November 8-9, 2021. *Id.* at *9. However, as set forth below, the prices at which Mr. Hotait claims to have purchased these shares are significantly outside the range of prices within which the Company's stock traded on the dates in question:

| Date | Shares Purchased | Attested-To Price-Per-Share | Daily Price Range | |
|---|---|---|---|---|
| | | | Low | High |
| 11/8/2021 | 2,000 | $18.46 | $17.78 | $18.27 |
| 11/8/2021 | 2,500 | $18.56 | $17.78 | $18.27 |
| 11/9/2021 | 1,200 | $18.13 | $17.33 | $17.99 |

Courts routinely deny motions for lead plaintiff appointment on the basis of such errors, as they raise disqualifying questions as to a movant's attention to detail and general readiness to prosecute a complex securities class action. *See*, *e.g.*, *Loandepot*, 2022 WL 1314463, at *5 (denying motion where movant group's submissions suggested that movant "lack[ed] the knowledge or expertise to litigate a major securities class action"); *DraftKings*, 2021 WL 5282006, at *9 (denying motion, finding that errors in movant's submission "'speak[] to a level of carelessness' that rightly calls into doubt [movant's] adequacy to be lead plaintiff.") (quoting *Plaut*, 2019 WL 4512774, at *5).[4] Here, the errors in Mr. Hotait's Certification—misstating the purchase price for a total of 5,700 shares, constituting *57%* of his total Class Period purchases—are far from minor. Whether Mr.

---

[4] *See also In re Vonage Initial Pub. Offering Secs. Litig.*, No. 07-177 (FLW), 2007 WL 2683636, at *7, *8 n.8 (D.N.J. Sept. 6, 2007) (denying motion by movant whose certification "contained incorrect trading data and loss calculations," finding it to be "plagued with misinformation"); *In re Boeing Co. Aircraft Sec. Litig.*, No. 19-cv-02394, 2020 WL 476658, at *5-6 (N.D. Ill. Jan. 28, 2020) (denying motion by movants where errors in loss calculations demonstrated that movants either knowingly submitted incorrect information or failed to review their submissions before filing).

Hotait submitted incorrect information to his counsel or simply failed to thoroughly review the Hancock Group's motion papers pre-filing, these significant errors plainly render Mr. Hotait—as well as the other Hancock Group members, who also evidently failed to thoroughly review their motion submission—inadequate to serve as Lead Plaintiff in a securities litigation.

## III.   CONCLUSION

For the foregoing reasons, the Ganje Group respectfully requests that the Court issue an Order granting its motion in full and denying the competing motions.

Dated:  March 2, 2023

Respectfully submitted,

POMERANTZ LLP

*/s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Counsel for Movants Ben Ganje, Mohamed Saad, and Nassib Awad and Proposed Lead Counsel for the Class*

BRONSTEIN, GEWIRTZ & GROSSMAN, LLC
Peretz Bronstein
(*pro hac vice* application forthcoming)
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

MEMORANDUM OF POINTS AND AUTHORITIES - 2:22-cv-09311-GW-E

*Additional Counsel for Movants Ben Ganje, Mohamed Saad, and Nassib Awad*

CERTIFICATE OF SERVICE

I hereby certify that on March 2, 2023, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.


*/s/ Jennifer Pafiti*
Jennifer Pafiti