BOTTINI & BOTTINI, INC.

Francis A. Bottini, Jr. (SBN 175783)
   fbottini@bottinilaw.com
Albert Y. Chang (SBN 296065)
   achang@bottinilaw.com
7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone: (858) 914-2001
Facsimile:   (858) 914-2002

*Counsel for John Hancock, Shashank Bagul, John Spadaro,
Dr. Mustapha Hotait, and Marco Starace and Proposed Lead Counsel*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| DINKO MIHAYLOV, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>    vs.<br><br>TATTOOED CHEF, INC., SALVATORE GALLETTI, and STEPHANIE DIECKMANN,<br><br>                    Defendants. | Case No. 2:22-cv-9311-GW-E<br><br>Class Action<br><br>**Reply Memorandum of Points and Authorities in Further Support of Motion for Appointment as Lead Plaintiff, and Approval of Counsel**<br><br>Judge:      Hon. George H. Wu<br>Date:       March 23, 2023<br>Time:       8:30 a.m.<br>Courtroom: 9D, 9th Floor |

**Table of Contents**

I.      INTRODUCTION ........................................................................................1

II.     ARGUMENT ..............................................................................................5

        A.      The Court Should Appoint the TTCF Investor Group or John Hancock Individually as Lead Plaintiff Because the Group and Mr. Hancock Are the Presumptive "Most Adequate Plaintiffs" ..................................................................................5

        B.      The Court Should Appoint the TTCF Investor Group or Mr. Hancock Individually as Lead Plaintiff Because the Ganje Group and the Tran Group Have Not Met Their Burden of Submitting Proof to Rebut the Presumptive "Most Adequate Plaintiff" Status ............................................................................7

                1.      The Tran Group's Argument Based on the Lack of a Pre-Litigation Relationship Conflicts with *Mersho* and Must Be Rejected .................................................................8

                2.      The Joint Declaration of the TTCF Investor Group Members Sufficiently Demonstrates the Group's Adequacy .............................................................................10

                3.      There Are No Errors in the Trading Data Submitted by the TTCF Investor Group and Thus No Basis to Challenge the Group's Adequacy .......................................13

        C.      The Court Should Approve the TTCF Investor Group's Selection of Lead Counsel ...........................................................15

III.    CONCLUSION ...........................................................................................15

**Table of Authorities**

**Cases**

*Barry v. Colony Northstar, Inc.,*
2018 U.S. Dist. LEXIS 247803 (C.D. Cal. July 16, 2018)....................2, 5, 6

*Bruce v. Suntech Power Holdings Co.,*
2012 U.S. Dist. LEXIS 167702 (N.D. Cal. Nov. 13, 2012) ...................2, 10

*Camp v. Qualcomm Inc.,*
2019 U.S. Dist. LEXIS 10269 (S.D. Cal. Jan. 22, 2019)............................14

*Crass v. Yalla Grp. Ltd.,*
2021 U.S. Dist. LEXIS 216088 (S.D.N.Y. Nov. 8, 2021)...........................12

*DeLuca v. Instadose Pharma Corp.,*
2022 U.S. Dist. LEXIS 135424 (E.D. Va. July 29, 2022) ............................9

*Ferrari v. Gisch,*
225 F.R.D. 599 (C.D. Cal. 2004) ........................................................*passim*

*Ferreira v. Funko,*
2020 U.S. Dist. LEXIS 106515 (C.D. Cal. June 11, 2020)........................11

*Haideri v. Jumei Int'l Holding, Ltd.,*
2020 U.S. Dist. LEXIS 162510 (N.D. Cal. Sept. 4, 2020) ........................13

*Hodges v. Akeena Solar, Inc.,*
263 F.R.D. 528 (N.D. Cal. 2009) .......................................................2, 9, 11

*In re Blue Apron Holdings, Inc. Sec. Litig.,*
2017 U.S. Dist. LEXIS 207531 (E.D.N.Y. Dec. 15, 2017) ........................12

*In re Boeing Co. Aircraft Sec. Litig.,*
2020 U.S. Dist. LEXIS 15012 (N.D. Ill. Jan. 28, 2020)............................14

*In re Cavanaugh,*
306 F.3d 726 (9th Cir. 2002) ........................................................1, 3, 7, 9

*In re Cendant Corp. Litig.,*
264 F.3d 201 (3d Cir. 2001)..................................................................9

*In re Mersho,*
6 F.4th 891 (9th Cir. 2021) ...........................................................2, 3, 7, 8

*In re Microstrategy Sec. Litig.,*
110 F. Supp. 2d 427 (E.D. Va. 2000)......................................................13

*In re Sequans Commc'ns S.A. Sec. Litig.,*
289 F. Supp. 3d 416 (E.D.N.Y. 2018)......................................................9

*In re Versata, Inc. Sec. Litig.,*
2001 U.S. Dist. LEXIS 24270 (N.D. Cal. Aug. 20, 2001) .....................8, 11

*Inchen Huang v. Depomed, Inc.,*
    289 F. Supp. 3d 1050 (N.D. Cal. 2017)......................................................2, 9

*Kakkar v. Bellicum Pharm., Inc.,*
    2019 U.S. Dist. LEXIS 50704 (S.D. Tex. Mar. 26, 2019)..........................12

*Lako v. LoanDepot, Inc.,*
    2022 U.S. Dist. LEXIS 79063 (C.D. Cal. May 2, 2022)........................12, 13

*Lewis v. Lipocine Inc.,*
    2016 U.S. Dist. LEXIS 166532 (D.N.J. Dec. 2, 2016) ...............................12

*McCracken v. Edwards Lifesciences Corp.,*
    2014 U.S. Dist. LEXIS 2147 (C.D. Cal. Jan. 8, 2014) .........................*passim*

*Phuong Ho v. NQ Mobile, Inc.,*
    2014 U.S. Dist. LEXIS 51623 (S.D.N.Y. Apr. 9, 2014) .........................7, 11

*Sabbagh v. Cell Therapeutics, Inc.,*
    2010 U.S. Dist. LEXIS 93614 (W.D. Wash. Aug. 2, 2010)...............4, 7, 11

*Soto v. Hensler,*
    235 F. Supp. 3d 607 (D. Del. 2017) ........................................................9, 11

**Statutes**

15 U.S.C. § 78u-4.......................................................................................1, 9, 15

**Rules**

FED. R. CIV. P. 23.........................................................................................*passim*

iii

Movants John Hancock, Shashank Bagul, John Spadaro, Dr. Mustapha Hotait, and Marco Starace (collectively, the "TTCF Investor Group") respectfully submit this reply memorandum in further support of the group's motion (Dkt. No. 28) for (1) appointment of the TTCF Investor Group or, in the alternative, Mr. Hancock, as lead plaintiff pursuant to Section 21D(a)(3)(B) of the Securities and Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(a)(3)(B); and (2) approval of the group's selection of Bottini & Bottini, Inc. as lead counsel for the putative class.[1]   Because, as discussed below, the TTCF Investor Group is the presumptive most adequate plaintiff under the PSLRA, and because there is no evidence to rebut that presumption, the Court should grant its motion (Dkt. No. 28) and deny the two competing motions (Dkt. Nos. 22 and 26).

## I.   INTRODUCTION

It is undisputed that, among the three movant groups, the TTCF Investor Group has the largest losses — $1,366,365.34.  Nor is it disputed that John Hancock claims the largest losses — $494,102.54 — as an individual movant. The TTCF Investor Group and Mr. Hancock are — without a doubt — the movants having the "largest financial interest in the relief sought by the class." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(bb).  As the Ninth Circuit held in *In re Cavanaugh*, once the court "determines which plaintiff has the biggest stake, the court *must appoint that plaintiff as lead*, unless it finds that he does not satisfy the typicality or adequacy requirements."  306 F.3d 726, 732 (9th Cir. 2002) (emphasis added).

As demonstrated in the certifications and joint declaration of the group members (Dkt. Nos. 28-4, 28-6), the TTCF Investor Group and Mr. Hancock satisfy the typicality and adequacy requirements of Federal Rule of Civil

---

[1] This memorandum adopts all terms defined in the TTCF Investor Group's February 21, 2023 memorandum in support of its motion (Dkt. No. 28-1).

1

Procedure 23(a).  The TTCF Investor Group and Mr. Hancock's claims are typical because they are based on the same legal theories and arise from the same events that give rise to the claims of other class members.  *See Barry v. Colony Northstar, Inc.*, 2018 U.S. Dist. LEXIS 247803, at \*\*10–11 (C.D. Cal. July 16, 2018) (Wu, G.).  And the TTCF Investor Group and Mr. Hancock can adequately represent the class because their interests are clearly aligned with the interests of the putative class.  *See id*.  As such, the TTCF Investor Group and Mr. Hancock are the presumptive "most adequate plaintiff."  *See id*. at \*3.

As the Ninth Circuit held in *In re Mersho*, the Court must "give effect to the presumption [of the 'most adequate plaintiff']" by imposing the burden of rebutting this presumption on the competing movants, and by requiring "*proof that the presumptive lead plaintiff will not adequately represent the class*."  *See* 6 F.4th 891, 900–01 (9th Cir. 2021) (emphasis added).  Here, there is absolutely *no evidence* to rebut the presumptive "most adequate plaintiff" status of the TTCF Investor Group or Mr. Hancock.  *See id*.  Accordingly, the Court must appoint the TTCF Investor Group or Mr. Hancock individually as lead plaintiff.  In fact, this is exactly what other district courts have done under similar circumstances — appointing a movant group as lead plaintiff where one group member claims larger losses than any other competing movants individually.  *See, e.g.*, *Inchen Huang v. Depomed, Inc*., 289 F. Supp. 3d 1050, 1053 (N.D. Cal. 2017) (appointing a group as lead plaintiff because one of its members, "without aggregating with the other [group] members … has the largest interest of any movant"); *Hodges v. Akeena Solar, Inc*., 263 F.R.D. 528, 533 (N.D. Cal. 2009) (same); *Bruce v. Suntech Power Holdings Co*., 2012 U.S. Dist. LEXIS 167702, at \*\*6–8 (N.D. Cal. Nov. 13, 2012) (same).

The two competing movant groups' contrary arguments fail for three reasons.  First, contrary to the Ninth Circuit's recent decision in *Mersho*, the

2

Tran group argues for denying the TTCF Investor Group's motion simply because the group members lack a pre-litigation relationship.  As held in *Mersho*, however, a "pre-litigation" relationship is but one of several factors in determining the adequacy of a lead-plaintiff group.  *See* 6 F.4th at 901.  And district courts have appointed groups whose members had no pre-litigation relationship as lead plaintiffs where, as here, the groups consist of a small number of members and can demonstrate their ability to function cohesively.  *See, e.g.*, *McCracken v. Edwards Lifesciences Corp.*, 2014 U.S. Dist. LEXIS 2147, at \*\*12–13 (C.D. Cal. Jan. 8, 2014).

Arguing the contrary, the Tran group is inviting the Court to commit the same error for which the Ninth Circuit reversed the district court in *Mersho* — refusing to appoint a group as lead plaintiff without proof of inadequacy, where one group member claimed individual losses larger than any other individual movants.  *See* 6 F.4th 896.  Under these circumstances, it would also be error for the Court to consider the Ganje group or the Tran group's applications because, as held in *Cavanaugh*, "[t]he court must examine potential lead plaintiffs *one at a time, starting with the one who has the greatest financial interest, and continuing in descending order if and only if the presumptive lead plaintiff is found inadequate or atypical*."  *See* 306 F.3d at 733 (emphases added).  Because the TTCF Investor Group and Mr. Hancock claim larger losses than any other individual movant, appointing them as lead plaintiff should be the end of the inquiry.

Second, there is simply no merit to the argument that the TTCF Investor Group has not made "a preliminary showing of typicality and adequacy" under Rule 23(a).  *See Ferrari v. Gisch*, 225 F.R.D. 599, 606 (C.D. Cal. 2004).  The group members' certifications and joint declaration clearly establish that the TTCF Investor Group purchased Tattooed Chef shares at prices artificially

3

inflated by Defendants' materially false and misleading statements or omissions, and suffered damages as a consequence. *See* Dkt. No. 28-6 ¶ 3. As stated in their joint declaration, the members of the TTCF Investor Group — each of whom has substantial experience in finance and investments — decided to "seek appointment as lead plaintiff jointly because [they] believe that we are the most adequate applicants to represent the interests of the entire class." *Id*. ¶ 2. The group members are each aware of their "fiduciary" responsibilities to the class, including being kept informed of "the status and progress of this action," "making litigation decisions and directing counsel." *Id*. ¶¶ 5–7. Based on a similar showing of group cohesion, district courts in the Ninth Circuit have consistently found group applicants to be adequate under Rule 23(a). *See*, *e.g.*, *McCracken*, 2014 U.S. Dist. LEXIS 2147, at **12–13 (appointing a group as lead plaintiff based on a similar declaration); *Sabbagh v. Cell Therapeutics, Inc.*, 2010 U.S. Dist. LEXIS 93614, at *18 (W.D. Wash. Aug. 2, 2010) (same).

The Ganje group also lacks a factual basis to challenge the sufficiency of the TTCF Investor Group's joint declaration because it is substantively similar to the declaration submitted by the Ganje group. In fact, counsel for the Ganje group has repeatedly sought lead-plaintiff appointments in securities-fraud class actions on behalf of groups based on declarations similar to what the TTCF Investor Group has submitted here.

Finally, contrary to the Ganje group's false accusation, the TTCF Investor Group's trading data submitted to the Court is accurate. As demonstrated in Dr. Mustapha Hotait's reply declaration, his February 13, 2023 certification contains accurate information regarding the dates and prices of his November 2021 trades. *See* Hotait Reply Decl. ¶ 3. His certification identifies the "settlement dates" (November 8 and 9, 2021) for his trades, which were

assigned the stock prices of the "execution dates" (November 4 and 5, 2021). Dr. Hotait's loss chart accurately reflects the execution dates for his November 2021 trades.  *See* Dkt. No. 28-5 at 6.[2]  As such, the Ganje group's attack on the adequacy of Dr. Hotait and his counsel is without merit.

Accordingly, because the Ganje group and Tran group have failed to submit proof to rebut the TTCF Investor Group's presumptive "most adequate plaintiff" status, the Court should appoint the TTCF Investor Group as lead plaintiff and approve the group's selection of Bottini & Bottini, Inc. as lead counsel.

## II.   ARGUMENT

**A.   The Court Should Appoint the TTCF Investor Group or John Hancock Individually as Lead Plaintiff Because the Group and Mr. Hancock Are the Presumptive "Most Adequate Plaintiffs"**

It is undisputed that the TTCF Investor Group purchased 107,306 shares of Tattooed Chef stock and suffered losses of approximately $1,366,365.34, and that Mr. Hancock alone purchased 42,000 shares of Tattooed Chef stock and suffered losses of $494,102.54.  As demonstrated in the charts in the group's opposition brief (Dkt. No. 40 at 7), the TTCF Investor Group and Mr. Hancock claim larger losses than any competing movants *by hundreds of thousands of dollars*.  *See id*.

Because the TTCF Investor Group (and Mr. Hancock individually) have the largest losses, the Court is required to find that the TTCF Investor Group and Mr. Hancock have the "largest financial interest" in the relief sought by the class.  *See Barry*, 2018 U.S. Dist. LEXIS 247803, at \*\*8–10.  The Court must next determine whether the TTCF Investor Group and Mr. Hancock "have made a preliminary showing of typicality and adequacy."  *See Ferrari*, 225

---

[2] Citations to page numbers of docket entries refer to the page numbers assigned by CM/ECF (on the top of each page of the document).

F.R.D. at 606.

Here, the TTCF Investor Group's claims are typical of the claims of the other members of the putative class.  As demonstrated in the group members' certifications (Dkt. No. 28-4), like all other class members, the group purchased Tattooed Chef shares at prices artificially inflated by Defendants' materially false and misleading statements or omissions, and suffered damages as a consequence.  *See Barry*, 2018 U.S. Dist. LEXIS 247803, at **10–11.  Moreover, the members of the TTCF Investor Group are adequate class representatives because, as demonstrated in their joint declaration (Dkt. No. 28-6), they possess common interests and an absence of conflict with fellow class members, and because their counsel (Bottini & Bottini, Inc.) is qualified, experienced, and able to conduct the litigation.  *See Ferrari*, 225 F.R.D. at 607.

In fact, the group members' joint declaration provides ample details to support a finding that the TTCF Investor Group is adequate to serve as class representatives and to oversee counsel in this litigation.  *See* Dkt. No. 28-6.  The declaration confirms that each group member "has substantial experience in finance and investments."  *Id*. ¶ 4.  Mr. Hancock and Mr. Bagul are software engineers in the technology industry in Silicon Valley; and they both have substantial experience in investments.  *Id*.  Mr. Starace is a technology consultant with a degree in computer science and decades of experience in investing in the stock market.  *Id*.  Mr. Spadaro is a retired electrical engineer with decades of experience in investing in the stock market.  *Id*.  Dr. Hotait is a practicing dentist with substantial experience in investments.  *Id*.  The group members' experience and qualifications make them suitable class representatives.  *See McCracken*, 2014 U.S. Dist. LEXIS 2147, at **12–13.

The members of the TTCF Investor Group "decided to seek appointment as lead plaintiff jointly because we believe that we are the most adequate

applicants to represent the interests of the entire class." *Id.* ¶ 2. The group members understand their fiduciary responsibilities of managing this litigation and supervising counsel. *See id.* ¶¶ 5–7. They have attested to their willingness and ability to take on these responsibilities. *Id.* ¶¶ 8–9. To that end, they "have established protocols to communicate with counsel and with each other," and "will continue to communicate regularly with counsel and each other regarding major litigation events, such as important motions, settlement discussions, trial preparation, and trial." *Id.* ¶ 10.

Courts in this District and beyond have found similar declarations to be sufficient to demonstrate group cohesion and adequacy. *See, e.g.*, *McCracken*, 2014 U.S. Dist. LEXIS 2147, at **12–13 (appointing a group as lead plaintiff based on a similar declaration); *Ferrari*, 225 F.R.D. at 607 (same); *Sabbagh*, 2010 U.S. Dist. LEXIS 93614, at *18 (same); *Phuong Ho v. NQ Mobile, Inc.*, 2014 U.S. Dist. LEXIS 51623, at *19 (S.D.N.Y. Apr. 9, 2014) (the protocol "to manage the litigation" shows that the group "has a plan for efficient management of the action").

Accordingly, the members of the TTCF Investor Group are the presumptive "most adequate plaintiffs" under the PSLRA. Because there is no evidence to rebut that presumption, the Court must appoint the TTCF Investor Group, or Mr. Hancock individually, as lead plaintiff. *See Cavanaugh*, 306 F.3d at 733; *see also Mersho*, 6 F.4th at 900–01.

**B.   The Court Should Appoint the TTCF Investor Group or Mr. Hancock Individually as Lead Plaintiff Because the Ganje Group and the Tran Group Have Not Met Their Burden of Submitting Proof to Rebut the Presumptive "Most Adequate Plaintiff" Status**

In *Mersho*, the Ninth Circuit recently reversed a district court's order refusing to appoint an investor group as lead plaintiff even though one of the group members individually claimed higher losses than the other competing

movants. *See* 6 F.4th at 896. Specifically, the Ninth Circuit held that courts must "give effect to the presumption [of the 'most adequate plaintiff']" by imposing the burden of rebutting this presumption on the competing movants, and by requiring "*proof* that the presumptive lead plaintiff will not adequately represent the class." *See id.* 6 F.4th at 900–01 (emphasis added). In so holding, the Ninth Circuit found that the district court's "misgivings" regarding the group's cohesion — without any evidence showing the group's inadequacy — fell short of the "proof" necessary to rebut the presumption of "most adequate plaintiff." *Id.* at 900. As discussed below, neither the Ganje group nor the Tran group has submitted any proof to rebut the TTCF Investor Group and Mr. Hancock's status as the presumptive "most adequate plaintiff."

      **1.**     **The Tran Group's Argument Based on the Lack of a Pre-Litigation Relationship Conflicts with *Mersho* and Must Be Rejected**

As held in *Mersho*, a "pre-litigation" relationship is but one of several factors in determining the adequacy of a lead-plaintiff group. *See* 6 F.4th at 901. District courts have consistently appointed groups whose members had no pre-litigation relationship as lead plaintiffs where, as here, the groups consist of a small number of members and can demonstrate their ability to function cohesively. *See, e.g., McCracken*, 2014 U.S. Dist. LEXIS 2147, at *12 (finding a group of five to be "small enough to allow efficient joint decision-making"). This is so even where it was necessary for group members, who lacked any pre-litigation relationship, to aggregate their losses in order to claim a larger financial stake in the outcome of the litigation than other competing movants. *See In re Versata, Inc. Sec. Litig.*, 2001 U.S. Dist. LEXIS 24270, at *22 (N.D. Cal. Aug. 20, 2001).

Here, however, there is no need for the members of the TTCF Investor Group to aggregate their losses in order to claim the "largest financial interest"

status because Mr. Hancock — with $494,102.54 in losses — has the "largest financial interest" of all individual movants. Where, as here, one member of a movant group — "without aggregating with the other [group] members," — "has the largest interest of any movant," district courts in the Ninth Circuit and beyond have routinely appointed the group as lead plaintiff. *See*, *e.g.*, *Inchen Huang*, 289 F. Supp. 3d at 1053; *Hodges*, 263 F.R.D. at 533 (appointing a group as lead plaintiff where one group member "has the greatest financial stake in the litigation of any movant"); *DeLuca v. Instadose Pharma Corp.*, 2022 U.S. Dist. LEXIS 135424, at **11–12 (E.D. Va. July 29, 2022) (same); *Soto v. Hensler*, 235 F. Supp. 3d 607, 622 (D. Del. 2017) (same); *In re Sequans Commc'ns S.A. Sec. Litig.*, 289 F. Supp. 3d 416, 425 (E.D.N.Y. 2018) (same).

In fact, under these circumstances, the PSLRA provides that the Court should refrain from considering whether the Ganje group and the Tran group can satisfy Rule 23(a)'s requirements. During the first step of considering competing motions for lead-plaintiff appointment under the PSLRA, the Court must identify the movant with "the largest financial interest in the relief sought by the class." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(bb). To that end, "[t]he court must examine potential lead plaintiffs one at a time, starting with the one who has the greatest financial interest, and continuing in descending order *if and only if* the presumptive lead plaintiff is found inadequate or atypical." *Cavanaugh*, 306 F.3d at 733 (emphasis added); *accord In re Cendant Corp. Litig.*, 264 F.3d 201, 267 (3d Cir. 2001) (holding that, only upon a finding that the movant with the largest financial interest cannot satisfy Rule 23(a), the court may "identify the movant with the next largest loss, consider whether that movant satisfies Rule 23's requirements, and repeat this process until a presumptive lead plaintiff is identified").

Under the statute, because the TTCF Investor Group has larger losses

9

than any competing movant groups, and because Mr. Hancock has higher losses than any of the competing individual movants, the Court must accord the TTCF Investor Group the status of the presumptive "most adequate plaintiff" so long as the group makes a *prima facie* showing of typicality and adequacy under Rule 23(a).  *See, e.g.*, *Bruce*, 2012 U.S. Dist. LEXIS 167702, at **6–8 (disregarding arguments that an investor group was "cobbled together" because the group had the largest financial interest, both as a whole and as to one member individually).  Accordingly, in light of the financial stake of the TTCF Investor Group and Mr. Hancock, the Court must reject the Tran-group's arguments and appoint the TTCF Investor Group or Mr. Hancock individually as lead plaintiff.

### 2. The Joint Declaration of the TTCF Investor Group Members Sufficiently Demonstrates the Group's Adequacy

The Ganje group has failed to submit any factual or legal basis to challenge the sufficiency of the TTCF Investor Group's showing of adequacy. At the outset, the PSLRA requires only a "preliminary" showing of Rule 23(a)'s adequacy requirement.  *See Ferrari*, 225 F.R.D. at 606.  Detailed and particularized, the joint declaration submitted by the members of the TTCF Investor Group sufficiently demonstrates their ability and willingness to serve as class representatives and to oversee counsel in this litigation.  *See* Dkt. No. 28-6.  The declaration confirms that each group member "has substantial experience in finance and investments."  *Id*. ¶ 4.  The declaration also shows the group members' knowledge of their fiduciary responsibilities of managing this litigation and supervising counsel, and their plan to carry out these responsibilities by, among other things, "communicat[ing] regularly with counsel and each other regarding major litigation events, such as important motions, settlement discussions, trial preparation, and trial."  *Id*. ¶ 10. Contrary to the Ganje group's claim that its joint declaration is more detailed,

10

there are no substantive differences between that joint declaration and the joint declaration of the TTCF Investor Group.  *Compare* Dkt. No. 28-6 *with* Dkt. No. 34-2.

As another court in this District held in *McCracken*, group cohesion can be shown based on signed statements "describing the [group's] procedures for overseeing this litigation."  *See* 2014 U.S. Dist. LEXIS 2147, at *13.  That is exactly what the TTCF Investor Group has done here.  *See* Dkt. No. 28-6 ¶¶ 8–9.  Moreover, where, as here, at least one individual member of a movant group claims losses larger than all other individual movants, courts have consistently found the movant group to be adequate because the situation eases concerns about plaintiffs coming together solely to aggregate losses.  *See Hodges*, 263 F.R.D. at 533; *see also Soto*, 235 F. Supp. 3d at 621 (the fact that a group member claims the largest losses as an individual "eases any concerns about the two plaintiffs having come together solely due to manipulation by their counsel").

In sum, district courts have consistently found similar declarations to be sufficient to demonstrate group cohesion and adequacy.  *See, e.g.*, *McCracken*, 2014 U.S. Dist. LEXIS 2147, at **12–13; *Ferrari*, 225 F.R.D. at 607; *Sabbagh*, 2010 U.S. Dist. LEXIS 93614, at *18; *Versata*, 2001 U.S. Dist. LEXIS 24270, at **23–25; *Phuong Ho*, 2014 U.S. Dist. LEXIS 51623, at *19.  In fact, counsel for the Ganje group has repeatedly, and successfully, sought lead-plaintiff appointments in securities-fraud class actions on behalf of groups whose members had no pre-litigation relationship, based on declarations similar to what the TTCF Investor Group has submitted here.  For example, in *Ferreira v. Funko, Inc.*, the Ganje group's counsel (Pomerantz LLP) represented three individual investors with no pre-litigation relationship and sought their appointment as a group by submitting a joint declaration with few details.  *See* 2020 U.S. Dist. LEXIS 106515, at *17 (C.D. Cal. June 11, 2020).  Despite the fact that the joint

11

declaration was "not a detailed blueprint," the court found that the group members "demonstrated that they appreciate[d] their duty to manage the litigation firmly and actively." *Id*. (appointing a three-member group as lead plaintiff and Pomerantz LLP as lead counsel).  Likewise, in *Kakkar v. Bellicum Pharm., Inc.*, the Ganje group's counsel submitted on behalf of a four-member group a joint declaration:

- stating the group members' plan to "coordinate their efforts, oversee counsel, and diligently prosecute this litigation for the benefit of the class"; and

- describing the group members as "informed and experienced investors."

2019 U.S. Dist. LEXIS 50704, at *12 (S.D. Tex. Mar. 26, 2019) (appointing a group as lead plaintiff and Pomerantz LLP as lead counsel).  All told, the Ganje group's counsel has, in case after case in district courts across the country, advocated for groups to be appointed as lead plaintiffs in securities class actions based on declarations similar to the TTCF Investor Group's joint declaration.  *See*, *e.g.*, *Crass v. Yalla Grp. Ltd.*, 2021 U.S. Dist. LEXIS 216088, at *20 (S.D.N.Y. Nov. 8, 2021) (appointing Pomerantz LLP as lead counsel for a lead-plaintiff group); *In re Blue Apron Holdings, Inc. Sec. Litig.*, 2017 U.S. Dist. LEXIS 207531, at *14 (E.D.N.Y. Dec. 15, 2017) (same); *Lewis v. Lipocine Inc.*, 2016 U.S. Dist. LEXIS 166532, at *17 (D.N.J. Dec. 2, 2016).  In light of this record, the Ganje group's challenge to the appointment of the TTCF Investor Group lacks credibility.

None of the cases cited by the Ganje group support its contrary argument. *Lako v. LoanDepot, Inc.*, for example, turned on the fact that the court "ha[d] serious concerns about the typicality of the [group] members and its ability to protect the interests of absent class members fairly and adequately."

12

*See* 2022 U.S. Dist. LEXIS 79063, at **12–13 (C.D. Cal. May 2, 2022). The concerns in *LoanDepot* included the group's "fail[ure] to select and apply a rational and consistently applied methodology for calculating its losses," as well as being subject to the unique defense of day trading. *See id.* at **13–15. None of those issues are implicated here. The proposed group in *LoanDepot* also only provided a one-sentence statement regarding the background of one of its group members. *See id.* at *17. Likewise, the proposed group in *Haideri v. Jumei Int'l Holding, Ltd.* provided the court with "no information about [the group members] themselves (*e.g.*, investment experience), their relationships with one another, how they came to be formed as a group, and (perhaps most significantly) how they would cooperate and manage the litigation given their status as a group." 2020 U.S. Dist. LEXIS 162510, at *12–13 (N.D. Cal. Sept. 4, 2020). And the proposed group in *In re Microstrategy Securities Litigation* "failed to present evidence with respect to its formation, its operational structure, or whether the members of the group had ever communicated with one another about their roles." 110 F. Supp. 2d 427, 437 (E.D. Va. 2000). Worse, the group in *Microstrategy* "retained three law firms to serve as co-lead counsel; this fact suggests the group was merely a diverse collection of plaintiffs assembled by these three firms for the purpose of winning the lead plaintiff role, allowing them to share the lead counsel role." All told, *LoanDepot*, *Jumei*, and *Microstrategy* turned on different facts, none of which are present here. *LoanDepot*, *Jumei*, and *Microstrategy* are inapposite.

> **3.      There Are No Errors in the Trading Data Submitted by the TTCF Investor Group and Thus No Basis to Challenge the Group's Adequacy**

All trading data submitted to the Court by the TTCF Investor Group is accurate. The Ganje group's contrary assertion regarding Dr. Hotait's November 2021 trades is unsupported and meritless.

13

As demonstrated in Dr. Hotait's concurrently submitted reply declaration, his February 13, 2023 certification contains accurate information regarding the dates and prices of his November 2021 trades:

| Execution Date | Settlement Date | Number of Shares | Share Price |
|---|---|---|---|
| 11/4/2021 | 11/8/2021 | 2,000 | $18.46 |
| 11/4/2021 | 11/8/2021 | 2,500 | $18.56 |
| 11/5/2021 | 11/9/2021 | 1,200 | $18.13 |

*See* Hotait Reply Decl. ¶ 3. Dr. Hotait's certification (Dkt. No. 28-4 at 9) identifies the "settlement dates" (November 8 and 9, 2021) for his trades, which were assigned the stock prices of the "execution dates" (November 4 and 5, 2021). Moreover, Dr. Hotait's loss chart accurately reflects the execution dates for his November 2021 trades. *See* Dkt. No. 28-5 at 6.

In light of these facts, the Ganje group's attack on the adequacy of Dr. Hotait and his counsel must be rejected. In fact, as demonstrated in the TTCF Investor Group's opposition brief, there are glaring errors in the trading data submitted by each member of the Ganje group and the Tran group in their sworn certifications. *See* Dkt. No. 40 at 12. Specifically, at least 12 trades of the Ganje group and Tran group members reflect stock prices that fall outside the daily trading range. *See id.* These errors cast doubt on the adequacy of the Ganje group and the Tran group, as well as their counsel. *See, e.g., Camp v. Qualcomm Inc.*, 2019 U.S. Dist. LEXIS 10269, at **8–10 (S.D. Cal. Jan. 22, 2019) (errors in transactions records prohibit a movant from satisfying the adequacy and typicality requirements); *In re Boeing Co. Aircraft Sec. Litig.*, 2020 U.S. Dist. LEXIS 15012, at **16–17 (N.D. Ill. Jan. 28, 2020) (rejecting movants who submitted incorrect loss calculations). While the adequacy of these groups need not be considered due to their inability to claim larger losses higher than the TTCF Investor Group, these errors prevent both groups from establishing

14

adequacy under Rule 23(a).  Their competing motions should be denied.

## C.  The Court Should Approve the TTCF Investor Group's Selection of Lead Counsel

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the court's approval.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).  In making this determination, the Court should not disturb the lead plaintiff's choice of counsel unless it is necessary to "protect the interests of the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Here, the TTCF Investor Group has selected Bottini & Bottini to represent the class.  As demonstrated in the firm's resume (Dkt. No. 28-7), the firm has substantial experience in the prosecution of securities fraud class actions and possesses the necessary resources to efficiently conduct this litigation.  The Court should therefore approve the selection of Bottini & Bottini as lead counsel for the class.

## III.   CONCLUSION

For the reasons set forth above and in the TTCF Investor Group's motion, as well as its opposition to the competing motions, John Hancock, Shashank Bagul, John Spadaro, Dr. Mustapha Hotait, and Marco Starace respectfully request that the Court (1) appoint them as a group or, in the alternative, John Hancock individually, as lead plaintiff; (2) approve their selection of Bottini & Bottini, Inc. to serve as lead counsel; and (3) deny all competing motions.

Dated:  March 9, 2023

Respectfully submitted,

BOTTINI & BOTTINI, INC.

s/ Francis A. Bottini, Jr.
Francis A. Bottini, Jr.
Albert Y. Chang
7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone:  (858) 914-2001
Facsimile:    (858) 914-2002
Email:      fbottini@bottinilaw.com
               achang@bottinilaw.com

15

*Counsel for John Hancock, Shashank Bagul, John Spadaro, Dr. Mustapha Hotait, and Marco Starace and Proposed Lead Counsel*

16

## Certificate of Compliance

The undersigned, counsel of record for John Hancock, Shashank Bagul, John Spadaro, Dr. Mustapha Hotait, and Marco Starace, certifies that this brief contains 4,608 words, which complies with the word limit of L.R. 11-6.1.

Dated:  March 9, 2023

_____s/ Francis A. Bottini, Jr._____
Francis A. Bottini, Jr.

1