POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Counsel for Movants Ben Ganje, Mohamed Saad, and Nassib Awad and Proposed Lead Counsel for the Class*

*[Additional Counsel on Signature Page]*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DINKO MIHAYLOV, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TATTOOED CHEF, INC., SALVATORE GALLETTI, and STEPHANIE DIECKMANN,<br><br>Defendants. | Case No. 2:22-cv-09311-GW-E<br><br>REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION OF THE TATTOOED CHEF INVESTOR GROUP FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF COUNSEL<br><br>DATE:  March 23, 2023<br>TIME:  8:30 a.m.<br>JUDGE:  George H. Wu<br>CTRM:  9D, 9th Floor |

# **TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT ................................................................................1

II.     ARGUMENT ......................................................................................................6

        A.      THE GANJE GROUP IS THE PRESUMPTIVE "MOST ADEQUATE PLAINTIFF" ......................................................................................6

                1.      The Trading Patterns of Saad and Ganje do not Render them Inadequate ..........................................................................6

                2.      The Ganje Group's Certifications Are Accurate....................................9

                3.      The Ganje Group Is a Proper Movant Group........................................11

        B.      THE HANCOCK GROUP IS INADEQUATE UNDER RULE 23............13

III.    CONCLUSION..................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Applestein v. Medivation, Inc.*,
  2010 U.S. Dist. LEXIS 98255 (N.D. Cal. Sept. 17, 2010) ..............................7, 8

*Borteanu v. Nikola Corporation*,
  562 F. Supp. 3d 174 (D. Ariz. 2021) ........................................................2, 5, 13

*Cook v. Atossa Genetics, Inc.*,
  No. C13-1836-RSM, 2014 WL 585870 (W.D. Wash. Feb. 14, 2014)...............12

*Haideri v. Jumei Int'l Holding Limited*,
  No. 20-cv-02751-EMC, 2020 WL 5291872 (N.D. Cal. Sept. 4, 2020) ...5, 13, 14

*In re Aqua Metals Sec. Litig.*,
  No. 17-CV-07142-HSG, 2018 WL 4860188 (N.D. Cal. May 23, 2018) ...........12

*In re Bally Total Fitness Sec. Litig.*,
  2005 U.S. Dist. LEXIS 6243 (N.D. Ill. Mar. 15, 2005) .....................................9

*In re Boeing Co. Aircraft Sec. Litig.*,
  No. 19-cv-02394, 2020 WL 476658 (N.D. Ill. Jan. 28, 2020) ..........................15

*In re Microstrategy Sec. Litig.*,
  110 F. Supp. 2d 427 (E.D. Va. 2000) ...............................................................14

*In re Silicon Storage Tech., Inc.*,
  2005 U.S. Dist. LEXIS 45246 (N.D. Cal. May 3, 2005).....................................9

*In re Versata, Inc., Sec. Litig.*,
  No. C 01-1439 SI, 2001 WL 34012374 (N.D. Cal. Aug. 20, 2001) ..............4, 11

*In re Vonage Initial Pub. Offering Secs. Litig.*,
  No. 07-177 (FLW), 2007 WL 2683636 (D.N.J. Sept. 6, 2007) ........................15

*In re Zynga Inc. Sec. Litig.*,
  No. 12-4007, 2013 WL 257161 (N.D. Cal. Jan. 23, 2013) ..............................2, 6

*Lako v. Loandepot, Inc.*,
  8:21-cv-01449-JLS-JDE, 2022 WL 1314463 (May 2, 2022)..................5, 13, 15

*Maiman v. Talbott*,
   No. SACV 09-0012 AG (ANx), 2009 WL 10675075 (C.D. Cal. Sept. 14, 2009) .................................................................................................3, 8

*Markette v. XOMA Corp.*,
   No. 15-cv-03425-HSG, 2016 WL 2902286 (N.D. Cal. May 13, 2016).........4, 11

*Peters v. Colony Credit Real Estate, Inc.*,
   No. CV 20-8305 PSG, 2020 WL 11884392 (C.D. Cal. Dec. 11, 2020) ....2, 5, 12

*Robb v. Fitbit Inc.*,
   2016 WL 2654351 (N.D. Cal. May 10, 2016)................................................3, 8

*Rodriguez v. DraftKings Inc.*,
   21 Civ. 5739 (PAE) *et al.*, 2021 WL 5282006 (S.D.N.Y. Nov. 12, 2021)  .......15

*Sabbagh v. Cell Therapeutics, Inc.*,
   No. C10-414MJP, 2010 WL 3064427 (W.D. Wash. Aug. 2, 2010) ..........2, 5, 13

*Schueneman v. Arena Pharms., Inc.*,
   2011 WL 3475380 (S.D. Cal. Aug. 8, 2011)..................................................3, 6

*Serafimov v. Netopia*,
   No. 04-3364, 2004 WL 7334061 (N.D. Cal. Dec. 3, 2004) ........................3, 6, 7

*Vataj v. Johnson*,
   No. 19-cv-06996-HSG, 2020 WL 532981 (N.D. Cal. Feb. 03, 2020) ...............11

*Welling v. Alexy*,
   155 F.R.D. 654 (N.D. Cal. 1994)........................................................................8

**Statutes**

15 U.S.C. § 78u-4..............................................................................................1

Private Securities Litigation Reform Act of 1995 ............................................*passim*

**Rules**

Fed. R. Civ. P. 23 .............................................................................................*passim*

Movant the Ganje Group[1] respectfully submits this Reply Memorandum of Points and Authorities in further support of the Ganje Group's motion for appointment as Lead Plaintiff and approval of its selection of Pomerantz as Lead Counsel (Dkt. No. 26); and in opposition to the competing motions of: (i) the Hancock Group (Dkt. No. 28); and (ii) the Tran Group (Dkt. No. 22).[2]

## I.    PRELIMINARY STATEMENT

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class" *and* has made a *prima facie* showing of typicality and adequacy within the meaning of Rule 23.  15 U.S.C. § 78u-4(a)(3)(B)(iii).  This presumption can only be rebutted upon proof that the presumptive "most adequate plaintiff" is atypical or inadequate.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Here, the presumptive "most adequate plaintiff"—*i.e.*, the presumptive Lead Plaintiff—is the Ganje Group, having incurred loss of approximately $696,033 in connection with its purchases of Tattooed Chef securities as a result of the Defendants' alleged malfeasance.  The Ganje Group has also made the requisite *prima facie* showings

---

[1] All capitalized terms herein are defined in the Ganje Group's moving and opposition briefs ("Ganje Opp."), unless otherwise indicated.  *See* Dkt. Nos. 30, 41.

[2] Initially two other investor groups, respectively comprised of putative Class members: (i) the Cohen Group and (ii) the Grigorescu Group filed similar motions.  Dkt. Nos. 27, 18.  On February 28, 2023, the Cohen Group filed a notice of non-opposition to the competing motions (Dkt. No. 36), and the Grigorescu Group filed a notice of withdrawal of its motion (Dkt. No. 37).

that it is both adequate and typical under Rule 23. With respect to its adequacy, the Ganje Group has made a robust proffer, in the form of a detailed Joint Declaration in which its three members have attested, *inter alia*, their biographical information, their reasons for seeking appointment jointly as Co-Lead Plaintiffs, their understanding of the responsibilities of a Lead Plaintiff, and their communications with one another prior to the filing of their motion. As such—unlike the Hancock Group, as discussed in greater detail below—the Ganje Group is precisely the type of movant group that courts routinely appoint to serve as Lead Plaintiffs in PSLRA actions. *See*, *e.g.*, *Peters v. Colony Credit Real Estate, Inc.*, No. CV 20-8305 PSG (PVCx), 2020 WL 11884392, at *4 (C.D. Cal. Dec. 11, 2020); *Borteanu v. Nikola Corporation*, 562 F. Supp. 3d 174, 187 (D. Ariz. 2021); *Sabbagh v. Cell Therapeutics, Inc.*, No. C10-414MJP, 2010 WL 3064427, at *6 (W.D. Wash. Aug. 2, 2010).

Nonetheless, two competing movants—the Hancock Group and the Tran Group—contest the Ganje Group's appointment. In its opposition brief (*see generally* Dkt. No. 40) ("Hancock Opp."), the Hancock Group argues that Saad and Ganje are precluded from serving as lead plaintiffs because Saad is "a day trader and a so-called 'in-and-out' trader" and Ganje "sold nearly one-third of his holdings." Hancock Opp. at 4. However, courts in the Ninth Circuit have expressly allowed for the appointment of such investors as lead plaintiffs. *See*, *e.g.*, *In re Zynga Inc. Sec. Litig.*, No. 12-4007, 2013 WL 257161, at *2 (N.D. Cal. Jan. 23, 2013) (holding that the presumptive lead plaintiff was typical and

adequate under Rule 23 despite qualifying as a day trader); *Serafimov v. Netopia*, No. 04-3364, 2004 WL 7334061, at *5 (N.D. Cal. Dec. 3, 2004) (noting that many courts, including the Ninth Circuit, have permitted day traders to serve as lead plaintiffs); *Schueneman v. Arena Pharms., Inc.*, 2011 WL 3475380, at *7 (S.D. Cal. Aug. 8, 2011) (finding that "a plaintiff's status as a purported 'day trader' is not enough in and of itself to rebut the presumption of adequacy"); *Robb v. Fitbit Inc.*, 2016 WL 2654351, at *6-*7 (N.D. Cal. May 10, 2016) (appointing as lead plaintiff investor group that included in-and-out trader) (citing *Welling v. Alexy*, 155 F.R.D. 654, 661-62 (N.D. Cal. 1994)); *Maiman v. Talbott*, No. SACV 09-0012 AG (ANx), 2009 WL 10675075, at *3 (C.D. Cal. Sept. 14, 2009) (appointing movant group as lead plaintiff despite two of its members being in-and-out traders).

Second, the Hancock Group inaccurately claims that "there are errors in the trading data in the PSLRA-mandated certifications submitted by the [Ganje Group]." Hancock Opp. at 10. Specifically, the Hancock Group claims that the Ganje Group "has submitted at least ten trades that contain share prices falling outside the daily trading range." *Id.* However, the Ganje Group's Certifications are in fact accurate. In nine of the trades in question, the prices submitted by the Ganje Group fell outside of the daily trading range alleged in the Hancock Opp. purely because these transactions were made after the market had closed. *See* Section II.A.2, *infra*. In addition, the tenth trade in question, made by Ganje on April 16, 2021, involved an options assignment, pursuant to which Ganje was

obligated to exercise his option at a price outside of the daily trading range, that was provided in the schedule of transactions appended to the PSLRA certification executed by Ganje, as well as the damages analysis submitted by the Ganje Group in support of its motion for appointment as lead plaintiff. *See* Dkt. Nos. 34-5 at *5; 34-3. Accordingly, contrary to the claims of the Hancock Group, the PSLRA-mandated certifications submitted by the members of the Ganje Group clearly ***do not*** contain errors and therefore ***do not*** cast doubt on the Ganje Group's adequacy to serve as lead plaintiff.

Finally, the Tran Group argues in its opposition brief (*see generally* Dkt. No. 39) ("Tran Opp.") that the Ganje Group is inadequate to represent the class because it is a "non-cohesive group[] of unrelated investors, cobbled together by their counsel for the purpose of obtaining lead plaintiff[.]" *Id.* at 2. Yet the PSLRA does not preclude the appointment of groups comprised of unrelated investors as Lead Plaintiffs in PSLRA actions, where, as here, a group has demonstrated its cohesiveness. *See*, *e.g.*, *Markette v. XOMA Corp.*, No. 15-cv-03425-HSG, 2016 WL 2902286, at *8 (N.D. Cal. May 13, 2016) ("'[R]equiring a pre-litigation relationship, though appealing in its simplicity, is too rigid; it is not the only way, or necessarily the best way, to ensure that the lead plaintiffs will actively represent the interests of the purported class.'") (quoting *In re Versata, Inc., Sec. Litig.*, No. C 01-1439 SI, 2001 WL 34012374, at *5 (N.D. Cal. Aug. 20, 2001)). As discussed at length in the Ganje Opp., the Ganje Group has submitted a detailed Joint Declaration executed by its three members, which contains, *inter alia*, detailed

biographical information about each group member, a meaningful explanation of its members' reasons for seeking appointment jointly as Co-Lead Plaintiffs, and attestations to communications among its members prior to the filing of their motion. *See generally* Ganje Opp. at \*7-\*8; Dkt. No. 34-2. Accordingly, the Ganje Group is precisely the type of group of investors routinely appointed to serve as Lead Plaintiff in the Ninth Circuit. *See*, *e.g.*, *Peters*, 2020 WL 11884392 at \*4; *Nikola*, 562 F. Supp. at 187; *Cell Therapeutics*, 2010 WL 3064427 at \*6.

The Hancock Group, the only movant claiming a larger loss than the Ganje Group, is ineligible for appointment because it is inadequate within the meaning of Rule 23. Specifically, the Hancock Group is inadequate because the group's members, who apparently have never communicated with one another and have told the Court practically nothing about themselves, have wholly failed to demonstrate their preparedness to work cohesively if appointed to serve as Lead Plaintiffs. *See*, *e.g.*, *Lako v. Loandepot, Inc.*, 8:21-cv-01449-JLS-JDE, 2022 WL 1314463, at \*6 (May 2, 2022); *Haideri v. Jumei Int'l Holding Limited*, No. 20-cv-02751-EMC, 2020 WL 5291872, at \*5 (N.D. Cal. Sept. 4, 2020). In addition, the Hancock Group is inadequate because the schedule of Class Period transactions in Tattooed Chef shares submitted by one of its members, Mr. Hatoit, contains significant and disqualifying errors relating to the prices at which he purchased certain shares. *See*, *e.g.*, *Loandepot*, 2022 WL 1314463 at \*5; *Haideri*, 2020 WL 5291872 at \*5. Finally, the Hancock Group made no effort in its opposition brief or otherwise to

supplement their initial proffer and cure these deficiencies.  Indeed, as of the time of this writing, the inadequacies of the Hancock Group remain unaddressed.

For the reasons set forth herein, the Ganje Group respectfully submits that its motion should be granted in its entirety and that the competing motions should be denied.

## II.   ARGUMENT

### A.   THE GANJE GROUP IS THE PRESUMPTIVE "MOST ADEQUATE PLAINTIFF"

#### 1.   The Trading Patterns of Saad and Ganje do not Render them Inadequate

The Hancock Group claims that the trading patterns of Saad and Ganje subject them to disqualifying unique defenses and render them inadequate to serve as lead plaintiffs.  Specifically, the Hancock Group argues that Saad and Ganje are precluded from serving as lead plaintiffs because Saad is "a day trader and a so-called 'in-and-out' trader" and Ganje "sold nearly one-third of his holdings." *See* Hancock Opp. at 4.   These arguments are unavailing.

Even accepting *arguendo* the Hancock Group's characterization of Saad as a day trader, courts in the Ninth Circuit routinely appoint such investors to serve as lead plaintiffs. *See*, *e.g.*, *Zynga*, 2013 WL 257161, at \*2 (holding that the presumptive lead plaintiff was typical and adequate under Rule 23 despite his status as a day trader); *Netopia*, 2004 WL 7334061, at \*5 (noting that many courts, including the Ninth Circuit, have permitted day traders to serve as lead plaintiffs); *Schueneman*, 2011 WL 3475380, at

*7 (finding that "a plaintiff's status as a purported "day trader" is not enough in and of itself to rebut the presumption of adequacy"). Specifically, the Ninth Circuit has held that "day traders suffer as do other traders under fraud-on-the-market-theory." *Netopia*, 2004 WL 7334061, at *5 (citing *Wool v. Tandem Computers*, 818 F.2d 1433, 1437 (9th Cir. 1987) (*overruled on other grounds* by *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1575 (9th Cir. 1990))). Accordingly, even crediting the Hancock Group's characterization of Saad as a day trader, this has no bearing whatsoever on his adequacy to serve as a lead plaintiff.

In addition, the cases that the Hancock Group cite in which courts declined to appoint purported day traders as lead plaintiffs are inapposite. For example, in *Applestein v. Medivation, Inc.,* 2010 U.S. Dist. LEXIS 98255, (N.D. Cal. Sept. 17, 2010), the trading activity of the movant in question involved both buying and selling stock on the same day on multiple occasions, sometimes making "as many as ***44 trades in a single day***." *Id.* at *9 (emphasis added). Likewise, in *Verifone*, 2008 U.S. Dist. LEXIS 64633, the movant in question made an average of nineteen trades a day in the subject shares for the entirety of the nine-month class period. *Id.* at *35. Here, by contrast, the Hancock Group asserts only that Saad "executed over 920 trades between November 10, 2021 and March 2, 2022" and "[i]n a two-day period between November 10 and 11, 2021 [. . .] Mr. Saad purchased 4,150 shares of Tattooed Chef stock in seven trades and immediately sold them in 27 trades." Hancock Opp. at 8-9. Moreover, while certain of Saad's trading activity may

MEMORANDUM OF POINTS AND AUTHORITIES - 2:22-cv-09311-GW-E

7

have technically qualified as day trading, as the schedule of transactions appended to his PSLRA certification (Dkt. No. 34-5 at *8-*21) reflects, the majority of his trading activity ***does not*** meet that definition. As such, Saad's trading activity was nowhere near as frenetic as that of the investors at issue in *Applestein* and *Verifone*.

Likewise, accepting *arguendo* the Hancock Group's characterization of Saad and Ganje as in-and-out traders, courts in the Ninth Circuit routinely appoint such investors as lead plaintiffs. *See*, *e.g.*, *Fitbit*, 2016 WL 2654351, at *6-7 (appointing as lead plaintiff investor group that included in-and-out trader) (citing *Welling*, 155 F.R.D. at 661-62); *Talbott*, 2009 WL 10675075, at *3 (appointing movant group as lead plaintiff despite two of its members being in-and-out traders). Like any other investor, in-and-out traders would have purchased securities at prices artificially inflated by false and misleading statements incurred investment losses when the value of those shares declined following a corrective disclosure. In *Talbott*, the court found that the fact that lead plaintiff movants "sold their shares during the class period does not mean they are incapable of proving loss causation." *Talbott*, 2009 WL 10675075, at *3; *see also Welling*, 155 F.R.D. at 662 ("[T]he Ninth Circuit has repeatedly held that in/out traders suffer damages under the fraud-on-the-market theory as do other types of traders."); *Fitbit*, 2016 WL 2654351 at *6 (noting that "other courts have certified classes and appointed in-and-out traders as class representatives in securities actions" because "[t]o meet the typicality requirement, the claims of a lead plaintiff and class members need not be identical" and "'[t]he focus of the

typicality inquiry is not on Plaintiff's behavior, but defendants'") .  Accordingly, whether or not Saad or Ganje may be considered in-and-out traders has absolutely no bearing on their adequacy to serve as lead plaintiffs because Saad and Ganje, like all other Class members, purchased Tattooed Chef shares at artificially inflated prices and were harmed thereby.

The cases cited by the Hancock Group to support its argument that Saad is disqualified from serving as lead plaintiff because he is an in-and-out trader are generally inapposite.  For example, in *In re Silicon Storage Tech., Inc.*, 2005 U.S. Dist. LEXIS 45246 (N.D. Cal. May 3, 2005), the movants in question purchased a total of 286,174 shares during the proposed class period and ***sold 342,174*** shares during the class period.  *Id.* at *11 (emphasis added).  In *In re Bally Total Fitness Sec. Litig.*, 2005 U.S. Dist. LEXIS 6243, at *18 (N.D. Ill. Mar. 15, 2005), the movant in question had purchased ***and sold*** all of its shares when the alleged fraud became public, and thus retained no shares at the end of the class period.  By contrast, merely as a result of receiving options assignments in one of his accounts, Ganje exited his position in Tattooed Chef stock only ***twice,*** with one of these instances occurring only because he was obligated to exit his position pursuant to the terms of the options contract he had entered into.  *See* Dkt No. 34-5 at *4-*5.  As such, Saad and Ganje's trading activity is not analogous to the trading at issue in *Silicon* and *Bally*.

### 2.     The Ganje Group's Certifications Are Accurate

MEMORANDUM OF POINTS AND AUTHORITIES - 2:22-cv-09311-GW-E

9

The Hancock Group also argues that "there are errors in the trading data in the PSLRA-mandated certifications submitted by the [Ganje Group]" because the Ganje Group allegedly "submitted at least ten trades that contain share prices falling outside the daily trading range." Hancock Opp. at 10. Specifically, the Hancock Group argues that Saad submitted incorrect prices for trades occurring on November 10, 2021, May 9, 2022, and September 7, 2022, and that Awad submitted an incorrect price for a trade occurring on August 12, 2021. *Id.*

The Hancock Group is wrong. Saad and Awad made the trades at issue after the market had closed on the dates in question. The prices stated on their respective Certifications were thus outside of the relevant daily trading ranges, which reflect only trading prices during regular market hours. As the chart below illustrates, these prices are within the post-market trading range for the dates in question and are thus accurate.

| Date | Price Listed | Post-Market Low | Post-Market High | In Range? |
|---|---|---|---|---|
| 11/10/2021 | $16.26 | $16.10 | $17.23 | Yes |
| 11/10/2021 | $16.33 | $16.10 | $17.23 | Yes |
| 11/10/2021 | $16.35 | $16.10 | $17.23 | Yes |
| 11/10/2021 | $16.36 | $16.10 | $17.23 | Yes |
| 11/10/2021 | $16.38 | $16.10 | $17.23 | Yes |
| 11/10/2021 | $16.37 | $16.10 | $17.23 | Yes |
| 5/9/2022 | $6.77 | $6.5565 | $7.51 | Yes |
| 9/7/2022 | $6.46 | $6.38 | $6.50 | Yes |
| 8/12/2021 | $18.50 | $18.15 | $20.31 | Yes |

In addition, the Hancock Group argues that Ganje submitted an incorrect price for a trade that occurred on April 16, 2021. Hancock Opp. at 10. However, this trade was

executed at a price outside of the daily trading range because it an involved an options assignment—that is, pursuant to the terms of the options contract, Ganje was obligated to execute this trade at this price. *See* Dkt. No. 34-5 at *5. This options assignment was clearly disclosed in the schedule of transactions appended to the PSLRA certification executed by Ganje, as well as the damages analysis submitted by the Ganje Group in support of its motion for appointment as lead plaintiff. *See id*; Dkt. No. 34-3.

Accordingly, contrary to the claims of the Hancock Group, the Certifications submitted by the members of the Ganje Group are accurate in all respects and contain no errors that would cast doubt on the Ganje Group's adequacy to serve as lead plaintiff.

### 3. The Ganje Group Is a Proper Movant Group

Finally, the Tran Group argues in its opposition brief that the Ganje Group is inadequate to represent the class because it is a "non-cohesive group[] of unrelated investors, cobbled together by their counsel for the purpose of obtaining lead plaintiff." Tran Opp. at 2. However, the PSLRA does not prohibit the appointment of movant groups comprised of unrelated investors, and courts in the Ninth Circuit routinely appoint such groups to serve as Lead Plaintiffs. *See*, *e.g.*, *XOMA Corp.*, 2016 WL 2902286, at *8 ("'[R]equiring a pre-litigation relationship, though appealing in its simplicity, is too rigid; it is not the only way, or necessarily the best way, to ensure that the lead plaintiffs will actively represent the interests of the purported class.'") (quoting *Versata*, 2001 WL 34012374 at *5); *Vataj v. Johnson*, No. 19-cv-06996-HSG, 2020 WL 532981, at *2 n.1

(N.D. Cal. Feb. 03, 2020) ("[T]his Court 'has held that a group of previously-unrelated investors may show that it is an adequate class representative if it demonstrates that the group is small and cohesive, and that the individual members have demonstrated an ability to work together effectively on behalf of the class.'"); *In re Aqua Metals Sec. Litig.*, No. 17-CV-07142-HSG, 2018 WL 4860188, at *4 (N.D. Cal. May 23, 2018) (appointing unrelated movant group as lead plaintiff because the members of the group "attest[ed] in their joint declaration that they [were] 'committed to maximizing recovery for the class and [would] ensure that lead counsel works expeditiously and effectively to bring about a fair resolution to the allegations in this action'"); *Cook v. Atossa Genetics, Inc.*, CASE NO. C13-1836-RSM, 2014 WL 585870, at *6 (W.D. Wash. Feb. 14, 2014) (same).

The Ganje Group is precisely the type of investor group that courts in the Ninth Circuit appoint to serve as Lead Plaintiffs in PSLRA actions.  The Ganje Group has robustly demonstrated its adequacy by its submission of a Joint Declaration, wherein its three members provided detailed biographical information, explained their reasons for seeking appointment jointly as Co-Lead Plaintiffs, attested to their understanding of the responsibilities of a Lead Plaintiff, and attested to their communications with one another prior to the filing of their motion.  Courts routinely find movant groups to be adequate where they have submitted such detailed joint declarations. *See*, *e.g.*, *Peters*, 2020 WL 11884392, at *4 (appointing movant group that submitted a "Joint Declaration detail[ing] their participation in a conference call with one another prior to filing this motion, their

backgrounds, their investing experience, their understanding of the responsibilities of a lead plaintiff pursuant to the PSLRA, their decision to seek appointment jointly as co-lead plaintiffs, and the steps that each of them are prepared to take cooperatively to prosecute this litigation on behalf of the putative class."); *Nikola*, 562 F. Supp. at 187 (same); *Sabbagh*, 2010 WL 3064427 at *6 (same). Accordingly, because the Joint Declaration submitted by the members of the Ganje Group provides comprehensive details regarding its members, their rationale for seeking appointment as Co-Lead Plaintiffs, and their understanding of the role of the lead plaintiff, there is simply no basis for the Tran Group's assertion that the Ganje Group is inadequate.

### B. THE HANCOCK GROUP IS INADEQUATE UNDER RULE 23

While the Hancock Group claims a larger financial interest in this litigation than the Ganje Group, the Hancock Group is disqualified from consideration irrespective of its financial interest because the group is inadequate.

First, as discussed at length in the Ganje Opp., the Hancock Group is plainly an improper group that exists only to aggregate its members' losses in an effort to satisfy the PSLRA's "largest financial interest" criterion. Although the PSLRA permits the appointment of investor groups, courts generally deny motions by groups whose members have not shown that they are prepared to act cooperatively on behalf of the Class. *See, e.g., Loandepot*, 2022 WL 1314463 at *6; *Haideri*, 2020 WL 5291872 at *5. Here, the Joint Declaration submitted by the Hancock Group (the "Hancock Declaration") attests to

no pre-litigation relationship nor any meaningful communications to date among the group's members. *See generally* Dkt. No. 28-6.  In fact, there is nothing whatsoever to indicate that these individuals had so much as a single telephone conversation or email exchange with one another prior to the filing of their motion.  Significantly, this is at odds with the unsworn assertion in the Hancock Group's moving brief, which states that "[t]he group members ***have communicated with one another*** and have established protocols to communicate with and manage counsel." Dkt No. 28-1 at 6 (emphasis added).  The dearth of such basic information speaks volumes about the Hancock Group's utter lack of engagement in this litigation.  *See*, *e.g.*, *Haideri*, 2020 WL 5291872, at \*5; *In re Microstrategy Sec. Litig.*, 110 F. Supp. 2d 427, 437 (E.D. Va. 2000) (denying motion where movant group failed to show it members "had ever communicated with one another about their roles").  Finally, as compared to the small and cohesive three member Ganje Group, the five member Hancock Group will likely encounter significant logistical difficulties in coordinating its activities and communications, thereby impeding the group's ability to effectively represent the Class.  Its meager showing to date suggests that the group may have already encountered such difficulties.

Second, as discussed in the Ganje Opp., the Hancock Group's submissions—specifically, the Certification of one group member, Mr. Hotait—contain errors that preclude not only Mr. Hotait's appointment as Lead Plaintiff, but that of the Hancock Group altogether.  Ganje Opp. at 16-17.  As required by the PSLRA, Mr. Hotait has filed

a Certification, under penalty of perjury, appended to which is a schedule setting forth his "transactions during the Class Period in the securities of Tattooed Chef, Inc."  Dkt. No. 28-4 at *8.  Among the transactions to which Mr. Hotait has attested, 5,700 of the Tattooed Chef shares he claims to have purchased, or **57%** of his total Class Period purchases, are listed at prices significantly outside the range of prices within which the Company's stock traded on the dates in question.  Ganje Opp. at 16-17.  Courts routinely deny motions for lead plaintiff appointment on the basis of such errors, as they raise disqualifying questions as to a movant's attention to detail and general readiness to prosecute a complex securities class action.  *See*, *e.g.*, *Loandepot*, 2022 WL 1314463, at *5; *Rodriguez v. DraftKings Inc.*, 21 Civ. 5739 (PAE) *et al.*, 2021 WL 5282006, at *9 (S.D.N.Y. Nov. 12, 2021).[3]

Tellingly, the Hancock Group has done nothing to supplement its initial proffer in its opposition papers.  *See generally* Dkt. No. 40.  Given the glaring omissions in its in initial Joint Declaration, the Hancock Group might have submitted a supplement Joint Declaration with its opposition brief in order to provide the Court with additional information about the group, but apparently opted not to do so.  Nor has the Hancock Group explained the discrepancy between its Joint Declaration, which attests to no communications among its group's members (Dkt. No. 28-6), and its motion brief, which

---

[3] *See also In re Vonage Initial Pub. Offering Secs. Litig.*, No. 07-177 (FLW), 2007 WL 2683636, at *7, *8 n.8 (D.N.J. Sept. 6, 2007) (denying motion by movant whose certification "contained incorrect trading data and loss calculations," finding it to be "plagued with misinformation"); *In re Boeing Co. Aircraft Sec. Litig.*, No. 19-cv-02394, 2020 WL 476658, at *5-6 (N.D. Ill. Jan. 28, 2020) (denying motion by movants where errors in loss calculations demonstrated that movants either knowingly submitted incorrect information or failed to review their submissions before filing).

claims that its members have communicated with one another (Dkt No. 28-1 at 6). Likewise, the errors in Mr. Hatoit's Certification remain unaddressed. Accordingly, either the Hancock Group does not recognize the Hancock Declaration's deficiencies, or the group is aware of the deficiencies and has elected not to cure them. The Ganje Group respectfully submits that neither explanation bodes well for the group's leadership.

## III. CONCLUSION

For the foregoing reasons, the Ganje Group respectfully requests that the Court issue an Order granting its motion in full and denying the competing motions.

Dated:  March 9, 2023

Respectfully submitted,

POMERANTZ LLP

*/s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Counsel for Movants Ben Ganje, Mohamed Saad, and Nassib Awad and Proposed Lead Counsel for the Class*

BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC
Peretz Bronstein
(*pro hac vice* application forthcoming)
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Additional Counsel for Movants Ben Ganje, Mohamed Saad, and Nassib Awad*

CERTIFICATE OF SERVICE

I hereby certify that on March 9, 2023, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Jennifer Pafiti*
Jennifer Pafiti