Bottini & Bottini, inc.

Francis A. Bottini, Jr. (SBN 175783)
   fbottini@bottinilaw.com
Albert Y. Chang (SBN 296065)
   achang@bottinilaw.com
7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone: (858) 914-2001
Facsimile:  (858) 914-2002

*Counsel for Plaintiffs John Hancock, Shashank Bagul, John Spadaro,*
*Dr. Mustapha Hotait, and Marco Starace*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| DINKO MIHAYLOV, JOHN HANCOCK, SHASHANK BAGUL, JOHN SPADARO, MUSTAPHA HOTAIT, and MARCO STARACE, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> TATTOOED CHEF, INC., SALVATORE GALLETTI, STEPHANIE DIECKMANN, CHARLES F. CARGILE, EDWARD GELFAND, PAULA CIARAMITARO, MARIE QUINTERO-JOHNSON, SARAH GALLETTI, and BDO USA, LLP, <br><br> Defendants. | Case No. 2:22-cv-9311-GW-E <br><br> Class Action <br><br> **Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendant Charles F. Cargile's Motion to Dismiss the First Amended Class Action Complaint** <br><br> Judge:      Hon. George H. Wu <br> Date:        December 12, 2024 <br> Time:        8:30 a.m. <br> Courtroom: 9D, 9th Floor |

**Table of Contents**

I.      INTRODUCTION ...................................................................................1

II.     ARGUMENT ........................................................................................2

        A.      Plaintiffs Have Stated a Section 10(b) Claim Against Cargile for Securities Fraud ...........................................................2

                1.      Defendants' Statements Were Materially False and Misleading........................................................................2

                2.      Plaintiffs Have Adequately Alleged Scienter ....................10

        B.      Plaintiffs Have Stated a Section 20(a) Claim Against Cargile for Control-Person Liability.............................................13

        C.      Should the Court Grant the Individual Defendants' Motion, the Court Should Grant Leave to Amend ......................13

III.    CONCLUSION....................................................................................14

**Table of Authorities**

**Cases**

*Azar v. Yelp, Inc.,*
2018 WL 6182756 (N.D. Cal. Nov. 27, 2018)......................................................8

*Berson v. Applied Signal Tech., Inc.,*
527 F.3d 982 (9th Cir. 2008).............................................................................11

*Black v. Snap, Inc.,*
2023 U.S. Dist. LEXIS 188695 (C.D. Cal. Sept. 26, 2023) ........................13, 14

*Boston Ret. Sys. v. Uber Techs., Inc.,*
2020 U.S. Dist. LEXIS 141724 (N.D. Cal. Aug. 7, 2020)...................................6

*Brody v. Transitional Hosps. Corp.,*
280 F.3d 997 (9th Cir. 2002)...............................................................................4

*DCD Programs, Ltd. v. Leighton,*
833 F.2d 183 (9th Cir. 1987)..............................................................................14

*Dura Pharms., Inc. v. Broudo,*
544 U.S. 336 (2005) .............................................................................................2

*Foman v. Davis,*
371 U.S. 178 (1962) ...........................................................................................14

*Howard v. Everex Sys., Inc.,*
228 F.3d 1057 (9th Cir. 2000).............................................................................13

*In re Alphabet, Inc. Sec. Litig.,*
1 F.4th 687 (9th Cir. 2021).............................................................................11, 12

*In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.,*
324 F. Supp. 2d 474 (S.D.N.Y. 2004) ................................................................9

*In re CV Therapeutics, Inc. Sec. Litig.,*
2004 WL 1753251 (N.D. Cal. Aug. 5, 2004).......................................................7

*In re Facebook, Inc. Sec. Litig.,*
87 F.4th 934 (9th Cir. 2023) ................................................................................4

*In re Hewlett Packard Co. Sec. Litig.,*
2013 U.S. Dist. LEXIS 168292 (N.D. Cal. Nov. 26, 2013)..............................4

*In re InterMune, Inc. Sec. Litig.,*
2004 WL 1737264 (N.D. Cal. July 30, 2004) ......................................................7

*In re Quality Sys., Inc. Sec. Litig.,*
865 F.3d 1130 (9th Cir. 2017)..............................................................................7

*Jiangchen v. Rentech, Inc.,*
2017 U.S. Dist. LEXIS 222743 (C.D. Cal. Nov. 20, 2017) .............................14

*Markette v. XOMA Corp.,*
  2017 WL 4310759 (N.D. Cal. Sept. 28, 2017)......................................................6

*Matrixx Initiatives, Inc. v. Siracusano,*
  563 U.S. 27 (2011) ................................................................................................13

*N.Y. Hotel Trades Council v. Impax Labs., Inc.,*
  2021 WL 81719 (9th Cir. Jan. 11, 2021) ..............................................................7

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund,*
  575 U.S. 175 (2015) ...............................................................................................6

*Pirani v. Slack Techs., Inc.,*
  445 F. Supp. 3d 367 (N.D. Cal. 2020) ..................................................................5

*Police Ret. Sys. of St. Louis v. Granite Constr. Inc.,*
  2021 U.S. Dist. LEXIS 257297 (N.D. Cal. Sept. 16, 2021)..................................9

*Reese v. Malone,*
  747 F.3d 557 (9th Cir. 2014)...............................................................10, 11, 12, 13

*S. Ferry LP v. Killinger,*
  542 F.3d 776 (9th Cir. 2008)................................................................................11

*S.E.C. v. Todd,*
  642 F.3d 1207 (9th Cir. 2011)..........................................................................5, 10

*Shreiber v. Synacor, Inc.,*
  832 F. App'x 54 (2d Cir. 2020) .............................................................................6

*Teamsters Local 617 Pension & Welfare Funds v. Apollo Grp., Inc.,*
  690 F. Supp. 2d 959 (D. Ariz. 2010)...................................................................13

*United States ex rel. Tamanaha v. Furukawa Am., Inc.,*
  445 F. App'x 992 (9th Cir. 2011) ........................................................................14

**Statutes**

15 U.S.C. § 78j.................................................................................i, 1, 2, 9, 13

15 U.S.C. § 78t .......................................................................................i, 1, 13

15 U.S.C. § 78u-5..............................................................................................7

**Rules**

FED. R. CIV. P. 15 .............................................................................................14

iii

Plaintiffs John Hancock, Shashank Bagul, John Spadaro, Dr. Mustapha Hotait, and Marco Starace ("Plaintiffs") respectfully submit this memorandum in opposition to the September 10, 2024 motion (Dkt. No. 100) of Defendant Charles F. Cargile to dismiss Plaintiffs' First Amended Class Action Complaint ("FAC") (Dkt. No. 64).[1]  The Court should deny Cargile's motion because, as discussed below, Plaintiffs have stated claims against him under Sections 10(b) and 20(a) of the Securities Exchange Act (the "Exchange Act"), 15 U.S.C. §§ 78j(b), 78t(a), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA").

## I.    INTRODUCTION

The Court should deny Cargile's motion because the FAC alleges ample particularized facts of his participation in the accounting scheme that required Tattooed Chef, Inc. ("Tattooed Chef" or the "Company") to restate its financial statements, and eventually brought it into bankruptcy.  As Tattooed Chef's Chief Financial Officer ("CFO"), Cargile was directly involved in the scheme. ¶¶ 13, 19, 38, 45, 56, 64–65.[2]  He signed the false and misleading financial reports at issue.  ¶¶ 38, 56.  Confidential Witness #3 ("CW#3") directly reported to him at least nine material weaknesses identified by BDO at year end in 2020. ¶ 73.  Specific and particularized, these allegations of Cargile's direct involvement in the scheme give rise to a strong inference of scienter, satisfying the pleading requirements of the PSLRA.  Accordingly, Cargile's challenges to the sufficiency of the FAC are meritless and should be rejected.

---

[1] Plaintiffs incorporate by reference their oppositions to the motions (Dkt. Nos. 99, 102) of Defendant BDO USA, LLP ("BDO") and Defendants Salvatore Galletti, Stephanie Dieckmann, Edward Gelfand, Paula Ciaramitaro, Marie Quintero-Johnson, and Sarah Galletti (the "Individual Defendants").

[2] The allegations in the FAC are cited as "¶ ___."  Unless otherwise noted, all emphases in quoted texts are added.

1

## II.    ARGUMENT

### A.    Plaintiffs Have Stated a Section 10(b) Claim Against Cargile for Securities Fraud

To state a Section 10(b) claim, a plaintiff need only plead that: (1) defendants made a material misrepresentation or omission; (2) the misrepresentation was in connection with the purchase or sale of a security; (3) the misrepresentation caused plaintiff's loss; (4) plaintiff relied on the misrepresentation or omission; (5) defendants acted with scienter; and (6) that plaintiff suffered damages. *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341–42 (2005). Here, Cargile challenges only the FAC's sufficiency with respect to two elements: falsity and scienter. As discussed below, Cargile's challenges to the pleading sufficiency of the FAC are meritless.

#### 1.    Defendants' Statements Were Materially False and Misleading

##### a.    The Investor Day Presentation Was False and Misleading

Cargile does not — and cannot — dispute that he, together with Defendants Sam Galletti and Dieckmann, provided the earnings guidance in the Company's December 15, 2020 Investor Day presentation. *See* ¶ 45. Nor can he dispute that the presentation highlighted the Company's 645% growth of its branded products, which had been purportedly achieved "with no spending on marketing promotion":

2



¶ 46. Cargile, together with Defendants Sam and Sarah Galletti, and Dieckmann, told the analysts that the Company would launch its first advertising and marketing campaign in 2021, which would drive significant continued growth. ¶¶ 38, 45, 50. These statements were false and misleading because they failed to disclose the fact that, far from being premised on "no spending on marketing promotion," Tattooed Chef's aggressive growth strategy was premised on paying significant slotting fees and in-store promotion fees to get its products into the frozen food section of grocery stores, and that those expenses were required by GAAP[3] to be booked as reductions to revenue and thus would decrease rather than increase the growth rate. ¶ 47. As a result, these statements about revenue growth were materially misleading. *Id.*[4]

---

[3] Generally Accepted Accounting Principles.

[4] The misrepresentations about the growth rate the Company *had already achieved*, without the need to spend any money on marketing, were not "forward-looking statements" and thus not protected by the PSLRA's safe-harbor provision.

3

Disputing the presentation's falsity, Cargile makes two meritless arguments. First, Cargile argues that the presentation was truthful pointing to the absence of any allegations that "the Company, in fact, had historically spent money on marketing promotions." Cargile's Mem. at 22. Even assuming the truth of the "no spending on market promotion" statement standing alone, the presentation gives the impression that Tattooed Chef would be able to continue its explosive growth, in both revenue and branded sales, without "spending on marketing promotion[s]":

- "We have grown our revenue and established a successful branded product with _no spending on marketing promotion_."
- "We expect significant benefits from marketing efforts in 2021 and beyond."

¶ 46 (emphasis in original). This impression is false and misleading because Cargile and the other Individual Defendants knew that, to comply with GAAP, the upcoming significant slotting fees and in-store promotion fees would have to be deducted from revenue. _See_ ¶ 47. As the Ninth Circuit held in _In re Facebook, Inc. Securities Litigation_, a statement is materially false and misleading if it "'create[s] an impression of a state of affairs that differ[s] in a material way from the one that actually exist[s].'" 87 F.4th 934, 950 (9th Cir. 2023) (quoting _Brody v. Transitional Hosps. Corp._, 280 F.3d 997, 1006 (9th Cir. 2002)). Thus, the "no spending on marketing promotion" statement is at best half-truth, because a defendant who chooses to speak on a subject must disclose the whole truth and not conceal material information. _See In re Hewlett Packard Co. Sec. Litig._, 2013 U.S. Dist. LEXIS 168292, at *34 (N.D. Cal. Nov. 26, 2013).

Second, Cargile accuses Plaintiffs of "cherry-picking" isolated public statements, and argues that the Company had "clearly disclosed … [that it] would incur slotting fees." Cargile's Mem. at 22. Even assuming that the

Company's other unrelated public filings (such as its Form 8-K and Prospectus) can be considered to cure the falsity of the December 15, 2020 presentation, the purported curative disclosures submitted by Cargile say nothing about the accounting treatment of the slotting fees or the impossibility of aggressive growth in branded products without revenue reduction. Cargile's argument based on purported curative disclosures is unavailing.

In any event, "[g]enerally, whether a public statement is misleading, or whether adverse facts were adequately disclosed is a mixed question to be decided by the trier of fact." *Pirani v. Slack Techs., Inc.*, 445 F. Supp. 3d 367, 385 (N.D. Cal. 2020) (internal quotation marks and citations omitted). "[R]esolving an issue as a matter of law is only appropriate when the adequacy of the disclosure is so obvious that reasonable minds [could] not differ." *S.E.C. v. Todd*, 642 F.3d 1207, 1220 (9th Cir. 2011). The Court should reject Cargile's attempt to raise the factual issues of falsity and materiality at the pleadings stage. *See id*.

**b. The 2021 Revenue Projections Fall Outside Any Safe-Harbor Protection**

Cargile challenges the falsity of the revenue projections in the December 15, 2020 presentation by claiming protection under the PSLRA's safe-harbor provision. But the falsity of those projections are clear on their face:

5

**2021 GUIDANCE AND BEYOND**

| Year | Revenue | Gross Margin | Adjusted EBITDA |
|------|---------|--------------|-----------------|
| 2021 | $222 million | 20% - 25% | $8-10 million |
| 2022 | $300 million | 25% - 30% | mid-teens as % of sales |
| 2023 | $500 million | 30% - 35% | high-teens as % of sales |
| 2026 | $1 billion | 35%+ | 20%+ as % of sales |

¶ 45. The revenue projections were "not accompanied by any meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the guidance." ¶ 45 n.9. Cargile and "knew at the time that Tattooed Chef's growth plan and projected revenues and gross profits/margins were predicated on an accounting scam pursuant by which the Company was improperly classifying the slotting fees and in-store promotion costs that were essential to the growth plan as 'operational expenses' instead of reductions to revenue." *Id*.

Cargile's claim of safe-harbor protection is unavailing. The Company's statements based on an ongoing accounting scam are not "forward-looking statements" and thus not protected by the PSLRA's safe-harbor provision.[5] *See In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1142 (9th Cir. 2017) ("the safe

---

[5] Likewise, the revenue projections in the December 15, 2020 presentation are statements of opinion rather than forward-looking statements subject to the PSLRA safe-harbor provision. *E.g.*, *Markette v. XOMA Corp.*, 2017 WL 4310759, at *5 (N.D. Cal. Sept. 28, 2017) ("[t]here is no reasonable basis to read a statement of hopefulness, encouragement, or expectation as anything other than an opinion"); *Shreiber v. Synacor, Inc.*, 832 F. App'x 54, 57 (2d Cir. 2020) (statements "phrased in terms of … expectations and projections" are "quintessential opinion statements"). Under *Omnicare, Inc. v. Laborers Dist. Council Construction Industry Pension Fund*, 575 U.S. 175, 188–89 (2015), Cargile's opinion statements are actionable because they were aware of facts that contradicted or undermined the statements of belief. *See Boston Ret. Sys. v. Uber Techs., Inc.*, 2020 U.S. Dist. LEXIS 141724, at *27 (N.D. Cal. Aug. 7, 2020).

6

harbor is not designed to protect companies and their officials when they knowingly make a materially false or misleading statement"). In any event, the PSLRA's safe harbor is limited to forward-looking statements "accompanied by meaningful cautionary statements." 15 U.S.C. § 78u-5(c). Cargile cannot meet his burden to show that the guidance was accompanied by "meaningful" cautionary statements that provided a high degree of specificity. *See In re InterMune, Inc. Sec. Litig.*, 2004 WL 1737264, at **4–5 (N.D. Cal. July 30, 2004) (concluding that forward looking statements that are not based on the most accurate information available to defendants are not protected by the safe harbor). Here, the guidance issued was only accompanied by generic statements about "uncertainty surrounding the ultimate success of Tattooed Chef's e-commerce platform" and "competition and the ability of the business to grow." Cargile's Mem. at 24–25. As a matter of law, such vague generalized uncertainties are insufficient to invoke the safe harbor. *See, e.g.*, *In re CV Therapeutics, Inc. Sec. Litig.*, 2004 WL 1753251, at *11 (N.D. Cal. Aug. 5, 2004) (cautionary statements did not immunize defendants from liability when they failed to disclose pertinent risks that had already transpired before the statement was made). Nor can the safe-harbor provision apply because Cargile had actual knowledge of the issues regarding accounting treatment of promotion expenses, but failed to disclose them to investors. *See N.Y. Hotel Trades Council v. Impax Labs., Inc.*, 2021 WL 81719, at *2 (9th Cir. Jan. 11, 2021) (reversing dismissal because revenue guidance figures were given with actual knowledge of facts that rendered the figures false).

The Court should reject Cargile's claim for safe-harbor protection.[6]

---

[6] Of course, even if the revenue projections are subject to safe-harbor protection, the remaining false statements in the December 15, 2020 presentation remain actionable. *See Azar v. Yelp, Inc.*, 2018 WL 6182756, at **7–16 (N.D. Cal. Nov. 27, 2018) (ruling that false guidance figures were protected by the safe-harbor provision, but sustaining numerous non-forward looking, false statements of current fact).

7

### c.    Particularized Allegations Demonstrate the Falsity of the Revenue Projections

As detailed in the FAC, the revenue projections in the December 15, 2020 presentation were false because Cargile and the Individual Defendants failed to disclose that, to comply with GAAP, the upcoming significant slotting fees and in-store promotion fees — all expected to bring about the Company's aggressive growth — would have to be deducted from revenue. *See* ¶ 47. Feigning ignorance, Cargile disregards Plaintiffs' well-pleaded allegations of his direct involvement, as the Company's CFO, in accounting and revenue recognition. *See* ¶¶ 19, 38, 45, 48, 56, 64–65,

Specifically, Plaintiffs allege that "a significant reason for the delay in filing the Form 10-Q [for the fiscal quarter ended March 31, 2021] was the disagreement between the Company and its former CFO Cargile about accounting policies, including issues surrounding revenue recognition and the classification and timing of expenses."   ¶ 67.   Confidential Witness #1 ("CW#1"), who served as the Company's Director of SOX Compliance, directly reported to Cargile (while he was CFO) "at least nine material weaknesses [in internal controls] at year end in 2020."   ¶ 73.   Cargile also gained "actual knowledge of the improper accounting" and GAAP violations through working directly with the other Individual Defendants and the Audit Committee. ¶¶ 75, 108.  Detailed and particularized, these allegations are free from any defects of conclusory or "group" pleading and are more than sufficient to establish falsity in the revenue projections in the December 15, 2020 presentation.  Moreover, the fact that the Company had to restate its financial statements further supports a finding of falsity and materiality for purposes of stating a Section 10(b) claim. *See*, *e.g.*, *In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 486–87 (S.D.N.Y. 2004) ("the mere

8

fact that financial results were restated is sufficient basis for pleading that those statements were false when made"); *Police Ret. Sys. of St. Louis v. Granite Constr. Inc.*, 2021 U.S. Dist. LEXIS 257297, at *47 (N.D. Cal. Sept. 16, 2021) (same) (collecting cases).

> ### d.   The Allegations of Internal-Controls Deficiencies State a Claim

As discussed above, CW#1, a Director of SOX Compliance, directly reported to Cargile (while he was CFO) "at least nine material weaknesses [in internal controls] at year end in 2020." ¶ 73. The FAC alleges that Cargile "was directly … involved in the oversight … of the Company's internal controls." ¶ 19(e). And Cargile signed the SOX certifications in the 2020 Annual Report attesting to the accuracy of financial reporting, as well as the disclosure of any material changes to the Company's internal controls over financial reporting. ¶ 56. And the disclosures regarding internal controls in the 2020 Annual Report were false and misleading because they "misrepresented that the Company's financial statements complied with GAAP, [and] misrepresented the extent of the material deficiencies in the Company's internal controls[.]" ¶ 59. The same false and misleading disclosures were made in the Company's Q1 2021 Form 10-Q — which reported the financial results reviewed and approved by Cargile before his resignation (¶ 68). *See* ¶¶ 69, 76. In fact, that Q1 2021 Form 10-Q "*overstated revenue by $2.054 million, overstated gross profit by $2.173 million, and overstated operating expenses by $3.025 million*." ¶ 69 (emphases in original). And those financial results were later restated. ¶¶ 71–72. The FAC also contains detailed allegations derived from two other confidential witnesses demonstrating that the Individual Defendants intentionally overrode the Company's internal controls and recognized inflated revenue during the Class Period despite knowing that GAAP required

9

the substantial promotional and slotting fees that the Company had offered to customers to be booked as reductions to revenue rather than operating expenses. *See* ¶¶ 77–80.

These allegations are more than sufficient to establish falsity and materiality with respect to Cargile's statements regarding the Company's internal controls. Contrary to Cargile's arguments, Plaintiffs do not attempt to plead "fraud by hindsight" because their allegations, such as the statements of CW#1, demonstrate Cargile's real-time knowledge of the Company's internal-controls deficiencies. *See* ¶ 73. Specific and particularized, Plaintiffs' allegations identify the Company's internal-control deficiencies. *See, e.g.*, ¶¶ 58–59, 73, 76. To the extent that Cargile argues that curative disclosures have been made, the Court should reject his attempt to raise a factual issue at the pleadings stage. *See Todd*, 642 F.3d at 1220.[7]

### 2. Plaintiffs Have Adequately Alleged Scienter

The core-operations doctrine permits courts to "impute scienter based on the inference that key officers have knowledge of the 'core operations' of the company." *Reese v. Malone*, 747 F.3d 557, 575 (9th Cir. 2014). Core-operations allegations satisfy the PSLRA's scienter pleading requirements where: (1) "the nature of the relevant [information] is of such prominence that it would be 'absurd' to suggest that management was without knowledge of the matter" (the absurdity test); or (2) the core-operations allegations are "particular and suggest that defendants had actual access to the disputed information" (the actual-access test). *S. Ferry LP v. Killinger*, 542 F.3d 776, 785–86 (9th Cir. 2008);

---

[7] For the same reason, the Court should reject outright Cargile's attempt to contest the merits of Plaintiffs' allegations regarding the falsity of the 2020 Annual Report (*see* ¶¶ 60–63). *See In re Gilead Scis. Sec. Litig.*, 2005 WL 2649200, at *6 n.4 (N.D. Cal. Oct. 11, 2005) (refusing to wade into factual disputes at the pleadings stage); *see also Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 267 (5th Cir. 2009) (emphasizing that the PSLRA does not alter the pleading standard for any element of a securities fraud claim except for scienter).

10

*see also In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 706 (9th Cir. 2021) (scienter pled where security concerns were "highly material" to operations).

With regard to Cargile and all other Individual Defendants, Plaintiffs' allegations satisfied the core operations' tests. In *Berson v. Applied Signal Tech., Inc.*, despite plaintiffs alleging "no particular facts" establishing that defendants knew of issues that led to a "precipitous drop in … revenue," the Ninth Circuit inferred that the executives responsible for day-to-day corporate operations knew about the issues "because of their devastating effect on the corporation's revenue." 527 F.3d 982, 987–88 (9th Cir. 2008). Here, as alleged in the FAC, Tattooed Chef is a single-product company — the sale of frozen food products. ¶ 167. The accounting fraud alleged here pertained to the Company's core — and only — product. *Id*. It would be absurd for the Individual Defendants not to know about the Company's growth strategy of its single, core product. This is especially so with regard to Cargile, who, as CFO, "bore primary responsibility for addressing the material weakness in the Company's internal controls" (¶ 73) and worked directly with the Audit Committee and other executives on the Company's accounting issues (¶ 75). *See Reese*, 747 F.3d at 576 (imputing information that is "fundamental to operations of [the executive's] business over the tenure of her career").

Arguing the contrary, Cargile says that Plaintiffs' core-operations allegations were conclusory. But there is nothing conclusory about the allegations identifying Tattooed Chef as a single-segment business. *See* ¶ 33. Application of the core-operations doctrine is particularly appropriate here because Tattooed Chef is a small company with few decision makers. *See id.* ("[w]e have one operating segment and one reportable segment, as our chief decision maker, our Chief Executive Officer, reviews financial information on an aggregate basis for purposes of allocating resources and evaluating financial

11

performance"). Accordingly, the Court should reject Cargile's attempt to evade the core-operations doctrine.

Moreover, statements of the CWs support an inference of scienter on the part of Cargile. CW#1, the Company's Director of SOX Compliance, reported to Cargile "at least nine material weaknesses [in internal controls] at year end in 2020." ¶ 73. In addition, the FAC alleges that Cargile also gained "actual knowledge of the improper accounting" and GAAP violations through working directly with the other Individual Defendants and the Audit Committee. ¶¶ 75, 108.

The FAC further alleges motive and opportunity. As CFO, Cargile's career and reputation would be ruined if the GAAP violations came to light. *See Reese*, 747 F.3d at 571 ("[t]he revelation that [the company] ignored red flags would portend serious corporate mismanagement, a portent that would be detrimental … [to the executive] personally"). Moreover, Cargile's employment at Tattooed Chef was dependent on the approval of its few decision makers, such as Sam Galletti (*see* ¶ 33). He was therefore incentivized to partake in the accounting scheme. Notably, Plaintiffs allege that the April 16, 2021 Form 8-K announcing Cargile's resignation falsely represented that his resignation was not the result of any disagreement with the Company. *See* ¶¶ 64–65. Cargile says nothing about that allegation of a false SEC filing. Nor did it appear that he did anything to stop that disclosure from being made. This allegation further supports an inference of Cargile's scienter in the accounting scheme. *See Alphabet*, 1 F.4th at 707 (inferring that delaying disclosure was intended to "buy time" and avoid "public and regulatory scrutiny").

On this point, Cargile's argument based on the purported lack of motive is meritless. As a matter of law, the "absence of a motive allegation, though

12

relevant, is not dispositive." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 48 (2011).  And, as demonstrated above, Plaintiffs have alleged motive (*see* ¶¶ 33, 64–65, 73). *See also Reese*, 747 F.3d at 576.  Cargile's reliance on *Black v. Snap, Inc.* is misplaced because plaintiff in that case alleged no motive at all and the underlying issue had been "repeatedly disclosed."  2023 U.S. Dist. LEXIS 188695, at *47 (C.D. Cal. Sept. 26, 2023) (Wu, J.).  Neither of these facts exists here.  Cargile therefore cannot avoid a finding of scienter.

**B.     Plaintiffs Have Stated a Section 20(a) Claim Against Cargile for Control-Person Liability**

To state a Section 20(a) claim, a plaintiff need only allege "(1) a primary violation of federal securities laws"; and "(2) that the defendant exercised actual power or control over the primary violator." *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000).  Such allegations are subject to a notice-pleading standard. *See Teamsters Local 617 Pension & Welfare Funds v. Apollo Grp., Inc.*, 690 F. Supp. 2d 959, 966–67 (D. Ariz. 2010).

Here, as discussed above, Plaintiffs have stated a claim for primary violation against Cargile.  And Plaintiffs have alleged in detail that Cargile, together with the other Individual Defendants, controlled Tattooed Chef and its financial reporting. *E.g.*, ¶¶ 19, 34, 108, 188, 198.  Because Cargile does not challenge the sufficiency of the allegations of control, he has waived any argument on this point.  Accordingly, the Court should deny Cargile's motion with respect to the Section 20(a) claim, if the Court finds that Plaintiffs have stated a claim against him under Section 10(b).

**C.     Should the Court Grant the Individual Defendants' Motion, the Court Should Grant Leave to Amend**

Cargile does not seek dismissal with prejudice.  Should the Court grant Cargile's motion, the Court should grant leave to amend consistent with the policy favoring resolution of cases "on the merits." *Foman v. Davis*, 371 U.S.

178, 181–82 (1962).  Rule 15 provides that leave to amend "[shall be] freely give[n] … when justice so requires."  FED. R. CIV. P. 15(a)(2).  The Ninth Circuit requires that leave to amend be granted with "'extreme liberality.'"  *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987).

Leave to amend is particularly appropriate here because the motion to dismiss relies on a heightened pleading standard.  Any pleading deficiencies can be cured.  *See United States ex rel. Tamanaha v. Furukawa Am., Inc.*, 445 F. App'x 992, 994 (9th Cir. 2011) (instructing the district court to grant leave to amend a complaint that failed to satisfy Rule 9(b)).  Moreover, no conceivable prejudice can result from amending the complaint because this case remains at the pleadings stage.  In fact, in securities-fraud class actions under similar procedural posture, this Court has routinely granted plaintiffs leave to amend their complaints.  *See, e.g., Jiangchen v. Rentech, Inc.*, 2017 U.S. Dist. LEXIS 222743, at *21 (C.D. Cal. Nov. 20, 2017); *Black v. Snap, Inc.*, 2023 U.S. Dist. LEXIS 188695, at *48 (C.D. Cal. Sept. 26, 2023) (Wu, J.).  The Court should grant leave to amend here.

### III.    CONCLUSION

For the reasons set forth above, the Court should deny Cargile's motion in its entirety.

Dated:  October 25, 2024

Respectfully submitted,

BOTTINI & BOTTINI, INC.

s/ Francis A. Bottini, Jr.

Francis A. Bottini, Jr.
Albert Y. Chang
7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone:  (858) 914-2001
Facsimile:    (858) 914-2002
Email:      fbottini@bottinilaw.com
                  achang@bottinilaw.com

*Counsel for Plaintiffs John Hancock, Shashank Bagul, John Spadaro, Dr. Mustapha Hofait, and Marco Starace*

14

## Certificate of Compliance

The undersigned, counsel of record for John Hancock, Shashank Bagul, John Spadaro, Dr. Mustapha Hotait, and Marco Starace, certifies that this brief contains 3,814 words, which complies with the 10,000-word limit set by the Court's order of July 17, 2024 (Dkt. No. 95).

Dated:  October 25, 2024

s/ Francis A. Bottini, Jr.
Francis A. Bottini, Jr.

1