BOTTINI & BOTTINI, INC.
Francis A. Bottini, Jr. (SBN 175783)
    fbottini@bottinilaw.com
Albert Y. Chang (SBN 296065)
    achang@bottinilaw.com
7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone: (858) 914-2001
Facsimile:   (858) 914-2002

*Counsel for Plaintiffs John Hancock, Shashank Bagul, John Spadaro,*
*Dr. Mustapha Hotait, and Marco Starace*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| DINKO MIHAYLOV; JOHN HANCOCK; SHASHANK BAGUL; JOHN SPADARO; MUSTAPHA HOTAIT; and MARCO STARACE; individually and on behalf of all others similarly situated, | Case No. 2:22-cv-9311-GW-E<br><br>Class Action<br><br>**Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendant BDO USA, LLP's Motion to Dismiss the First Amended Class Action Complaint** |
| Plaintiffs, | |
| vs. | |
| TATTOOED CHEF, INC.; SALVATORE GALLETTI; STEPHANIE DIECKMANN; CHARLES F. CARGILE; EDWARD GELFAND; PAULA CIARAMITARO; MARIE QUINTERO-JOHNSON; SARAH GALLETTI; and BDO USA, LLP, | Judge:        Hon. George H. Wu<br>Date:         December 12, 2024<br>Time:         8:30 a.m.<br>Courtroom: 9D, 9th Floor |
| Defendants. | |

Plaintiffs John Hancock, Shashank Bagul, John Spadaro, Dr. Mustapha Hotait, and Marco Starace ("Plaintiffs") respectfully submit this memorandum in opposition to the September 10, 2024 motion (Dkt. No. 99) of Defendant BDO USA LLP (n/k/a BDO USA, P.C.) ("BDO") to dismiss Plaintiffs' First Amended Class Action Complaint ("FAC") (Dkt. No. 64).[1]   The Court should deny the BDO's motion because, as discussed below, Plaintiffs have stated claims under Section 10(b) of the Securities Exchange Act, 15 U.S.C. §§ 78j(b), as amended by the Private Securities Litigation Reform Act of 1995.

## I.    INTRODUCTION

The Court should deny BDO's motion because the FAC alleges ample particularized facts of BDO's participation in the accounting scheme that required Tattooed Chef, Inc. ("Tattooed Chef" or the "Company") to restate its financial statements, and eventually brought it into bankruptcy.  As Tattooed Chef's auditor, BDO worked directly with the Company's Chief Financial Officers ("CFOs"), as well as members of the Audit Committee on the Company's financial statements and accounting issues.  ¶¶ 22, 73–76.[2]  BDO identified numerous internal-control weakness in the Company in year-end 2020, but failed to notified the Company of its violations of GAAP[3] until October 2022.  ¶¶ 73, 142.  According to Confidential Witnesses ("CWs"), BDO had actual knowledge of the Company's accounting scheme.  ¶¶ 116, 119–120. Ample facts give rise to an inference of BDO's scienter, requiring a denial of its motion to dismiss the FAC.

---

[1] Plaintiffs incorporate by reference their oppositions to the motions (Dkt. Nos. 100, 102) of Defendant Charles F. Cargile and Defendants Salvatore Galletti, Stephanie Dieckmann, Edward Gelfand, Paula Ciaramitaro, Marie Quintero-Johnson, and Sarah Galletti (the "Individual Defendants").

[2] The allegations in the FAC are cited as "¶ ___."  Unless otherwise noted, all emphases in quoted texts are added.

[3] Generally Accepted Accounting Principles.

1

## II.   ARGUMENT

**A.   Plaintiffs Have Stated a Section 10(b) Claim Against BDO**

To state a Section 10(b) claim, a plaintiff need only plead that: (1) defendants made a material misrepresentation or omission; (2) the misrepresentation was in connection with the purchase or sale of a security; (3) the misrepresentation caused plaintiff's loss; (4) plaintiff relied on the misrepresentation or omission; (5) defendants acted with scienter; and (6) that plaintiff suffered damages. *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341–42 (2005).  Here, BDO challenges only the FAC's sufficiency with respect to two elements: falsity and scienter.  As discussed below, BDO's challenges to the pleading sufficiency of the FAC are meritless.

**1.   The Court Should Reject BDO's Purported Ground for Dismissal Based on the March 16, 2022 Cut-off Date**

BDO purports to seek dismissal of the FAC under Federal Rule of Civil Procedure 12(b)(6).  But BDO's first argument pertains to only a time period — presumably it seeks dismissal of Plaintiffs' claim involving any statement made before March 16, 2022.  Yet, BDO argues that Plaintiffs have alleged no actionable statements made before that date.  If BDO is correct, then there is no pre-March 16, 2022 claim to dismiss.  BDO's argument is a misuse of Rule 12(b) because it seeks to narrow the scope of Plaintiffs' claim rather than to dismiss.

In any event, the FAC alleges false and misleading statements in the Company's 2020 Annual Report, filed on March 19, 2021 — one year before BDO's proposed cut-off date:

> 58.    The 2020 Annual Report downplayed the serious issues with the Company's internal controls by stating the following, in pertinent part, regarding the Company's internal controls and remediation efforts[.]

2

\* \* \*

59. … [T]he Annual Report misrepresented that the Company's financial statements complied with GAAP, misrepresented the extent of the material deficiencies in the Company's internal controls, and falsely stated that there had been no change in internal controls over finance[ial] reporting during the quarter ended March 31, 2021 that were reasonably likely to have any additional material effect on the controls over financial reporting.

\* \* \*

63. The statements about the increased sales of the Company's branded products were false and misleading because they failed to disclose the extent of the slotting and promotional fees/discounts that the Company was paying to get retailers to carry their branded products, and that such expenses were being misclassified as operational expenses instead of reductions to revenue.

¶¶ 58–59, 63.

Plaintiffs claim that BDO is liable for making these false statements. As "the external auditor responsible for auditing Tattooed Chef's financial statements during the Class Period" (¶ 22), BDO worked directly with the Company's CFOs, Defendants Cargile and Dieckmann, as well as the members of the Audit Committee (Defendants Gelfand, Ciaramitaro, and Quintero-Johnson). ¶ 75. Specifically, according to CW#1, the Company's Director of SOX Compliance, BDO identified at least nine material weaknesses in the Company's internal controls at year end in 2020. ¶ 73. Following the discovery of these weaknesses, "CW#1 worked with BDO on the relevant [internal

3

controls] issues." ¶ 75. Specific and particularized, these allegations show that BDO "had actual knowledge" of the Company's accounting scheme — inflating its revenue in violation of GAAP. And BDO audited the Company's financial statements reported in the 2020 Annual Report (filed on March 19, 2020). *See* ¶¶ 75–76; *see also* ¶ 54.

Accordingly, BDO lacks a basis to preclude Plaintiffs from asserting a Section 10(b) claim based on pre-March 16, 2022 statements. The Court should reject BDO's argument.

**2.      Plaintiffs Have Pleaded with Sufficient Particularity That BDO's 2021 Audit Opinion Was False and Misleading When Made**

BDO argues that its 2021 Audit Opinion is not actionable, even though paragraphs 111 and 112 of the FAC explain the falsity in detail. BDO is wrong. Under *Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*, 575 U.S. 175, 188–89 (2015), BDO's "opinions" are actionable because BDO was aware of facts that contradicted or undermined the statements of belief. *See Boston Ret. Sys. v. Uber Techs., Inc.*, 2020 U.S. Dist. LEXIS 141724, at *27 (N.D. Cal. Aug. 7, 2020).

Here, ample factual allegations demonstrate that BDO have actual knowledge of the Company's accounting scheme and internal-control problems. As noted above, CW#1 stated that BDO discovered internal-control weaknesses at the Company by the end of 2020. ¶ 73. BDO worked directly with the Company's CFOs, Audit Committee members, and CW#1 on the internal-control issues, gaining direct knowledge of the accounting scheme. ¶¶ 73–76. But "BDO willfully ignored accounting errors that existed in plain sight and improperly represented that Tattooed Chef's financial statements fully complied with GAAP." ¶ 22.

BDO "had actual knowledge" of the Company's accounting scheme —

4

inflating its revenue in violation of GAAP.   ¶¶ 75–76.  Yet, BDO failed to correct the Company's accounting irregularities until October 2022, when it notified the Company that its 2021 Annual Report and its quarterly reports for first three quarters of 2021 should be restated.  ¶ 142.  In light of these fact-specific allegations, it is at least "plausible" that BDO disbelieved the statements and opinions in its 2021 Audit Opinion.  *See New England Carpenters Guaranteed Annuity & Pension Funds v. DeCarlo*, 80 F.4th 158, 181 (2d Cir. 2023) (finding certain "opinion" made by BDO actionable under *Omnicare*).

### 3.    Plaintiffs Have Sufficiently Alleged Scienter

As BDO concedes, the falsity and scienter analyses can be conducted in a single inquiry.  A finding of falsity, as discussed above, can lead to a finding of scienter.  *See In re Read-Rite Corp. Sec. Litig.*, 335 F.3d 843, 846 (9th Cir. 2003).  Here, two additional sets of facts support an inference of scienter.

First, in addition to CW#1, two other Confidential Witness, CW#3 and CW#4, had personal experience with accounting red flags that were known to both BDO.  ¶¶ 116, 119–120.   CW#3 observed the Company's liquidity problems in 2022 when BDO "was auditing the Company's books."  ¶ 120.  As such, BDO necessarily would have discovered the liquidity problems that resulted in nonpayments and late payments to suppliers.  *Id*.  Between February and March 2022, CW#4, a Vice President of Sales Support (¶ 113), witnessed an episode of improper accounting practice involving tens of thousands of dollars in rebates.  ¶ 116.  CW#4 observed that BDO "willfully ignored" errors "in plain sight" and "represented in the [2021] Annual Report that Tattooed chef's financial statements fully complied with GAAP" — a representation that was false.  *See id.*  These allegations demonstrate BDO's actual knowledge of the accounting irregularities in the Company, warranting an inference of scienter.  *See Varghese v. China Shenghuo Pharm. Holdings, Inc.*,

5

672 F. Supp. 2d 596, 603, 610 (S.D.N.Y. 2009) (denying an auditor's motion to dismiss based on actual knowledge of "serious internal control weaknesses").

Second, this case involves an accounting restatement. Where accounting restatements were made or accounting rules are violated, courts routinely found scienter on the part of company executives and auditors. *See*, *e.g.*, *In re WageWorks, Inc., Sec. Litig.*, No. 18-cv-01523-JSW, 2020 U.S. Dist. LEXIS 97180, at *21 (N.D. Cal. June 1, 2020); *In re Cirrus Logic Sec. Litig.*, 946 F. Supp. 1446, 1463 (N.D. Cal. 1996) ("[d]eviations from a company's internal accounting policies … may provide evidence of scienter if those deviations also violate GAAP"). In *Patel v. Axesstel, Inc.*, for example, plaintiff alleged that Axesstel — a company with 25 employees — overstated its revenue related to sales of the company's product in Africa. 2015 U.S. Dist. LEXIS 18385, at *6 (S.D. Cal. Feb. 13, 2015). This alleged overstatement violated the company's revenue-recognition policy and "simple GAAP accounting principles." *Id*. at *33. Based on these allegations, the court concluded that plaintiff adequately pleaded scienter. *Id*. The court reasoned that in a small company, where only a handful of people were involved in executive and administrative functions, "it strains credulity to believe that [individual defendants] did not know that no final contracts in fact existed for the [product] sales in Africa." *Id*. at 34. Just like Axesstel, Tattooed Chef is a relatively small company with a single product. ¶¶ 33 167. And it would have been improbable that BDO was unaware of Tattooed Chef's accounting irregularities while auditing its books. *See Axesstel*, 2015 U.S. Dist. LEXIS 18385, at *34. A finding of scienter on the part of BDO is proper here.

Arguing the contrary, BDO relies heavily on this Court's decision in *In re A-Power Energy Generation Systems Securities Litigation*, 2012 U.S. Dist. LEXIS 79417, at *9 (C.D. Cal. May 31, 2012) (Wu, J.). Notably, however, *A-Power* did

6

not involve accounting restatement.  Nor did plaintiff in *A-Power* provide detailed confidential-witness statements directly implicating defendants.  BDO's reliance on *A-Power* is misplaced.

**B.     Should the Court Grant BDO's Motion, the Court Should Grant Leave to Amend**

The Court should reject outright BDO's request for dismissal with prejudice because it conflicts with the policy favoring resolution of cases "on the merits."  *Foman v. Davis*, 371 U.S. 178, 181–82 (1962).  Rule 15 provides that leave to amend "[shall be] freely give[n] … when justice so requires."  FED. R. CIV. P. 15(a)(2).  The Ninth Circuit requires that leave to amend be granted with "'extreme liberality.'"  *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987).

BDO proffers a single argument for a with-prejudice dismissal:  futility.  But BDO does not — and cannot — submit any facts to support a finding that any amendment would be futile.  Moreover, leave to amend is particularly appropriate because the motion to dismiss relies on a heightened pleading standard.  Any pleading deficiencies can be cured.  *See United States ex rel. Tamanaha v. Furukawa Am., Inc.*, 445 F. App'x 992, 994 (9th Cir. 2011) (instructing the district court to grant leave to amend a complaint that failed to satisfy Rule 9(b)).  No conceivable prejudice can result from amending the FAC because this case remains at the pleadings stage.  In fact, in securities-fraud class actions under a similar procedural posture, this Court has routinely granted plaintiffs leave to amend their complaints.  *E.g.*, *Jiangchen*, 2017 U.S. Dist. LEXIS 222743, at *21; *Black v. Snap, Inc.*, 2023 U.S. Dist. LEXIS 188695, at *48 (C.D. Cal. Sept. 26, 2023) (Wu, J.).

### III.    CONCLUSION

For the reasons set forth above, the Court should deny BDO's motion.

Dated:  October 25, 2024

Respectfully submitted,

BOTTINI & BOTTINI, INC.

s/ Francis A. Bottini, Jr.
Francis A. Bottini, Jr.
Albert Y. Chang
7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone:  (858) 914-2001
Facsimile:    (858) 914-2002
Email:        fbottini@bottinilaw.com
              achang@bottinilaw.com

*Counsel for Plaintiffs John Hancock, Shashank Bagul, John Spadaro, Dr. Mustapha Hofait, and Marco Starace and Proposed Lead Counsel*

8

**Certificate of Compliance**

The undersigned, counsel of record for John Hancock, Shashank Bagul, John Spadaro, Dr. Mustapha Hotait, and Marco Starace, certifies that this brief contains 1,989 words, which complies with the 10,000-word limit set by the Court's order of July 17, 2024 (Dkt. No. 95).

Dated:  October 25, 2024

s/ Francis A. Bottini, Jr.

Francis A. Bottini, Jr.

1