MARC J. SCHNEIDER, State Bar No. 214609
  mschneider@stradlinglaw.com
STEPHEN L. RAM, State Bar No. 240769
  sram@stradlinglaw.com
ANDREW B. MASON, State Bar No. 317944
  amason@stradlinglaw.com
MICHAEL B. MOSHER, State Bar No. 336160
  mmosher@stradlinglaw.com
STRADLING YOCCA CARLSON & RAUTH LLP
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660-6422
Telephone:  949 725 4000
Facsimile:  949 725 4100

Attorneys for Defendant
Charles F. Cargile

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| DINKO MIHAYLOV; JOHN HANCOCK; SHASHANK BAGUL; JOHN SPADARO; MUSTAPHA HOTAIT; and MARCO STARACE; individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>            vs.<br><br>TATTOOED CHEF, INC.; SALVATORE GALLETTI; STEPHANIE DIECKMANN; CHARLES F. CARGILE; EDWARD GELFAND; PAULA CIARAMITARO; MARIE QUINTERO-JOHNSON; SARAH GALLETTI; and BDO USA, LLP,<br><br>                    Defendants. | CASE NO. 2:22-cv-9311-GW-E<br><br>Assigned to: Hon. Judge George H. Wu<br><br>**DEFENDANT CHARLES F. CARGILE'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT [DKT 124]; MEMORANDUM OF POINTS AND AUTHORITES**<br><br>Hearing:<br>Date:       April 28, 2025<br>Time:       8:30 a.m.<br>Ctrm.:      Courtroom 9D, 9th Floor<br>              350 West 1st Street, Los Angeles, CA  90012<br>Judge:      George H. Wu<br><br>Complaint Filed:    December 23, 2022<br>FAC Filed:            June 5, 2023<br>SAC Filed:            February 3, 2025 |

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

DEF. CARGILE'S NOTICE OF MOTION TO DISMISS 2ND AMENDED COMPLAINT

4921-6886-2743v15/107730-0001

**TO THE COURT, ALL PARTIES, AND COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on April 28, 2025 at 8:30 a.m., or as soon after as the matter may be heard, in Courtroom 9D of this Court, located at 350 W. 1st Street, Los Angeles, California, before the Honorable George H. Wu, attorneys for Defendant Charles Cargile hereby move the Court for an order dismissing Plaintiffs' Second Amended Class Action Complaint For Violations Of The Federal Securities Laws (Dkt. No. 124) for failure to state a claim.  This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on February 20, 2025.

Cargile brings this Motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, Declaration of Andrew B. Mason, and the proposed order granting the Motion, all papers and pleadings on file in this action, such other evidence and argument as may be presented at or before any hearing on this Motion, all other matters of which the Court may take judicial notice, and any other papers submitted in support of this Motion.

DATED:  March 3, 2025          STRADLING YOCCA CARLSON & RAUTH LLP


By: _____
    Marc J. Schneider
    Stephen L. Ram
    Andrew B. Mason
    Michael B. Mosher
    Attorneys for Defendant
    Charles F. Cargile

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-1-

DEF. CARGILE'S NOTICE OF MOTION TO DISMISS 2ND AMENDED COMPLAINT
4921-6886-2743v15/107730-0001

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................. 1

II.   BACKGROUND ................................................................................. 2

      A.   Cargile Resigned Four Months Into The Two-Year
           Class Period. ............................................................................ 2

      B.   The Company Announced Ambitious Expansion Plans
           In The Plant-Based Food Industry. ......................................... 2

      C.   The Company Elaborated On Its Business Strategies In
           An Investor Day Presentation. ................................................ 3

      D.   The Company Issued Its Annual Report For 2020. ................. 4

      E.   Cargile Resigned In April 2021, Before The Company's
           2021 Financial Statements. ..................................................... 5

      F.   The Company Restated Its 2021 Financial Statements Allegedly
           Due To The Incorrect Accounting Treatment Of Slotting Fees. ....... 6

      G.   The Court Dismissed Cargile And The Other Defendants
           With Leave To Amend. ............................................................ 7

III.  ARGUMENT ...................................................................................... 8

      A.   Legal Standard ........................................................................ 8

      B.   The SAC Fails To Allege Any Actionable Misrepresentation
           For Cargile. ............................................................................. 9

           2.   The Statement That The Company Historically Had
                "No Spending On Marketing Promotion" Was True. ........... 11

           3.   The Revenue Projections For 2021 Are Protected
                As Forward Looking Statements. ......................................... 12

           4.   The Internal Controls Allegations Do Not State A Claim..... 14

           5.   The SAC Challenges The Company's Reporting Of
                2020 Financial Results, But Those Disclosures Did
                Not Involve Slotting Fees And Were Immaterial. ................. 15

           6.   Plaintiffs Do Not Explain How The Investor Day
                Presentation Statements Regarding The Company's History
                And The Frozen Food Market's Potential Are False. ........... 16

      C.   The SAC Still Fails To Plead A "Strong Inference" Of Scienter.... 17

           1.   The SAC's Dedicated Scienter Section And Confidential
                Witness Statements Do Not Mention Cargile. ..................... 18

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

2.   Plaintiffs' Allegations Regarding Cargile's Principled Resignation Support An Opposing Inference.......................... 19

3.   The SAC Does Not Allege Facts Supporting Motive. .......... 20

4.   The Core Products Theory Fails Because The SAC Does Not Allege A Decision To Improperly Account For Slotting Fees During Cargile's Tenure.................................. 21

D.   The Claim Against Cargile For Violations Of Section 20(A) Of The Exchange Act Also Fails. ..................................................... 22

E.   The Motion Should Be Granted With Prejudice Because Plaintiffs Have Failed To Address The Numerous Deficiencies Set Forth In The Court's Prior Order.......................... 22

IV.   CONCLUSION ...................................................................................... 23

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

DEF. CARGILE'S NOTICE OF MOTION TO DISMISS 2ND AMENDED COMPLAINT

4921-6886-2743v15/107730-0001

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re A-Power Energy Generation Sys. Sec. Litig.*,
2012 U.S. Dist. LEXIS 79417 (C.D. Cal. May 31, 2012)..................................20

*Axonic Capital LLC v. Gateway One Lending*,
2018 U.S. Dist. LEXIS 244609 (C.D. Cal. Dec. 18, 2018) .............................21

*Black v. Snap, Inc.*,
2023 U.S. Dist. LEXIS 188695 (C.D. Cal. Sep. 26, 2023)........................20, 22

*City of Hollywood Firefighters Pension Fund*, 2024 U.S. Dist. LEXIS
144335 (N.D. Cal. Aug. 13, 2024) .....................................................................21

*Coady v. Indymac Bancorp, Inc.*,
2012 U.S. Dist. LEXIS 196211 (C.D. Cal. Jun. 6, 2012) ..................................23

*In re Cutera Sec. Litig.*,
610 F.3d 1103 (9th Cir. 2010)...................................................................... 13, 17

*In re Daou Sys., Inc.*,
411 F.3d 1006 (9th Cir. 2005)............................................................................ 8

*ECA & Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan
Chase Co.*,
553 F.3d 187 (2d Cir. 2009) ...............................................................................15

*In re Finjan Holdings, Inc. Sec. Litig.*,
58 F.4th 1048 (9th Cir. 2023) ...................................................................... 12, 16

*First Call Int'l, Inc. v. S&B Glob., Inc.*,
2024 U.S. Dist. LEXIS 119437 (C. D. Cal. July 5, 2024) .................................20

*IBEW Local Union No. 58 Pension Trust Fund & Annuity Fund v.
Royal Bank of Scot. Grp.*,
783 F.3d 383 (2d Cir. 2015) ...............................................................................15

*Janus Capital Group, Inc. v. First Derivative Traders*,
564 U.S. 135 (2011) ............................................................................................9

DEF. CARGILE'S NOTICE OF MOTION TO DISMISS 2ND AMENDED COMPLAINT

4921-6886-2743v15/107730-0001

*Johnson v. Costco Wholesale Corp.*,
   2019 U.S. Dist. LEXIS 205433 (W.D. Wash. Nov. 26, 2019) .........................14

*Lomingkit v. Apollo Educ. Grp. Inc.*,
   2017 U.S. Dist. LEXIS 22374 (D. Ariz. Feb. 16, 2017) ........................12, 15, 16

*Lu v. Align Tech., Inc.*,
   417 F. Supp. 3d 1266 (N.D. Cal. 2019) ................................................12, 15, 16

*M & M Hart Living Trust v. Global Eagle Entm't, Inc.*,
   2017 U.S. Dist. LEXIS 182106 (C.D. Cal., Oct. 30, 2017) ...............................19

*May v. KushCo Holdings, Inc.*,
   2020 U.S. Dist. LEXIS 213905 (C.D. Cal. May 31, 2012)................................18

*Mendoza v. HF Foods Grp., Inc.*,
   2021 U.S. Dist. LEXIS 160982 (C.D. Cal. Aug. 25, 2021)...............................18

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
   540 F.3d 1049 (9th Cir. 2008)......................................................................17, 23

*Norfolk Cty. Ret. Sys. v. Solazyme, Inc.*,
   2016 U.S. Dist. LEXIS 179949 (N.D. Cal. Dec. 29, 2016) ...............................11

*Osher v. JNI Corp.*,
   302 F. Supp. 2d 1145 (S.D. Cal. 2003) .............................................................11

*Pac. Recovery Sols. v. United Behavioral Health*,
   508 F. Supp. 3d 606 (N.D. Cal. 2020) ..............................................................20

*Police Ret. Sys. v. Intuitive Surgical, Inc.*,
   759 F.3d 1051 (9th Cir. 2014)............................................................................13

*Reddy v. Litton Indus., Inc.*,
   912 F.2d 291 (9th Cir. 1990)..............................................................................20

*Ronconi v. Larkin*,
   253 F.3d 423 (9th Cir. 2001)..............................................................................14

*Rubke v. Capitol Bancorp Ltd.*,
   551 F.3d 1156 (9th Cir. 2009)..............................................................................8

*S. Ferry LP v. Killinger*,
   542 F.3d 776 (9th Cir. 2008)..............................................................................22

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-2-

*Schueneman v. Arena Pharms., Inc.*,
    840 F.3d 698 (9th Cir. 2016) ................................................................................8

*Sicor Ltd. v. Cetus Corp.*,
    51 F.3d 848 (9th Cir. 1995) ...............................................................................19

*In re Silicon Graphics Sec. Litig.*,
    183 F.3d 970 (9th Cir.1999) .................................................................................9

*In re Silicon Storage Tech.*,
    2006 U.S. Dist. LEXIS 14790 (N.D. Cal. Mar. 10, 2006) .................................14

*In re SolarCity Corp. Sec. Litig.*,
    274 F. Supp. 3d 972 (N.D. Cal. 2017) ...............................................................17

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) .............................................................................8, 17, 18

*United States v. United Healthcare Ins. Co.*,
    848 F.3d 1161 (9th Cir. 2016) ..............................................................................8

*Wasicek v. Sumo Logic, Inc.*,
    2024 U.S. Dist. LEXIS 138515 (N.D. Cal. Aug. 5, 2024) ................................13

*Weston Family P'ship LLLP v. Twitter, Inc.*,
    29 F.4th 611 (9th Cir. 2022) ..............................................................................13

*Wochos v. Tesla, Inc.*,
    985 F.3d 1180 (9th Cir. 2021) ...........................................................................13

*Zee v. Green Dot Crop.*,
    2013 U.S. Dist. LEXIS 198927 (C.D. Cal. May 2, 2013) .................................13

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) .........................................................................16, 19

**Statutes**

17 C.F.R. §240.10b-5 ............................................................................................8, 12

15 U.S.C. §78t-1 .........................................................................................................22

15 U.S.C. § 78u-4(b)(1) ...............................................................................................8

15 U.S.C. § 78u-4(b)(2) ............................................................................................8, 9

Stradling Yocca
Carlson & Rauth
LAWYERS
NEWPORT BEACH

DEF. CARGILE'S NOTICE OF MOTION TO DISMISS 2ND AMENDED COMPLAINT
4921-6886-2743v15/107730-0001

15 U.S.C. § 78u-4(b)(2)(A) ................................................................................ 17

15 U.S.C. § 78u-5(c)(1)(A)(i) ............................................................................ 13

**Other Authorities**

Fed. R. Civ. P. Rule 9(b) .................................................................................... 8

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

DEF. CARGILE'S NOTICE OF MOTION TO DISMISS 2ND AMENDED COMPLAINT

4921-6886-2743v15/107730-0001

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This Court previously granted defendant Charles F. Cargile's motion to dismiss, finding that Plaintiffs'[1] First Amended Complaint (the "FAC") did not plead an actionable misrepresentation or scienter with respect to him. The Second Amended Complaint (the "SAC") fails to cure the deficiencies identified by the Court.

The SAC continues to focus on the Form 10-Q and 10-K filings for fiscal year 2021 of Tattooed Chef, Inc. (the "Company"), which were restated allegedly due to incorrect accounting for slotting fees. But Cargile resigned as CFO on April 15, 2021, before the date of either of these filings. Cargile only possibly can be responsible for a December 15, 2020 Investor Day Presentation and the 2020 annual report issued during his tenure. Cargile's prior Motion explained that the FAC did not allege facts supporting that a purported scheme to improperly record slotting fees existed at the time of those disclosures. The SAC does not allege a single new fact showing that such a scheme ever existed, let alone before Cargile's resignation. Therefore, the SAC fails to allege a misrepresentation by Cargile.

As for scienter, the FAC expressly alleged that Cargile resigned due to a disagreement over revenue recognition and expense classification, *i.e.*, slotting fees. As the Court recognized, Plaintiffs' own allegation thus created a compelling inference that Cargile did not have scienter to commit securities fraud. Without any explanation, the SAC now improperly omits this factual allegation. Even if the FAC's judicial admission could be ignored (and it cannot), the SAC's allegations still support the same inference – that Cargile resigned rather than certify financial results with which he did not agree. Moreover, the SAC still does not even

---

[1] Plaintiffs are: Dinko Mihaylov John Hancock, Shashank Bagul, John Spadaro, Mustapha Hotait, and Marco Starace.

STRADLING YOCCA CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

CARGILE'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
4921-6886-2743v15/107730-0001

mention Cargile in the section it dedicates to scienter.  The SAC also does not allege that Cargile held any Company securities or had any other motive for fraud.

Accordingly, Cargile respectfully requests that the Court dismiss the SAC with prejudice as to him.

## II.     BACKGROUND

### A.     Cargile Resigned Four Months Into The Two-Year Class Period.

The SAC asserts a two-year Class Period, from December 15, 2020 through November 28, 2022.  (SAC ¶ 1.)  Cargile resigned on April 15, 2021, just four months into that period.  (SAC ¶¶ 1, 64; Declaration of Andrew B. Mason ("Mason Decl."), Ex. 6.)

### B.     The Company Announced Ambitious Expansion Plans In The Plant-Based Food Industry.

The Company was an "upstart" seeking to capitalize on a "massive opportunity to disrupt" the market for plant-based frozen food.  (SAC ¶¶ 32, 39, 44.)  On October 15, 2020, the Company completed a special purpose acquisition company merger and began trading on the NASDAQ.  (SAC ¶ 31.)

On November 19, 2020, the Company issued a Prospectus.  (SAC ¶¶ 32-37 & ¶ 32 n.4; Mason Decl., Ex. 1 ("Prospectus")[2].)  The Company reported that revenue increased 79.5% in 2019 over the prior year, primarily based upon sales of its private label products in big box stores.  (*See* SAC ¶ 35; Prospectus at 1.)  The Company's business model was "constrained" because the Company "had one line of business, a limited number of products, and a concentration of most of its sales in just five customers."  (SAC ¶ 35.)  The Company thus developed an expansion strategy "to try to sell its products in grocery stores," which would require "slotting fees" for the placement of its items.  (*Id.* ¶¶ 40-41.)

---

[2] The SAC incorporates by reference public filings that are attached as exhibits to the concurrently filed Declaration of Andrew B. Mason.  (*See* Def. Cargile's RJN.)

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

CARGILE'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
4921-6886-2743v15/107730-0001

In a section titled "Sales and Marketing Costs," the Company stated its intention to "expand our sales and marketing team." (Prospectus at 24.)  The Company explained:  "Marketing expenditures are expected to be primarily on product demonstration allowances, **slotting fees (as we expand to retail grocery stores)** and other similar in-store marketing costs. **Some of these expenses will be categorized as net deductions to revenue under GAAP as opposed to marketing expense.**" (*Id*. (emphasis added).)

In its risk disclosures, the Company reported material weaknesses in its internal controls:

> We have identified a number of material weaknesses in our internal financial and accounting controls and procedures, including an insufficient complement of resources with an appropriate level of accounting knowledge, experience and training commensurate with our structure and financial reporting requirements and the need to implement an enterprise resource planning information management system to provide for greater depth and breadth of functionality and effectively manage our business data, communications, supply chain, order entry and fulfillment, inventory and warehouse management and other business processes.

(Prospectus at 14.)  The Company warned that those weaknesses might impair its financial reporting.  (*Id*.)

The Prospectus listed Cargile as the Company's CFO and disclosed that Cargile did not hold any Company securities.  (Prospectus at pp. 45-46, 56.)

## C.     The Company Elaborated On Its Business Strategies In An Investor Day Presentation.

On December 15, 2020, the Company issued an "Investor Day Presentation" slide deck on a Form 8-K.  (Mason Decl., Ex. 2 ("Form 8-K").)  Both the Form 8-K and slide deck contained a cautionary warning concerning the forward-looking statements contained therein.  (Form 8-K at 1; *id*., at Ex. 99. 1, Slide 2.)

The SAC alleges the Company's "main strategy for growing revenues was to try to increase distribution of its products to more retailers and to grocery stores."

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

CARGILE'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

4921-6886-2743v15/107730-0001

(SAC ¶¶ 36-37.) In its "Financial Performance" slides, the Company explained: "We have grown our revenue and established a successful branded product with **no spending on marketing promotion**." (SAC ¶ 47; Mason Decl., Ex. 2 ("Form 8-K") at Ex. 99.1, Slide 32 (emphasis added).) The Company stated: **"We expect significant benefit from marketing efforts in 2021 and beyond."** (SAC ¶ 46; Form 8-K at Ex. 99.1, Slide 32 (emphasis added).)

The SAC alleges the Company disclosed it would have to "plan, develop, and execute a detailed marketing strategy." (SAC ¶¶ 36-37.) The campaign would require the Company to pay slotting fees to access the limited shelf space in grocery-store freezer sections. (*Id.*; *see also id.* ¶ 44.) "[T]he Company would launch its first advertising and marketing campaign in 2021." (*Id.* ¶ 48.)

The Company disclosed that it had been "introduced" to retailers and "[w]e expect significant official new business awards that will go into effect in 2021." (Form 8-K at Ex. 99.1, Slide 21.) The Company stated its goal to "realize revenue of $222 million [in 2021] and then more than double revenue to $500 million in 2023." (SAC ¶ 45; Form 8-K at Ex. 99.1, Slide 34.)

### D. The Company Issued Its Annual Report For 2020.

On March 19, 2021, the Company issued its 2020 annual report and discussed its financial results, including increased sales of branded products, gross profit, and gross margin. (SAC ¶¶ 56, 60-63; Mason Decl., Ex. 3 ("2020 Form 10-K").) A cautionary note prefaced the annual report. (2020 Form 10-K at 1.)

Similar to the Prospectus, in a section entitled "Controls and Procedures," the Company disclosed: "[W]e identified five material weaknesses in our internal control over financial reporting" and expanded upon those weaknesses.[3] (SAC ¶ 58; 2020 Form 10-K at 38.) The Company disclosed: "We have begun the process

---

[3] The Company's risk disclosures detailed similar information. (2020 Form 10-K at p. 18.)

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-4-

CARGILE'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
4921-6886-2743v15/107730-0001

of, and are focused on, designing and implementing effective internal controls." (SAC ¶ 58; 2020 Form 10-K at 38.)  Expressing its "commit[ment] to the continuous improvement of our internal controls," the Company detailed its plans for improved internal controls.  (SAC ¶ 58; 2020 Form 10-K at 38.)

The Company continued:  "[O]ur chief executive officer and chief financial officer concluded that, as of March 31, 2021, our disclosure controls and procedures were not effective due to material weaknesses in our internal control over financial reporting…."  (SAC ¶ 58; 2020 Form 10-K at 39.)  Yet, management concluded that "our consolidated financial statements present fairly, in all material respects, our financial position, results of operations and cash flows for the periods disclosed in conformity with U.S. GAAP."  (SAC ¶ 58; 2020 Form 10-K at 39.)

The annual report again disclosed anticipated slotting fees for the marketing campaign that would be launched in 2021 and even that those fees might be (correctly) deducted from revenues:

> We anticipate that marketing expenditures will primarily be on product demonstration allowances, ***slotting fees (as we expand into conventional retail grocery stores),*** and other similar in-store marketing costs, which we believe will be effective. ***Some of these expenses will be categorized as deductions to revenue under GAAP*** as opposed to marketing expense.

(2020 Form 10-K at 29 (emphasis added).)

**E.    Cargile Resigned In April 2021, Before The Company's 2021 Financial Statements.**

Cargile resigned on April 15, 2021.  (SAC ¶ 64; Mason Decl., Ex. 6.)  On April 16, 2021, the Company announced Cargile's resignation.  (SAC ¶ 64; Mason Decl., Ex. 6.)

The SAC mainly challenges statements in the Company's Form 10-Q for the first quarter of 2021 and subsequent results based upon Plaintiffs' theory that they

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-5-

CARGILE'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
4921-6886-2743v15/107730-0001

incorrectly treated slotting fees as operating expenses (rather than as reductions to revenue). (*See* SAC ¶¶ 68-71.) The SAC provides no details about any decision to treat slotting fees as operating expenses and does not attribute any decision to Cargile. (*See* SAC *passim*.)

Cargile resigned a month ***before*** the Company's Form 10-Q for the first quarter of 2021. (*Compare* SAC ¶ 64 *with id.* ¶ 65.) There is a conspicuous change in the SAC's allegations concerning Cargile's resignation from the FAC. The FAC alleged that: "***Cargile resigned due to his disagreement with the Company about its accounting policies***, ***including issues surrounding revenue recognition, classification and timing of expenses***, and the accounting treatment of warrants," *i.e.*, the same issues that Plaintiffs allege caused the restatement. (Dkt. No. 64 ¶ 65 (emphasis added).) But without explanation, Plaintiffs removed this factual allegation. The SAC alleges "the delay in filing the Form 10-Q [for Q1 2021]" was due to "issues surrounding revenue recognition and the classification and timing of expenses." (SAC ¶ 67.)

### F.    The Company Restated Its 2021 Financial Statements Allegedly Due To The Incorrect Accounting Treatment Of Slotting Fees.

On November 16, 2022, the Company issued an amended annual report to restate fiscal year 2021 financial statements. (SAC ¶ 155; Mason Decl., Ex. 4 ("Form 10-K/A").) The next day, the Company restated the first and second quarter results of fiscal year 2021. (SAC ¶¶ 71, 89.) Plaintiffs contend that these restatements, collectively, were issued in part to address the incorrect accounting for slotting fees. (*See, e.g.*, SAC ¶¶ 47, 71-72, 89, 100-102 & 122 n. 25.) The SAC quotes the amended 2021 annual report regarding revenue recognition, that "customer incentives in the form of slotting fees, trade discounts, promotional programs, and demonstration costs … [are] recorded as a reduction of accounts receivable." (SAC ¶¶ 71, 123 n.27, 145; Form 10-K/A at F-18; *see also id*. at F-3, F-20.) That is the gravamen of the SAC; that the incorrect accounting for slotting

-6-

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

CARGILE'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
4921-6886-2743v15/107730-0001

fees made certain of its prior representations "false and misleading because they failed to disclose the fact that . . . Tattooed Chef's aggressive growth strategy was premised on paying significant slotting fees … and that Defendants … intended to mischaracterize those expenses as 'operating expenses' instead of reductions to revenue, as required by GAAP." (SAC ¶ 47.)

As part of the amended 2021 annual report, the Company also corrected immaterial errors to the fiscal year 2020 financial statements:

> [T]he Company identified errors that were determined to be individually, and in the aggregate, quantitatively and qualitatively ***immaterial*** based on its analysis of Staff Accounting Bulletin ("SAB") No. 99, "Materiality," and SAB No. 108, "Considering the Effects of Prior Year Misstatements when Quantifying Misstatements in Current Year Financial Statements.

(Form 10-K/A at F-9 (emphasis added).)  The 2020 errors did ***not*** concern slotting fees.  Instead, the Company made immaterial corrections regarding certain pre-paid expenses and costs of goods sold.  (Form 10-K/A at F-9-10.)

**G.    The Court Dismissed Cargile And The Other Defendants With Leave To Amend.**

The complaint was filed on December 23, 2022.  Following lead plaintiff and lead counsel's appointment, Plaintiffs filed the FAC on June 5, 2023.  (Dkt. No. 64.)  On September 10, 2024, Cargile moved to dismiss.  (Dkt. No 100.)  On December 12, 2024, the Court granted the motion with leave.  (Dkt. No. 122 (the "Order").)

In its ruling, the Court saw "no need to go into great detail in its analysis in this matter (at least at this time), because the conclusion is clear – the FAC will have to be amended if this action is to proceed for at least a few obvious reasons." (Order at 2.)   The Court explained it was "frequently at a loss as to which particular/specified statements are the targets of Plaintiffs' efforts." (*Id.* at 5.)

As to Cargile specifically, the Court noted that "Plaintiffs' own allegations may ultimately torpedo any attempt to charge Cargile with scienter." (*Id.* at 12.)

STRADLING YOCCA CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

CARGILE'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
4921-6886-2743v15/107730-0001

The Court encouraged "plaintiff to think long and hard about the scope of his or her allegations, and whether a substantial thoughtful pruning might be in order." (*Id.* at 5.) But the SAC's allegations against Cargile remain basically unchanged. Accordingly, Cargile moves to dismiss.

## III. ARGUMENT

### A. Legal Standard

To state a claim under Section 10(b) of the Exchange Act and Rule 10b-5, a plaintiff must allege: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 704 (9th Cir. 2016).

"It is well established that claims brought under Rule 10b-5 and section 10(b) must meet the particularity requirements of Federal Rule of Civil Procedure 9(b)." *In re Daou Sys., Inc.*, 411 F.3d 1006, 1014 (9th Cir. 2005). A plaintiff must allege 'the who, what, when, where, and how of the misconduct charged,' including what is false or misleading about a statement, and why it is false." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016). Section 10(b) claims also must satisfy the PSLRA, which requires that "each statement alleged to have been misleading" must be "specif[ied]," along with "the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1); *see also Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1161 (9th Cir. 2009) ("[T]he complaint must 'set forth what is false or misleading about a statement, and why it is false.'").

Scienter must be pled with particularity "with respect to *each* act or omission." *See* 15 U.S.C. § 78u-4(b)(2) (emphasis added); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321 (2007); *Rubke*, 551 F.3d at 1164. This requirement obligates a plaintiff to "state with particularity facts giving rise to a

-8-

strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). The Ninth Circuit requires deliberate recklessness or conscious misconduct; deliberate recklessness means "some degree of intentional or conscious misconduct." *In re Silicon Graphics Sec. Litig.*, 183 F.3d 970, 979 (9th Cir.), *reh'g & reh'g en banc denied*, 195 F.3d 521 (1999).

**B.    The SAC Fails To Allege Any Actionable Misrepresentation For Cargile.**

The Court previously found that, despite Plaintiffs' voluminous pleading, the FAC "falls short with respect to the requirement set by [the PSLRA]." (Order at 4.) The Court suggested that Plaintiffs "*specifically* list the sentence, or words, or representation about financial category that is/are *specifically* asserted to be false/misleading...." (*Id.* at 5 (emphasis in original).) Rather than heed the Court, the SAC is another voluminous pleading. Once again Defendants are left guessing as to which statement is challenged as false and why the statement is false.

Only a limited number of the challenged statements could pertain to Cargile because statements made after his resignation cannot be attributed to him. *See Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135, 141 (2011). Thus, the challenged statements involving Cargile can only be found in the Investor Day Presentation and the 2020 annual report.[4] The SAC again premises its claims on the theory of a company-wide scheme to misclassify slotting fees as operational expenses, rather than as reductions to revenue. But, again, there are no factual allegations suggesting that Cargile was involved in the scheme or that the supposed scheme even existed during his tenure.

---

[4] The SAC also discusses a February 22, 2021 press release and a March 10, 2021 preliminary earnings release. (SAC ¶¶ 51-54.) While these statements were issued during Cargile's tenure, the SAC does not attribute any statements to Cargile.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-9-

CARGILE'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
4921-6886-2743v15/107730-0001

**1. Plaintiffs Do Not Allege Any New Facts Supporting That Cargile Even Knew Of The Alleged "Accounting Scam" Before His Resignation.**

The Court previously ruled that Plaintiffs had failed to show "actual knowledge of the improper accounting" as to Cargile:

> Plaintiffs also allege that Cargile 'knew at the time' about the slotting fees/in-store promotion costs 'accounting scam,' and 'ran the accounting department and directly made the decisions regarding the improper accounting treatment involved in this case.' *Id.* ¶ 45 n.9; *id.* ¶ 108. **But what *facts* are alleged making this connection? It appears there are none, only conclusions.**

(Order at 11 (emphasis added).)

The SAC does not allege any new facts to address this specific deficiency. Indeed, the paragraphs cited in the Order remain unchanged in the SAC. (*Compare* FAC ¶¶ 45 n.9, 108 *with* SAC ¶¶ 45 n.9, 108.)  Like the deficient FAC, the SAC does not allege Cargile even had any communications about improperly classifying slotting fees before the December 2020 Investor Day presentation and the 2020 annual report.  (*See* SAC *passim*.)

In fact, the opposite is true.  In the Prospectus and the 2020 annual report, the Company disclosed that it would incur marketing expenses such as "slotting fees (as we expand to retail grocery stores)." (Prospectus at 24; *see also* 10-K at 29.)  The Company expressly stated that:  "Some of these expenses will be categorized as net deductions to revenue under GAAP as opposed to marketing expenses." (Prospectus at 24; *see also* 10-K at 8 & 29.)  In other words, rather than having decided to improperly account for slotting fees, the Company disclosed that it may correctly account for slotting fees at the time of the 2020 annual report issued on March 19, 2021.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-10-

CARGILE'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
4921-6886-2743v15/107730-0001

As a result, for all the purported misrepresentations attributed to Cargile (as discussed below), there are no factual allegations to support that he had any knowledge that any of his statements were false.

### 2. The Statement That The Company Historically Had "No Spending On Marketing Promotion" Was True.

Like the FAC, the SAC alleges that the Investor Day Presentation misrepresented that the Company had historically achieved revenue growth with "[n]o spending on marketing promotion." (SAC ¶ 46.) But there is no factual allegation that this historical statement was actually false, *i.e.,* there is no allegation that the Company, in fact, had historically spent money on marketing promotion. (*See* SAC *passim*.) Since the SAC does not allege this statement was false, this claim fails. *See, e.g., Norfolk Cty. Ret. Sys. v. Solazyme, Inc.*, 2016 U.S. Dist. LEXIS 179949, at *9 (N.D. Cal. Dec. 29, 2016) (dismissing because "[a]llegations omit contemporaneous facts that would establish a contradiction between the alleged materially misleading statements and reality"); *Osher v. JNI Corp.,* 302 F. Supp. 2d 1145, 1157 (S.D. Cal. 2003) (dismissing because plaintiffs did not plead "facts that show how that this statement was false or misleading").

The SAC theorizes that this accurate historical statement was misleading because the Company's future "growth strategy was premised on paying significant slotting fees and in-store promotions fees to get its products into … grocery stores…." (SAC ¶ 47.) But the Company actually disclosed in the very next bullet point that it would be spending money on marketing promotion in the upcoming year: "We expect significant benefit from marketing efforts in 2021 and beyond." (SAC ¶ 46; Form 8-K at Ex. 99.1, Slide 32.) The intended comparison was obvious—the Company grew historically without marketing promotion and it

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-11-

CARGILE'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

4921-6886-2743v15/107730-0001

hoped to grow even more after launching a marketing campaign.[5]  Plaintiffs cannot cherry-pick and distort the Company's disclosures to manufacture a false statement, especially when the Company actually disclosed the supposedly omitted information.  *See, e.g., In re Finjan Holdings, Inc. Sec. Litig.*, 58 F.4th 1048, 1052 n.1 (9th Cir. 2023) ("where a complaint incorrectly summarizes or characterizes a legally operative document attached to the complaint, incorporated by reference in the complaint, or subject to judicial notice, the document itself is controlling.") (internal citations omitted); *Lu v. Align Tech., Inc.*, 417 F. Supp. 3d 1266, 1276 (N.D. Cal. 2019) (rejecting allegation of falsity derived from plaintiff's "cherry-picking portions" of public statements, when falsity "contradicted by the statements viewed properly as a whole"); *Lomingkit v. Apollo Educ. Grp. Inc.*, 2017 U.S. Dist. LEXIS 22374, at *41 (D. Ariz. Feb. 16, 2017) ("[t]he use of selective quotes to deprive statements of their context does not make such statements actionable under Section 10(b) and Rule 10b-5").

### 3.    The Revenue Projections For 2021 Are Protected As Forward Looking Statements.

Like the FAC, the SAC again challenges the revenue projections in the Investor Day Presentation by asserting that these projections failed to disclose that slotting fees would be incorrectly treated as operating expenses.  (SAC ¶¶ 45, 47.) These allegations fail for two independent reasons.

First, as explained in Section III.B.1 above, the SAC—like the FAC—does not offer a single well-pleaded allegation supporting that any decision had been made to treat slotting fees as operating expenses ***before*** the Investor Day Presentation, let alone that Cargile was aware of any such decision.

---

[5] The Company even disclosed that, as part of its future marketing campaign, the Company would incur slotting fees.  (Prospectus at pp. 24. 42; 2020 Form 10-K at pp. 8, 29.)

Stradling Yocca
Carlson & Rauth
Lawyers
Newport Beach

-12-

CARGILE'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
4921-6886-2743v15/107730-0001

Second, the PSLRA's safe harbor protects these forward-looking revenue projections.[6] The PSLRA immunizes forward-looking statements from liability where they are accompanied by "meaningful cautionary statements identifying important factors that could cause actual results to differ materially." 15 U.S.C. § 78u-5(c)(1)(A)(i). Courts have found cautionary language to be sufficient where it warned about non-exhaustive risks that could impact future financial forecasts. *See, e.g., Weston Family P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 623 (9th Cir. 2022) (affirming dismissal because forward-looking statements were "accompanied by very detailed meaningful cautionary language that 'identif[ied] important factors that could cause actual results to differ materially from those in the forward-looking statement[s]'"); *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1193 n.3 (9th Cir. 2021) (finding cautionary statements were "detailed and specific" because defendant's 8-K form enumerated important risks); *Wasicek v. Sumo Logic, Inc.*, 2024 U.S. Dist. LEXIS 138515, at *46 (N.D. Cal. Aug. 5, 2024) (finding projections protected by safe harbor); *Zee v. Green Dot Crop.*, 2013 U.S. Dist. LEXIS 198927, at *21 (C.D. Cal. May 2, 2013) (Wu, J.) (same).

The Company's cautionary warnings identified important factors that may cause actual results to materially differ from the projections, including "uncertainty surrounding the ultimate success of Tattooed Chef's e-commerce platform; the need to prove Tattooed Chef's ability to build brand awareness and continue to launch innovative products … ; competition and the ability of the business to grow and manage growth profitably…." (Form 8-K at 1, *id.* at Slide 2.) Thus, the PSLRA's safe harbor protects the projections.

---

[6] *See, e.g., Police Ret. Sys. v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1058 (9th Cir. 2014) (finding "growth and revenue projections" alleged as misstatements "are forward-looking on their face"); *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111 (9th Cir. 2010) ("[An] earnings projection is by definition a forward-looking statement.").

### 4.    The Internal Controls Allegations Do Not State A Claim.

The SAC acknowledges that the Company reported material weaknesses in its internal controls.  Yet, the SAC still lumps together as false three (3) interrelated statements:  that the 2020 annual report stated the 2020 "financial statements complied with GAAP, misrepresented the extent of material deficiencies in the internal controls, and falsely stated that there had been no change in internal controls … during [first quarter of 2021]."  (SAC ¶ 59.) Plaintiffs again fail to allege any facts to make any of these statements actionable.

First, with respect to the GAAP compliance statement, the SAC does not allege any facts suggesting that Cargile knew the financial statements did not comply with GAAP at the time.  (*See* SAC *passim*.)  Instead, such pleading by hindsight underscores why a restatement does not make prior statements false when made.  *See, e.g., Ronconi v. Larkin,* 253 F.3d 423, 430 n.12 (9th Cir. 2001) ("Fraud by hindsight is not actionable.")*; Johnson v. Costco Wholesale Corp.*, 2019 U.S. Dist. LEXIS 205433, at *49 (W.D. Wash. Nov. 26, 2019) ("A company's public correction or contribution of additional facts is not, in and of itself, indicative of fraud, as fraud by hindsight is not actionable.") (internal quotations and citations omitted).

Second, regarding the internal control deficiencies, the SAC still does not identify any specific internal control deficiency that was not reported.  (*See* SAC *passim*.)  Plaintiffs just leave the Court and Defendants to guess, which plainly is insufficient.  *See, e.g., In re Silicon Storage Tech.*, 2006 U.S. Dist. LEXIS 14790, at *57 (N.D. Cal. Mar. 10, 2006) ("a general allegation that the practices at issue resulted in a false report of company earnings is not a sufficiently particular claim of misrepresentation").  In fact, the Company's annual report (and Prospectus) disclosed internal control weaknesses and the risks posed by those weaknesses. (2020 Form 10-K at 18 and Prospectus at pp. 13-14.)  Yet again, the SAC cannot ignore the parts of the Company's disclosures that contradict its claims.  *See, e.g.,*

-14-

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

CARGILE'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

4921-6886-2743v15/107730-0001

*Align Tech,* 417 F. Supp. 3d at 1276 (rejecting falsity based upon cherry-picking of disclosures); *Apollo Educ.*, 2017 U.S. Dist. LEXIS 22374, at *41 (same).

Third, the SAC claims that the annual report "falsely stated that there had been no change in internal controls…." (SAC ¶ 59.)  The SAC ignores the annual report's express qualification:  "[o]ther than described above in this Item [9A]." (SAC ¶ 58; 2020 Form 10-K at 39.)  Within Item 9A, the Company detailed various changes, including the hiring of additional staff and outside resources to supplement various financial and IT functions.  (2020 Form 10-K at 38.)  The SAC does not allege any undisclosed internal control change.

### 5. The SAC Challenges The Company's Reporting Of 2020 Financial Results, But Those Disclosures Did Not Involve Slotting Fees And Were Immaterial.

The SAC again challenges the 2020 fiscal year gross profit, gross margin, and increased sales from the annual report.  (SAC ¶¶ 60-63.)  The gravamen of Plaintiffs' contention is that these statements were misleading because the Company "later admitted and disclosed" that these financial results were lower supposedly as a result of misclassifying slotting fees.  (SAC ¶¶ 60 n.14 & 63.)

But the SAC simply misstates the Company's public filing.  Again, the Company restated its 2021 financials.  (SAC ¶¶ 104, 156.)  However, the Company did not "restate" the 2020 financials because the corrections to the 2020 financials were expressly deemed "immaterial" under SAB No. 99.  (Form 10-K/A at F-9.)  The SAC offers no allegation even suggesting that these corrections were material.  (*See* SAC *passim*.)[7]

---

[7] *See*, *e.g*, *IBEW Local Union No. 58 Pension Trust Fund & Annuity Fund v. Royal Bank of Scot. Grp.*, 783 F.3d 383, 390-91 (2d Cir. 2015) (affirming dismissal because restatement concerning exposure to sub-prime mortgage was not material under SAB No. 99); *ECA & Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 203-05 (2d Cir. 2009) (affirming dismissal because revisions to classification of loans were not material under SAB No. 99).

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

CARGILE'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
4921-6886-2743v15/107730-0001

Moreover, the SAC alleges that these immaterial corrections were misleading solely because the corrections resulted from the Company's purported slotting fee scheme. (SAC ¶¶ 61, 63.) But as explained in the prior Motion, these corrections had nothing to do with slotting fees. Instead, these corrections reclassified certain inventory and prepaid operating expenses. (Form 10-K/A at F-9.) Again, the SAC's allegations are contradicted by the true contents of the Form 10-K/A and therefore must be disregarded. *See, e.g., In re Finjan Holdings, Inc. Sec. Litig.*, 58 F.4th 1048, 1052 n.1; *Align Tech*, 417 F. Supp. 3d at 1276; *Apollo Educ.*, 2017 U.S. Dist. LEXIS 22374, at *41.

**6.    Plaintiffs Do Not Explain How The Investor Day Presentation Statements Regarding The Company's History And The Frozen Food Market's Potential Are False.**

Plaintiffs include entire slides from the Company's December 2020 Investor Day Presentation in paragraphs 38 and 39 of the SAC, which were not alleged in the FAC. (*See* SAC ¶ 47.) Yet, Plaintiffs never identify what specific statements within those slides are false.

Nothing in these two paragraphs appears related to Plaintiffs' theory of the case. Paragraph 38's slide "depict[s] the history of the Company." (SAC ¶ 38.) Paragraph 39's slide states that the Company "was growing rapidly and had a 'massive opportunity to disrupt the $55bn U.S. frozen food category' and that 'Tattooed Chef's near-term opportunity [was] $12.6 bn.'" (*Id.* ¶ 39.)

Plaintiffs simply do not explain how these statements are false. Are Plaintiffs alleging there is a misstatement in the Company's history? Are they challenging the Company's representation that it was "growing rapidly"? Or that there was a "massive opportunity" to "disrupt" the frozen food market? Plaintiffs do not say. Such pleading is clearly deficient. *See*, *e.g.*, *Zucco Partners, LLC v.*

STRADLING YOCCA CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

CARGILE'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
4921-6886-2743v15/107730-0001

*Digimarc Corp.*, 552 F.3d 981, 990-91 (9th Cir. 2009) ("plaintiff must specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and . . . state with particularity all facts on which [plaintiff's] belief [regarding the fraud] is formed") (internal citation omitted); *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1070 (9th Cir. 2008) ("A litany of alleged false statements, unaccompanied by . . . specific facts indicating why those statements were false, does not meet this standard.").

Beyond these pleading deficiencies, these challenged statements, at best, constitute inactionable corporate optimism or puffery. *See, e.g., In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111 (9th Cir. 2010) (finding company's description of its relations with employees as "good" was a "mildly optimistic, subjective assessment [that] hardly amounts to a securities violation"); *In re SolarCity Corp. Sec. Litig.*, 274 F. Supp. 3d 972, 995 (N.D. Cal. 2017) (statements that "'demand in California'" for company's products was "'as strong as ever'; in the northeast, demand 'gained significant steam' were general and vague . . . nonactionable statements of corporate optimism").

### C.   The SAC Still Fails To Plead A "Strong Inference" Of Scienter.

The PSLRA requires that a complaint allege with particularity a "strong inference" that each defendant acted with scienter. 15 U.S.C. § 78u-4(b)(2)(A). "In determining whether the pleaded facts give rise to a strong inference of scienter, the court must take into account plausible opposing inferences." *Tellabs*, 551 U.S. at 313 (internal quotation and citation omitted). In the Order, the Court discussed this instruction from *Tellabs*:

> In determining whether a "strong" inference of scienter exists, "the court must take into account plausible opposing inferences." [551 U.S.] at 323. This includes both "plausible nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff." *Id.* at 324. However, "[t]he inference that the defendant acted with scienter need not be irrefutable, *i.e.*, of the 'smoking-gun' genre, or even the 'most plausible of competing inferences." *Id.* But the inference of

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

CARGILE'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
4921-6886-2743v15/107730-0001

scienter must be more than merely "reasonable" or "permissible" – "it must be cogent and compelling." *Id.*

(Order at 3.)  "In making this determination, the Ninth Circuit indicates that the Court is obligated to take a 'holistic' approach where individual allegations do not suffice to themselves demonstrate scienter sufficiently."  (Order at 4 (citing authority).)

### 1.    The SAC's Dedicated Scienter Section And Confidential Witness Statements Do Not Mention Cargile.

Plaintiffs may not plead scienter for Cargile through group pleading. Instead, Plaintiffs must allege particularized facts showing Cargile individually had scienter to commit securities fraud.  *See, e.g., Mendoza v. HF Foods Grp., Inc.*, 2021 U.S. Dist. LEXIS 160982, at *23-24 (C.D. Cal. Aug. 25, 2021) ("Numerous courts in the Ninth Circuit have held that allegations grouping several defendants together, with no particularized facts alleged as to each defendant, are insufficient to plead the defendant's state of mind (that is, to plead scienter) with the particularity required by the PSLRA."); *May v. KushCo Holdings, Inc.*, 2020 U.S. Dist. LEXIS 213905, at *20-22 (C.D. Cal. May 31, 2012) (rejecting group pleading; holding plaintiffs did not allege scienter against certain individual defendants).

Plaintiffs did nothing to add to the scienter allegations against Cargile that this Court already ruled were deficient.  The Court previously found that:  "The FAC's scienter deficiency extends to defendant Charles F. Cargile ('Cargile') as well.  Cargile accurately notes that the actual section in the FAC that is expressly devoted to scienter mentions him not at all, at least not by name (and references to him in the collective do not do the trick under Rule 9(b)/PSLRA …."  (Order at 10 (citing *Or. Pub. Emples. Ret. Fund v. Apollo Grp. Inc.,* 774 F.3d 598, 607 (9th Cir. 2014).)  This statement remains true in the SAC.  Cargile is not mentioned in the SAC's dedicated scienter section.  (*See* SAC ¶¶ 166-177.)

-18-

CARGILE'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
4921-6886-2743v15/107730-0001

The SAC added an additional confidential witness, but, once again, none of these witnesses mention Cargile.  (*See* SAC ¶¶ 73-79, 108, 113-123, 137-140, 167-170.)  In fact, all but one joined the Company after Cargile resigned in April 2021.  (SAC ¶ 73 (CW#1 reporting to Cargile's successor), ¶ 77 (CW#2 joined the Company in December 2021), ¶ 114 (CW#4 started in June 2021), ¶ 168 (CW#5 started in November 2021).)  None of these confidential witnesses can have any probative information.  *See, e.g., Zucco*, 552 F.3d at 996 (affirming dismissal where confidential witnesses were not employed during relevant time).  While CW#3 overlapped with Cargile for approximately one month (SAC ¶ 137), CW#3 does not suggest any communication with Cargile.  *See, e.g., M & M Hart Living Trust v. Global Eagle Entm't, Inc.*, 2017 U.S. Dist. LEXIS 182106, *14-15 (C.D. Cal., Oct. 30, 2017) (finding confidential witnesses' statements did not show personal knowledge regarding defendant).

## 2. Plaintiffs' Allegations Regarding Cargile's Principled Resignation Support An Opposing Inference.

The FAC alleged that Cargile resigned because he disagreed with the Company's proposed accounting policies, including "revenue recognition [and] classification and timing of expenses," and that the Company therefore was forced to delay disclosing its first quarter results.  (FAC ¶ 65; *see also* FAC ¶¶ 64, 66-69.)  The Court recognized the opposing inference created by this allegation:  "Yet, despite this apparent stand on principles the Court is supposed to conclude that it is at least as cogent and compelling to conclude that Cargile was in fact behind or supportive of a nefarious accounting scheme designed to increase the company's stock price?"  (Order at 11.)

To avoid this conclusion, the SAC simply omits the reason for Cargile's resignation without offering any explanation as to why the Court should disregard their prior factual allegation.  (*See* SAC ¶ 65; *see also* Order at 11.)  The FAC's allegations are judicial admissions.  *See, e.g., Sicor Ltd. v. Cetus Corp.*, 51 F.3d

-19-

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

CARGILE'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
4921-6886-2743v15/107730-0001

848, 859 (9th Cir. 1995) ("a statement in a complaint may serve as a judicial admission").  Plaintiffs cannot disregard a prior inconvenient factual allegation that supports an opposing inference that is detrimental to, if not dispositive of, their claim.  *See*, *e.g.*, *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296-97 (9th Cir. 1990) (affirming dismissal because "amended complaint may only allege other facts consistent with the challenged pleading"); *First Call Int'l, Inc. v. S&B Glob., Inc.*, 2024 U.S. Dist. LEXIS 119437, at *16-22, 26 (C. D. Cal. July 5, 2024) (dismissing where amended pleading deleted detrimental allegation without explanation) (Wu, J.); *Pac. Recovery Sols. v. United Behavioral Health*, 508 F. Supp. 3d 606, 615 (N.D. Cal. 2020) (dismissing where "Plaintiffs deleted that allegation from the FAC and replaced it with conclusory allegations that contradict it").

Even assuming that Plaintiffs' tactics were permissible (which they are not), the SAC still supports the same inference.  Before Cargile's resignation, the Company consistently disclosed that the upcoming marketing campaign would include slotting fees and that certain marketing expenses would correctly be categorized as reductions to revenue.  (*See* § II.B.)  Cargile resigned in April 2021 before the Company issued its first quarter results with the supposedly incorrect accounting for slotting fees.  (SAC ¶¶ 64, 65, 68.)  The Company delayed issuing those first quarter results.  (SAC ¶ 65-68.)  Those allegations support the same opposing, nonculpable inference as the FAC's more direct ones – that Cargile resigned, rather than certify the (later restated) quarterly financial results.

### 3.   The SAC Does Not Allege Facts Supporting Motive.

The SAC does not allege any facts to support a motive or opportunity for Cargile to commit fraud.  *See, e.g., Black v. Snap, Inc.*, 2023 U.S. Dist. LEXIS 188695, at *46-47 (C.D. Cal. Sep. 26, 2023) (Wu, J.) (dismissing where plaintiffs did not allege plausible motive); *In re A-Power Energy Generation Sys. Sec. Litig.*, 2012 U.S. Dist. LEXIS 79417, at *45 (C.D. Cal. May 31, 2012) (dismissing certain directors because plaintiff made "no allegation of any suspicious stock sales or

-20-

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

CARGILE'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
4921-6886-2743v15/107730-0001

other financial motive, or any other reason to conclude that [those defendants] were engaged or complicit in securities fraud") (Wu, J.).

The SAC does not allege that Cargile held any Company securities. (*See SAC passim*.)  The Court previously found that the FAC did not allege that Cargile "had the sufficient securities fraud state-of-mind out of concern over his career and reputation" due to his resignation.  (Order at 11 n.10.)  Indeed, Cargile's resignation alone suggests job security would not have motivated Cargile to commit securities fraud.

**4.      The Core Products Theory Fails Because The SAC Does Not Allege A Decision To Improperly Account For Slotting Fees During Cargile's Tenure.**

The Court previously rejected Plaintiffs' attempt to rely upon the core product doctrine because accounting errors are not part of a company's core product or operations.  (Order at 10.)  The SAC does not add any allegation that would make the alleged accounting error part of the Company's core operations.

While the Company was small, it had both branded and private label product lines, distinct distribution channels (big box and retail grocery stores), and internal divisions within the Company for the different product lines (and multiple products within each product line).  (SAC ¶¶ 35-37.)  Notably, the Company disclosed during Cargile's tenure that it would *correctly* account for slotting fees as deductions to revenue in the Prospectus and 2020 annual report.  (*See* § II.B.)  There is nothing absurd about Cargile expecting the Company to correctly account for slotting fees per its disclosure during his tenure.  *See, e.g., City of Hollywood Firefighters Pension Fund*, 2024 U.S. Dist. LEXIS 144335, at *31-32 (N.D. Cal. Aug. 13, 2024) (although particular product constituted 90% of business, finding no fact of such prominence that it would be absurd for defendants to be unaware); *Axonic Capital LLC v. Gateway One Lending*, 2018 U.S. Dist. LEXIS 244609, *45-46 (C.D. Cal. Dec. 18, 2018) (rejecting absurdity argument).

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

CARGILE'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

4921-6886-2743v15/107730-0001

Moreover, the doctrine is premised on knowledge of a group's shared scheme. *S. Ferry LP v. Killinger*, 542 F.3d 776, 784–85 (9th Cir. 2008). The SAC does not allege any facts to show that any scheme existed at the time of the Investor Day Presentation or the 2020 annual report. (*See* § III.B.1, *supra.*) Without such allegations, Cargile cannot be held responsible for the group's supposed plan that did not even exist.

***

The Court previously identified the FAC's serious flaws — that it did not allege any discussion, let alone a decision, during Cargile's tenure to improperly account for slotting fees, did not allege any securities owned by Cargile, and alleged Cargile's principled resignation. The SAC does not add any factual allegations pertaining to Cargile showing scienter on his part to commit securities fraud. As a result, the competing, nonculpable inferences are more compelling.

**D.    The Claim Against Cargile For Violations Of Section 20(A) Of The Exchange Act Also Fails.**

"To state a claim for control person liability under Section 20(a) of the Exchange Act, a plaintiff must first allege an underlying violation of Section 10(b)." *Black*, 2023 U.S. Dist. LEXIS 188695, at *48. Here, Plaintiffs have not stated a predicate violation. Even if Plaintiffs had stated a predicate violation against another defendant during Cargile's tenure, there is no allegation that Cargile exercised control over the other defendants. (*See* SAC *passim*.)

**E.    The Motion Should Be Granted With Prejudice Because Plaintiffs Have Failed To Address The Numerous Deficiencies Set Forth In The Court's Prior Order.**

The Court gave Plaintiffs leave because "the Court cannot at this time rule out the possibility that Plaintiffs have not learned more about the alleged issues addressed in the FAC since the filing of the FAC or even since the time they filed their oppositions to the three motions." (Order at 2.) Yet, Plaintiffs did not add

-22-

any allegations as to Cargile. Dismissal of the claims with prejudice is appropriate. *See, e.g.*, *Metzler* 540 F.3d at 1072 (affirming dismissal of securities fraud complaint with prejudice because plaintiff failed to cure deficiencies the trial court previously identified); *Coady v. Indymac Bancorp, Inc.*, 2012 U.S. Dist. LEXIS 196211, at *9 (C.D. Cal. Jun. 6, 2012) (dismissing securities fraud claim with prejudice where plaintiff amended complaint without correcting defects identified by court) (Wu, J.).

## IV.   CONCLUSION

For the forgoing reasons, Cargile respectfully requests that the Court dismiss the SAC against him with prejudice.

DATED:  March 3, 2025

STRADLING YOCCA CARLSON & RAUTH LLP

By: _____
    Marc J. Schneider
    Stephen L. Ram
    Andrew B. Mason
    Michael B. Mosher
    Attorneys for Defendant
    Charles F. Cargile

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Charles F. Cargile, certifies that this brief contains 6,922 words, which:

☒ complies with the word limit of L.R. 11-6.1.

☐ complies with the word limit set by court order dated _____.


Dated:  March 3, 2025

_____
Marc J. Schneider

-24-

CARGILE'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

4921-6886-2743v15/107730-0001