BOTTINI & BOTTINI, INC.
Francis A. Bottini, Jr. (SBN 175783)
  fbottini@bottinilaw.com
Albert Y. Chang (SBN 296065)
  achang@bottinilaw.com
7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone: (858) 914-2001
Facsimile:   (858) 914-2002

*Counsel for Plaintiffs John Hancock, Shashank Bagul, John Spadaro,
Dr. Mustapha Hotait, and Marco Starace*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| DINKO MIHAYLOV, JOHN HANCOCK, SHASHANK BAGUL, JOHN SPADARO, MUSTAPHA HOTAIT, and MARCO STARACE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>TATTOOED CHEF, INC., SALVATORE GALLETTI, STEPHANIE DIECKMANN, CHARLES F. CARGILE, EDWARD GELFAND, PAULA CIARAMITARO, MARIE QUINTERO-JOHNSON, SARAH GALLETTI, and BDO USA, LLP,<br><br>Defendants. | Case No. 2:22-cv-9311-GW-E<br><br>Class Action<br><br>**Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendant BDO USA, PC's Motion to Dismiss the Second Amended Class Action Complaint**<br><br>Judge:      Hon. George H. Wu<br>Date:       June 9, 2025<br>Time:       8:30 a.m.<br>Courtroom: 9D, 9th Floor |

**Table of Contents**

I.    INTRODUCTION ................................................................................................1

II.   BACKGROUND ................................................................................................2

III.  LEGAL STANDARD.........................................................................................4

IV.   ARGUMENT .....................................................................................................5

    A.    Plaintiffs Have Stated a Section 10(b) Claim Against BDO .........5

        1.    Plaintiffs Have Pleaded with Sufficient Particularity That BDO's 2021 Audit Opinion Was False and Misleading When Made...............................................................5

        2.    Plaintiffs Have Sufficiently Alleged Scienter.......................6

    B.    Should the Court Grant Defendants' Motions, the Court Should Grant Leave to Amend .........................................................9

    C.    No Law Requires That the Court "Trim the Securities Fraud Hedges".............................................................................9

V.    CONCLUSION..................................................................................................10

i

# Table of Authorities

**Cases**

*Austin v. Univ. of Or.*,
925 F.3d 1133 (9th Cir. 2019)................................................................................4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...............................................................................................4

*Black v. Snap, Inc.*,
2023 U.S. Dist. LEXIS 188695 (C.D. Cal. Sept. 26, 2023) ................................9

*Boston Ret. Sys. v. Uber Techs., Inc.*,
2020 U.S. Dist. LEXIS 141724 (N.D. Cal. Aug. 7, 2020).................................6

*DCD Programs, Ltd. v. Leighton*,
833 F.2d 183 (9th Cir. 1987)................................................................................9

*Diaz v. Int'l Longshoremen's & Warehousemen's Union*,
474 F.3d 1202 (9th Cir. 2007)..............................................................................4

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005) ...............................................................................................4

*Foman v. Davis*,
371 U.S. 178 (1962) ...............................................................................................9

*Glazer Capital Mgmt., L.P. v. Forescout Techs., Inc.*,
63 F.4th 747 (9th Cir. 2023) .................................................................................4

*Hill v. Gozani*,
638 F.3d 40 (1st Cir. 2011) .................................................................................10

*In re A-Power Energy Generation Sys. Sec. Litig.*,
2012 U.S. Dist. LEXIS 79417 (C.D. Cal. May 31, 2012)...................................8

*In re Cirrus Logic Sec. Litig.*,
946 F. Supp. 1446 (N.D. Cal. 1996).....................................................................7

*In re Oracle Corp. Sec. Litig.*,
627 F.3d 376 (9th Cir. 2010)...............................................................................10

*In re Read-Rite Corp. Sec. Litig.*,
335 F.3d 843 (9th Cir. 2003)................................................................................6

ii

*In re WageWorks, Inc., Sec. Litig.,*
  2020 U.S. Dist. LEXIS 97180 (N.D. Cal. June 1, 2020) ................................5, 7

*In re Zoom Sec. Litig.,*
  2022 U.S. Dist. LEXIS 28265 (N.D. Cal. Feb. 16, 2022) ................................10

*Jiangchen v. Rentech, Inc.,*
  2017 U.S. Dist. LEXIS 222743 (C.D. Cal. Nov. 20, 2017) ..............................9

*Johnson v. City of Shelby,*
  574 U.S. 10 (2014) .........................................................................................4

*Mag Instrument, Inc. v. JS Prods.,*
  595 F. Supp. 2d 1102 (C.D. Cal. 2008)...........................................................10

*New England Carpenters Guaranteed Annuity*
  *& Pension Funds v. DeCarlo,*
  80 F.4th 158 (2d Cir. 2023)..............................................................................6

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund,*
  575 U.S. 175 (2015) ........................................................................................6

*Patel v. Axesstel, Inc.,*
  2015 U.S. Dist. LEXIS 18385 (S.D. Cal. Feb. 13, 2015) ...............................7, 8

*United States ex rel. Tamanaha v. Furukawa Am., Inc.,*
  445 F. App'x 992 (9th Cir. 2011) ...................................................................9

*Varghese v. China Shenghuo Pharm. Holdings, Inc.,*
  672 F. Supp. 2d 596 (S.D.N.Y. 2009) .............................................................7

**Statutes**

15 U.S.C. § 78j.........................................................................................*passim*

15 U.S.C. § 78u-4.........................................................................................1, 4

**Rules**

FED. R. CIV. P. 9 ............................................................................................4, 9

FED. R. CIV. P. 12 .....................................................................................4, 9, 10

FED. R. CIV. P. 15 ............................................................................................9

Plaintiffs John Hancock, Shashank Bagul, John Spadaro, Dr. Mustapha Hotait, and Marco Starace ("Plaintiffs") respectfully submit this memorandum in opposition to the March 3, 2025 motion (Dkt. No. 127) of Defendant BDO USA LLP (n/k/a BDO USA, P.C.) ("BDO") to dismiss Plaintiffs' Second Amended Class Action Complaint ("SAC") (Dkt. No. 124).[1]  The Court should deny BDO's motion because, as discussed below, Plaintiffs have stated claims under Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA").

## I.    INTRODUCTION

The Court should deny BDO's motion because the SAC alleges ample particularized facts of BDO's participation in the accounting scheme that required Tattooed Chef, Inc. ("TCI" or the "Company") to restate its financial statements, and eventually brought it into bankruptcy.  As TCI's auditor, BDO worked directly with the Company's Chief Financial Officers ("CFOs"), as well as members of the Audit Committee, on the Company's financial statements and accounting issues.  ¶¶ 22, 73–76.[2]  BDO identified numerous internal-control weaknesses in the Company in year-end 2020, but failed to notify the Company of its violations of GAAP[3] until October 2022.  ¶¶ 73, 142.  According to Confidential Witnesses ("CWs"), BDO had actual knowledge of the Company's accounting scheme.  ¶¶ 116, 119–120.  Specifically, statements of Confidential Witness #5 ("CW#5") bolster (¶ 168) a finding of BDO's knowledge of TCI's internal-control deficiencies.  Ample facts give rise to an inference of BDO's scienter, requiring a denial of its motion to dismiss the SAC.

---

[1] Plaintiffs incorporate by reference their oppositions to the motions (Dkt. Nos. 128, 129) of Defendant Charles F. Cargile and Defendants Salvatore Galletti, Stephanie Dieckmann, Edward Gelfand, Paula Ciaramitaro, Marie Quintero-Johnson, and Sarah Galletti (the "Individual Defendants").

[2] The allegations in the SAC are cited as "¶ ___."  Unless otherwise noted, all emphases in quoted texts are added.

[3] Generally Accepted Accounting Principles.

1

## II.    BACKGROUND

This is a class action brought on behalf of all persons who acquired TCI securities between December 15, 2020 and November 28, 2022 (the "Class Period").  ¶¶ 1, 178.  As alleged in the SAC, the Individual Defendants and TCI's auditor, BDO, orchestrated a scheme to defraud investors by touting a rapid-growth strategy and misrepresenting TCI's revenues and expenses.  *E.g.*, ¶¶ 2, 36, 145.  Defendants' false and misleading statements caused TCI's stock price to rise to over $26 per share during the Class Period.  *E.g.*, ¶¶ 2, 50, 55, 70, 103.  When the truth began to emerge in October 2022, TCI announced that its financial statements for the quarters ended March 31, 2021, June 30, 2021, and September 30, 2021, as well as for the year ended December 31, 2021, "were materially misstated and should no longer be relied upon and should be restated[.]"  ¶ 146.  Following the restatement of TCI's financial statements, its stock price fell to approximately $1.44 at the end of the Class Period.  ¶ 160.  And TCI filed for bankruptcy in July 2023.  *See* Defs.' Mem. at 6 n.2.

Founded by Defendant Sam Galletti (¶ 17) and his daughter, Defendant Sarah Galletti (¶ 34), TCI sold plant-based foods as either private label products or under the "Tattooed Chef" brand in retailers across the United States.  ¶¶ 9, 32.  Having gone public in 2020 through a special purpose acquisition company ("SPAC"), TCI's internal financial controls were deficient from the start.  *E.g.*, ¶¶ 24–25, 58–59, 73, 76, 78, 168.  In its Prospectus, TCI touted its strategy to increasing revenue by growing sales of its branded products.  ¶ 36.

TCI's products are frozen products that are sold in stores' highly competitive freezer department.  ¶ 37.  These products are subject to much higher competition because retailers and grocery stores have a much more limited space available for frozen products.  *Id.*  In order to increase sales of its

branded products, however, TCI needed to pay higher "slotting fees" and incur promotional expenses. *Id.* Despite the difficulties in maintaining desired margins after paying the increased promotional costs and slotting fees, TCI represented to the market throughout the Class Period that it was well-positioned to supercharge its growth through increased sales of its branded frozen products.  ¶ 44.

To maintain the appearance of this growth strategy, Defendants mispresented TCI's revenues and expenses during the Class Period and failed to disclose adverse facts pertaining to its business, operations, and prospects. ¶ 145.  Defendants' false and misleading statements fall into three categories:

- statements regarding growth strategy, revenue, gross margin, and EBITDA[4] guidance (¶¶ 38–39, 45–46, 52, 56, 58, 62, 69, 72, 85, 90–92, 99, 127–128, 136);

- statements regarding internal controls deficiencies (¶¶ 58, 92, 96–98); and

- statements regarding TCI's credit facility (¶¶ 133–135, 137).

*     *     *

BDO willfully ignored accounting errors that existed in plain sight and improperly represented that TCI's financial statements fully complied with GAAP.  *See* ¶¶ 22, 73, 75–76, 111–113, 116–118.  Statements from CW#1, CW#2, CW#4, and CW#5 demonstrate that BDO knew about TCI's accounting scheme and internal-control problems.  *See* ¶¶ 73, 75, 113, 116–118, 121, 168, 170. Detailed and particularized, these allegations sufficiently state a Section 10(b) claim against BDO.

*///*

*///*

---

[4] Earnings before interest, taxes, depreciation, and amortization.

3

## III.    LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure requires "liberal treatment of a plaintiff's complaint at the pleading stage." *Austin v. Univ. of Or.*, 925 F.3d 1133, 1137 (9th Cir. 2019). In reviewing a complaint on a Rule 12(b)(6) motion, the Court must accept all factual allegations as true and draw all reasonable inferences in favor of plaintiffs. *Id*. A complaint will survive a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To do so, the complaint need only "state[] simply, concisely, and directly events that ... entitle[] [the plaintiff] to [relief]." *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014). The Court decides "not whether a plaintiff will ultimately prevail[,] but whether the claimant is entitled to offer evidence to support the claims." *Diaz v. Int'l Longshoremen's & Warehousemen's Union*, 474 F.3d 1202, 1205 (9th Cir. 2007) (citing cases) (quotation marks omitted).

Claims under Section 10(b) of the Exchange Act are subject to heightened pleading standards under Rule 9(b) and the PSLRA. *See Glazer Capital Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 765 (9th Cir. 2023). Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b). The PSLRA requires a plaintiff to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). To state a claim, a plaintiff need only allege a material misrepresentation or omission in connection with the purchase or sale of a security, scienter, reliance, economic loss, and loss causation. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341–42 (2005). Here, BDO challenges only the SAC's sufficiency with respect to two elements: falsity and scienter. As discussed below, BDO's challenges to the pleading sufficiency of the SAC are meritless.

## IV.    ARGUMENT

### A.    Plaintiffs Have Stated a Section 10(b) Claim Against BDO

#### 1.    Plaintiffs Have Pleaded with Sufficient Particularity That BDO's 2021 Audit Opinion Was False and Misleading When Made

Plaintiffs' claim against BDO is based on TCI's accounting scheme that led to the restatement of its financial results.  As TCI's auditor, BDO participated in this accounting scheme.  *See* ¶¶ 22, 73, 75–76, 111–113, 116–118.  Ample factual allegations demonstrate that BDO had actual knowledge of the Company's accounting scheme and internal-control problems.  As noted above, CW#1 stated that BDO discovered internal-control weaknesses at the Company by the end of 2020.  ¶ 73.  BDO worked directly with the Company's CFOs, Audit Committee members, and CW#1 on the internal-control issues, gaining direct knowledge of the accounting scheme.  ¶¶ 73–76.  And the statements of CW#5 (which have been added to the SAC) further support an inference that BDO knew about TCI's internal-control deficiencies.  ¶¶ 168–169.  But "BDO willfully ignored accounting errors that existed in plain sight and improperly represented that [TCI's] financial statements fully complied with GAAP."  ¶ 22.

BDO "had actual knowledge" of the Company's accounting scheme — inflating its revenue in violation of GAAP.    ¶¶ 75–76.  Yet, BDO failed to correct the Company's accounting irregularities until October 2022, when it notified the Company that its 2021 Annual Report and its quarterly reports for the first three quarters of 2021 should be restated.  ¶ 142.  In light of these fact-specific allegations, it is BDO's statements in TCI's disclosures that were demonstrably false and misleading.  *See In re WageWorks, Inc., Sec. Litig.*, 2020 U.S. Dist. LEXIS 97180, at **21–22 (N.D. Cal. June 1, 2020) (upholding a Section 10(b) claim arising from a restatement).

5

BDO argues that its 2021 Audit Opinion is not actionable, even though paragraphs 111 and 112 of the SAC explain the falsity in detail.  BDO is wrong.  Under *Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*, 575 U.S. 175, 188–89 (2015), BDO's "opinions" are actionable because BDO was aware of facts that contradicted or undermined the statements of belief.  *See Boston Ret. Sys. v. Uber Techs., Inc.*, 2020 U.S. Dist. LEXIS 141724, at *27 (N.D. Cal. Aug. 7, 2020).  Moreover, the fact-specific allegations set forth above demonstrate that BDO had actual knowledge of TCI's accounting scheme and internal-control problems.  In light of these fact-specific allegations, it is at least "plausible" that BDO disbelieved the statements and opinions in its 2021 Audit Opinion.  *See New England Carpenters Guaranteed Annuity & Pension Funds v. DeCarlo*, 80 F.4th 158, 181 (2d Cir. 2023) (finding a certain "opinion" made by BDO actionable under *Omnicare*).

### 2.    Plaintiffs Have Sufficiently Alleged Scienter

As BDO concedes, the falsity and scienter analyses can be conducted in a single inquiry.  A finding of falsity, as discussed above, can lead to a finding of scienter.  *See In re Read-Rite Corp. Sec. Litig.*, 335 F.3d 843, 846 (9th Cir. 2003).  Here, two additional sets of facts support an inference of scienter.

First, in addition to CW#1, two other Confidential Witnesses, CW#3 and CW#4, had personal experiences with accounting red flags that were known to BDO.  ¶¶ 116, 119–120.  CW#3 observed the Company's liquidity problems in 2022 when BDO "was auditing the Company's books."  ¶ 120.  As such, BDO necessarily would have discovered the liquidity problems that resulted in nonpayments and late payments to suppliers.  *Id*.  Between February and March 2022, CW#4, a Vice President of Sales Support (¶ 113), witnessed an episode of improper accounting practice involving tens of thousands of dollars in rebates.  ¶ 116.  CW#4 observed that BDO "willfully ignored" errors "in

6

plain sight" and "represented in the [2021] Annual Report that [TCI's] financial statements fully complied with GAAP" — a representation that was false.  *See id.*

Moreover, CW#2 provided specific invoices and explanations to BDO regarding payments by vendors.  ¶ 113.  It is reasonable to infer that BDO knew that during the Class Period, there were often many discrepancies between the amount billed on TCI's invoices and the amount received, that TCI offered many promotions to vendors for marketing its products, and that sometimes more than half of the payment received could be deducted.  *See id*.  In addition, CW#5, a Data Analyst at TCI who worked directly with its Chief Operation Officer and Chief Financial Officer, stated that TCI "had difficulties paying bills due to cash flow issues and lack of internal controls."  ¶ 168.  Identifying specific data-integrity issues, such as double-counting of sales, CW#5 stated that TCI's internal controls were the "worst she/he had ever seen."  *Id*.  These allegations demonstrate BDO's actual knowledge of the accounting irregularities in the Company, warranting an inference of scienter.  *See Varghese v. China Shenghuo Pharm. Holdings, Inc*., 672 F. Supp. 2d 596, 603, 610 (S.D.N.Y. 2009) (denying an auditor's motion to dismiss based on actual knowledge of "serious internal control weaknesses").

Second, this case involves an accounting restatement.  Where accounting restatements were made or accounting rules are violated, courts routinely have found scienter on the part of company executives and auditors.  *See*, *e.g.*, *WageWorks*, 2020 U.S. Dist. LEXIS 97180, at *21; *In re Cirrus Logic Sec. Litig*., 946 F. Supp. 1446, 1463 (N.D. Cal. 1996) ("[d]eviations from a company's internal accounting policies … may provide evidence of scienter if those deviations also violate GAAP").  In  *Patel v. Axesstel, Inc*., for example, plaintiff alleged that Axesstel — a company with 25 employees — overstated its revenue related to

sales of the company's product in Africa.  2015 U.S. Dist. LEXIS 18385, at *6 (S.D. Cal. Feb. 13, 2015).  This alleged overstatement violated the company's revenue-recognition policy and "simple GAAP accounting principles."  *Id*. at *33.  Based on these allegations, the court concluded that plaintiff adequately pleaded scienter.  *Id*.  The court reasoned that in a small company, where only a handful of people were involved in executive and administrative functions, "it strains credulity to believe that [individual defendants] did not know that no final contracts in fact existed for the [product] sales in Africa."  *Id*. at 34.  Just like Axesstel, TCI is a relatively small company with a single product.  ¶¶ 33 167.  And it would have been improbable that BDO was unaware of TCI's accounting irregularities while auditing its books.  *See Axesstel*, 2015 U.S. Dist. LEXIS 18385, at *34.  A finding of scienter on the part of BDO is proper here.

Arguing the contrary, BDO relies heavily on this Court's decision in *In re A-Power Energy Generation Systems Securities Litigation*, 2012 U.S. Dist. LEXIS 79417, at *9 (C.D. Cal. May 31, 2012).  But *A-Power* did not involve an accounting restatement.  Nor did plaintiff in *A-Power* provide detailed confidential-witness statements directly implicating defendants.  In *A-Power*, there was no allegation of the auditor's knowledge of the purported accounting irregularities.  *Id.*, at *33 ("[p]laintiff has not alleged … that [the auditor] had some reason … to know that a particular aspect of A-Power's … accounting was wrong or flawed and that [the auditor] then later ignored evidence").  In fact, *A-Power* turned on plaintiff's failure to allege falsity.  *See id.* at *24 ("[p]laintiff does not appear to have alleged that compliance with PRC's GAAP is even required … or that A-Power's subsidiaries prepared their filings in compliance with GAAP").  BDO's reliance on *A-Power* is misplaced.

///

///

8

**B.      Should the Court Grant Defendants' Motions, the Court Should Grant Leave to Amend**

The Court should reject the request of Cargile, BDO, and the Individual Defendants for a with-prejudice dismissal in light of the policy favoring resolution of cases "on the merits." *Foman v. Davis*, 371 U.S. 178, 181–82 (1962). Rule 15 requires that leave to amend be "freely give[n]," FED. R. CIV. P. 15(a)(2), and with "'extreme liberality.'" *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987).

BDO proffers a single argument for a with-prejudice dismissal:  futility. But BDO does not — and cannot — submit any facts to support a finding that any amendment would be futile.  Moreover, leave to amend is particularly appropriate because the motion to dismiss relies on a heightened pleading standard.  Any pleading deficiencies can be cured.  *See United States ex rel. Tamanaha v. Furukawa Am., Inc.*, 445 F. App'x 992, 994 (9th Cir. 2011) (instructing the district court to grant leave to amend a complaint that failed to satisfy Rule 9(b)).  Moreover, no conceivable prejudice can result from amending the SAC because this case remains at the pleadings stage.  In fact, this Court has routinely granted plaintiffs leave to amend their securities-fraud complaints.  *See, e.g.*, *Jiangchen v. Rentech, Inc.*, 2017 U.S. Dist. LEXIS 222743, at *21 (C.D. Cal. Nov. 20, 2017) (Wu, J.); *Black v. Snap, Inc.*, 2023 U.S. Dist. LEXIS 188695, at *48 (C.D. Cal. Sept. 26, 2023) (Wu, J.).

**C.      No Law Requires That the Court "Trim the Securities Fraud Hedges"**

The Court requested briefing on the question of whether the Court is *required* to conduct "pleadings-policing as part of a Rule 12(b)(6) motion" by "getting rid of" alleged statements for pleading deficiencies, after finding that a Section 10(b) claim has been sufficiently stated based on at least one alleged statement.  *See* Dkt. No. 122 at 6.  The answer to this question is no.

While the Court is required to conduct a statement-by-statement analysis on a Rule 12(b)(6) motion,[5] Plaintiffs can state a Section 10(b) claim based on a single alleged misstatement. *See*, *e.g.*, *In re Zoom Sec. Litig.*, 2022 U.S. Dist. LEXIS 28265, at **12–13 (N.D. Cal. Feb. 16, 2022) (allowing a Section 10(b) claim to go forward based on a single statement). No law requires the Court to conduct any "pleadings-policing." In fact, "trim[ming] the securities fraud hedges" amounts to *sua sponte* striking allegations under Rule 12(f) — a disfavored drastic remedy subject to a more stringent standard than Rule 12(b)(6). *See Mag Instrument, Inc. v. JS Prods.*, 595 F. Supp. 2d 1102, 1106 (C.D. Cal. 2008).

## V.   CONCLUSION

For the reasons set forth above, the Court should deny BDO's motion.

Dated:  April 14, 2025

Respectfully submitted,
BOTTINI & BOTTINI, INC.

s/ Francis A. Bottini, Jr.
Francis A. Bottini, Jr.
Albert Y. Chang
7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone:  (858) 914-2001
Facsimile:   (858) 914-2002
Email:       fbottini@bottinilaw.com
             achang@bottinilaw.com

*Counsel for Plaintiffs John Hancock, Shashank Bagul, John Spadaro, Dr. Mustapha Hofait, and Marco Starace*

---

[5] *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 390 (9th Cir. 2010); *accord Hill v. Gozani*, 638 F.3d 40, 56 (1st Cir. 2011) ("we examine each alleged misstatement in turn").

## Certificate of Compliance

The undersigned, counsel of record for John Hancock, Shashank Bagul, John Spadaro, Dr. Mustapha Hotait, and Marco Starace, certifies that this brief contains 2,873 words, which complies with the 7,000-word limit set by L.R. 11-6.1.

Dated:  April 14, 2025

s/ Francis A. Bottini, Jr.
Francis A. Bottini, Jr.

1