BOTTINI & BOTTINI, INC.
Francis A. Bottini, Jr. (SBN 175783)
    fbottini@bottinilaw.com
Albert Y. Chang (SBN 296065)
    achang@bottinilaw.com
7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone: (858) 914-2001
Facsimile:   (858) 914-2002

*Counsel for Plaintiffs John Hancock, Shashank Bagul, John Spadaro,*
*Dr. Mustapha Hotait, and Marco Starace*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| DINKO MIHAYLOV, JOHN HANCOCK, SHASHANK BAGUL, JOHN SPADARO, MUSTAPHA HOTAIT, and MARCO STARACE, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>        vs.<br><br>TATTOOED CHEF, INC., SALVATORE GALLETTI, STEPHANIE DIECKMANN, CHARLES F. CARGILE, EDWARD GELFAND, PAULA CIARAMITARO, MARIE QUINTERO-JOHNSON, SARAH GALLETTI, and BDO USA, LLP,<br><br>                    Defendants. | Case No. 2:22-cv-9311-GW-E<br><br>Class Action<br><br>**Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendant Charles F. Cargile's Motion to Dismiss the Second Amended Class Action Complaint**<br><br>Judge:       Hon. George H. Wu<br>Date:        June 9, 2025<br>Time:        8:30 a.m.<br>Courtroom: 9D, 9th Floor |

**Table of Contents**

I.     INTRODUCTION ................................................................................................1

II.    BACKGROUND ................................................................................................2

III.   LEGAL STANDARD.........................................................................................4

IV.    ARGUMENT .....................................................................................................5

       A.    Plaintiffs Have Stated a Section 10(b) Claim Against
             Cargile for Securities Fraud ...................................................................5

             1.    Defendants' Statements Were Materially False
                   and Misleading.............................................................................5

             2.    Plaintiffs Have Adequately Alleged Scienter ....................12

       B.    Plaintiffs Have Stated a Section 20(a) Claim Against
             Cargile for Control-Person Liability................................................15

       C.    Should the Court Grant Defendants' Motions, the Court
             Should Grant Leave to Amend .......................................................16

V.     CONCLUSION.................................................................................................16

i

# Table of Authorities

**Cases**

*Austin v. Univ. of Or.,*
925 F.3d 1133 (9th Cir. 2019)....................................................................4, 14

*Azar v. Yelp, Inc.,*
2018 WL 6182756 (N.D. Cal. Nov. 27, 2018).....................................................9

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ............................................................................................4

*Berson v. Applied Signal Tech., Inc.,*
527 F.3d 982 (9th Cir. 2008)............................................................................13

*Black v. Snap, Inc.,*
2023 U.S. Dist. LEXIS 188695 (C.D. Cal. Sept. 26, 2023) .......................15, 16

*Boston Ret. Sys. v. Uber Techs., Inc.,*
2020 U.S. Dist. LEXIS 141724 (N.D. Cal. Aug. 7, 2020)..................................8

*Brody v. Transitional Hosps. Corp.,*
280 F.3d 997 (9th Cir. 2002)..............................................................................7

*Caterpillar, Inc. v. Williams,*
482 U.S. 386 (1987) ..........................................................................................14

*DCD Programs, Ltd. v. Leighton,*
833 F.2d 183 (9th Cir. 1987).............................................................................16

*Diaz v. Int'l Longshoremen's & Warehousemen's Union,*
474 F.3d 1202 (9th Cir. 2007)............................................................................4

*Dura Pharms., Inc. v. Broudo,*
544 U.S. 336 (2005) ............................................................................................4

*Foman v. Davis,*
371 U.S. 178 (1962) ..........................................................................................16

*Glazer Capital Mgmt., L.P. v. Forescout Techs., Inc.,*
63 F.4th 747 (9th Cir. 2023) ..............................................................................4

*Howard v. Everex Sys., Inc.,*
228 F.3d 1057 (9th Cir. 2000)...........................................................................15

*In re Alphabet, Inc. Sec. Litig.,*
1 F.4th 687 (9th Cir. 2021)...........................................................................13, 14

*In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.,*
324 F. Supp. 2d 474 (S.D.N.Y. 2004) ..............................................................10

*In re CV Therapeutics, Inc. Sec. Litig.,*
2004 WL 1753251 (N.D. Cal. Aug. 5, 2004).....................................................9

*In re Facebook, Inc. Sec. Litig.*,
 87 F.4th 934 (9th Cir. 2023) ......................................................................6

*In re Gilead Scis. Sec. Litig.*,
 2005 WL 2649200 (N.D. Cal. Oct. 11, 2005) ....................................................12

*In re Hewlett Packard Co. Sec. Litig.*,
 2013 U.S. Dist. LEXIS 168292 (N.D. Cal. Nov. 26, 2013)................................7

*In re InterMune, Inc. Sec. Litig.*,
 2004 WL 1737264 (N.D. Cal. July 30, 2004) ....................................................9

*In re Quality Sys., Inc. Sec. Litig.*,
 865 F.3d 1130 (9th Cir. 2017)........................................................................8

*Jiangchen v. Rentech, Inc.*,
 2017 U.S. Dist. LEXIS 222743 (C.D. Cal. Nov. 20, 2017) ............................16

*Johnson v. City of Shelby*,
 574 U.S. 10 (2014) .......................................................................................4

*Lormand v. U.S. Unwired, Inc.*,
 565 F.3d 228 (5th Cir. 2009)........................................................................12

*Markette v. XOMA Corp.*,
 2017 WL 4310759 (N.D. Cal. Sept. 28, 2017)................................................8

*Matrixx Initiatives, Inc. v. Siracusano*,
 563 U.S. 27 (2011) .....................................................................................15

*N.Y. Hotel Trades Council v. Impax Labs., Inc.*,
 2021 WL 81719 (9th Cir. Jan. 11, 2021) .........................................................9

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
 575 U.S. 175 (2015) ......................................................................................8

*Pirani v. Slack Techs., Inc.*,
 445 F. Supp. 3d 367 (N.D. Cal. 2020) ...........................................................7

*Police Ret. Sys. of St. Louis v. Granite Constr. Inc.*,
 2021 U.S. Dist. LEXIS 257297 (N.D. Cal. Sept. 16, 2021)............................11

*Reese v. Malone*,
 747 F.3d 557 (9th Cir. 2014)..........................................................12, 13, 14, 15

*S. Ferry LP v. Killinger*,
 542 F.3d 776 (9th Cir. 2008)........................................................................12

*S.E.C. v. Todd*,
 642 F.3d 1207 (9th Cir. 2011)..................................................................7, 12

*Shreiber v. Synacor, Inc.*,
 832 F. App'x 54 (2d Cir. 2020) .....................................................................8

iii

*Teamsters Local 617 Pension & Welfare Funds v. Apollo Grp., Inc.*,
   690 F. Supp. 2d 959 (D. Ariz. 2010)........................................................................15

*United States ex rel. Tamanaha v. Furukawa Am., Inc.*,
   445 F. App'x 992 (9th Cir. 2011) ............................................................................16

**Statutes**

15 U.S.C. § 78j.........................................................................................1, 2, 9, 13

15 U.S.C. § 78t .................................................................................................1, 13

15 U.S.C. § 78u-4................................................................................................*passim*

15 U.S.C. § 78u-5.......................................................................................................9

**Rules**

FED. R. CIV. P. 9 ................................................................................................4, 16

FED. R. CIV. P. 15 ..................................................................................................16

Plaintiffs John Hancock, Shashank Bagul, John Spadaro, Dr. Mustapha Hotait, and Marco Starace respectfully submit this memorandum in opposition to the March 3, 2025 motion (Dkt. No. 128) of Defendant Charles F. Cargile to dismiss Plaintiffs' Second Amended Class Action Complaint ("SAC") (Dkt. No. 124).[1]  The Court should deny Cargile's motion because, as discussed below, Plaintiffs have stated claims against him under Sections 10(b) and 20(a) of the Securities Exchange Act (the "Exchange Act"), 15 U.S.C. §§ 78j(b), 78t(a), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA").

## I. INTRODUCTION

The Court should deny Cargile's motion because the SAC alleges ample particularized facts of his participation in the accounting scheme that required Tattooed Chef, Inc. ("TCI" or the "Company") to restate its financial statements, and eventually brought it into bankruptcy.  As TCI's Chief Financial Officer ("CFO"), Cargile was directly involved in the scheme.  ¶¶ 13, 19, 38, 45, 47, 56, 64.[2]  He signed the false and misleading financial reports at issue.  ¶¶ 38, 56. Confidential Witness #1 ("CW#1") directly reported to him at least nine material weaknesses identified by BDO at year end in 2020.  ¶ 73. The tenure of Confidential Witness #3 ("CW#3") also overlapped with Cargile before he resigned.  *See* ¶ 137. Specific and particularized, these allegations of Cargile's direct involvement in the scheme give rise to a strong inference of scienter, satisfying the pleading requirements of the PSLRA.  Accordingly, Cargile's challenges to the sufficiency of the SAC should be rejected.

---

[1] Plaintiffs incorporate by reference their oppositions to the motions of Defendant BDO USA, LLP (n/k/a BDO USA, PC) ("BDO") and Defendants Salvatore Galletti, Stephanie Dieckmann, Edward Gelfand, Paula Ciaramitaro, Marie Quintero-Johnson, and Sarah Galletti (the "Individual Defendants"). The Individual Defendants' memorandum (Dkt. No. 129-1) is cited as "Defs.' Mem."

[2] The allegations in the SAC are cited as "¶ ___."  Unless otherwise noted, all emphases in quoted texts are added.

1

## II.    BACKGROUND

This is a class action brought on behalf of all persons who acquired TCI securities between December 15, 2020 and November 28, 2022 (the "Class Period").  ¶¶ 1, 178.  As alleged in the SAC, the Individual Defendants and TCI's auditor, BDO, orchestrated a scheme to defraud investors by touting a rapid-growth strategy and misrepresenting TCI's revenues and expenses.  *E.g.*, ¶¶ 2, 36, 145.  Defendants' false and misleading statements caused TCI's stock price to rise to over $26 per share during the Class Period.  *E.g.*, ¶¶ 2, 50, 55, 70, 103.  When the truth began to emerge in October 2022, TCI announced that its financial statements for the quarters ended March 31, 2021, June 30, 2021, and September 30, 2021, as well as for the year ended December 31, 2021, "were materially misstated and should no longer be relied upon and should be restated[.]"  ¶ 146.  Following the restatement of TCI's financial statements, its stock price fell to approximately $1.44 at the end of the Class Period.  ¶ 160. And TCI filed for bankruptcy in July 2023.  *See* Defs.' Mem. at 6 n.2.

Founded by Defendant Sam Galletti (¶ 17) and his daughter, Defendant Sarah Galletti (¶ 34), TCI sold plant-based foods as either private label products or under the "Tattooed Chef" brand in retailers across the United States.  ¶¶ 9, 32.  Having gone public in 2020 through a special purpose acquisition company ("SPAC"), TCI's internal financial controls were deficient from the start.  *E.g.*, ¶¶ 24–25, 58–59, 73, 76, 78, 168.  In its Prospectus, TCI touted its strategy to increasing revenue by growing sales of its branded products.  ¶ 36.

TCI's products are frozen products that are sold in stores' highly competitive freezer department.  ¶ 37.  These products are subject to much higher competition because retailers and grocery stores have a much more limited space available for frozen products.  *Id*.  In order to increase sales of its

branded products, however, TCI needed to pay higher "slotting fees" and incur promotional expenses. *Id*. Despite the difficulties in maintaining desired margins after paying the increased promotional costs and slotting fees, TCI represented to the market throughout the Class Period that it was well-positioned to supercharge its growth through increased sales of its branded frozen products.  ¶ 44.

To maintain the appearance of this growth strategy, Defendants mispresented TCI's revenues and expenses during the Class Period and failed to disclose adverse facts pertaining to its business, operations, and prospects. ¶ 145.  Defendants' false and misleading statements fall into three categories:

- statements regarding growth strategy, revenue, gross margin, and EBITDA[3] guidance (¶¶ 38–39, 45–46, 52, 56, 58, 62, 69, 72, 85, 90–92, 99, 127–128, 136);
- statements regarding internal controls deficiencies (¶¶ 58, 92, 96–98); and
- statements regarding TCI's credit facility (¶¶ 133–135, 137).

\* \* \*

As TCI's CFO, Cargile signed the December 15, 2020 Form 8-K, which contained an "Analyst Day" presentation that touted TCI's purported growth strategy, as well as earnings guidance.  ¶¶ 38, 45.  Cargile also signed TCI's March 19, 2021 Annual Report and Sarbanes-Oxley ("SOX") certification.  ¶ 56.

These filings misrepresent TCI's revenues by treating TCI's slotting fees and in-store promotion fees as "operating expenses" instead of reductions to revenue, as required by Generally Accepted Accounting Principles ("GAAP").  ¶ 47.  Fact-specific allegations demonstrate that Cargile was well aware of this accounting scheme and TCI's internal control deficiencies.  ¶¶ 75, 108, 121, 137.

---

[3] Earnings before interest, taxes, depreciation, and amortization.

### III.    LEGAL STANDARD

Rule 12(b)(6) requires "liberal treatment of a plaintiff's complaint at the pleading stage." *Austin v. Univ. of Or.*, 925 F.3d 1133, 1137 (9th Cir. 2019). In reviewing a complaint on a Rule 12(b)(6) motion, the Court must accept all factual allegations as true and draw all reasonable inferences in favor of plaintiffs. *Id*. A complaint will survive a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To do so, the complaint need only "state[] simply, concisely, and directly events that ... entitle[] [the plaintiff] to [relief]." *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014). The Court decides "not whether a plaintiff will ultimately prevail[,] but whether the claimant is entitled to offer evidence to support the claims." *Diaz v. Int'l Longshoremen's & Warehousemen's Union*, 474 F.3d 1202, 1205 (9th Cir. 2007) (citing cases) (quotation marks omitted).

Claims under Section 10(b) of the Exchange Act are subject to heightened pleading standards under Rule 9(b) and the PSLRA. *See Glazer Capital Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 765 (9th Cir. 2023). Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b). The PSLRA requires a plaintiff to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). To state a claim, a plaintiff need only allege a material misrepresentation or omission in connection with the purchase or sale of a security, scienter, reliance, economic loss, and loss causation. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341–42 (2005). Here, Cargile challenges only the SAC's sufficiency with respect to two elements: falsity and scienter. As discussed below, Cargile's challenges to the pleading sufficiency of the SAC are meritless.

## IV.    ARGUMENT

**A.    Plaintiffs Have Stated a Section 10(b) Claim Against Cargile for Securities Fraud**

**1.    Defendants' Statements Were Materially False and Misleading**

**a.    The Investor Day Presentation Was False and Misleading**

Cargile does not — and cannot — dispute that he, together with Defendants Sam Galletti and Dieckmann, provided the earnings guidance in the Company's December 15, 2020 Investor Day presentation.  *See* ¶ 45.  Nor can he dispute that the presentation highlighted the Company's 645% growth of its branded products, which had been purportedly achieved "with no spending on marketing promotion":



¶ 46. Cargile, together with Defendants Sam and Sarah Galletti, and Dieckmann, told the analysts that the Company would launch its first advertising and marketing campaign in 2021, which would drive significant continued growth.  ¶¶ 38, 45, 50.  These statements were false and misleading because they failed to disclose the fact that, far from being premised on "no

5

spending on marketing promotion," TCI's aggressive growth strategy was premised on paying significant slotting fees and in-store promotion fees to get its products into the frozen food section of grocery stores, and that those expenses were required by GAAP to be booked as reductions to revenue and thus would decrease rather than increase the growth rate.  ¶ 47.  As a result, these statements about revenue growth were materially misleading.  *Id*.[4]

Disputing the presentation's falsity, Cargile makes two meritless arguments.  First, Cargile argues that the presentation was truthful pointing to the absence of any allegations that "the Company, in fact, had historically spent money on marketing promotions."  Cargile's Mem. at 11.  Even assuming the truth of the "no spending on market promotion" statement standing alone, the presentation gives the impression that [TCI] would be able to continue its explosive growth, in both revenue and branded sales, without "spending on marketing promotion[s]":

- "We have grown our revenue and established a successful branded product with *no spending on marketing promotion*."
- "We expect significant benefits from marketing efforts in 2021 and beyond."

¶ 46 (emphasis in original).  This impression is false and misleading because Cargile and the other Individual Defendants knew that, to comply with GAAP, the upcoming significant slotting fees and in-store promotion fees would have to be deducted from revenue.  *See* ¶ 47.  As the Ninth Circuit held in *In re Facebook, Inc. Securities Litigation*, a statement is materially false and misleading if it "'create[s] an impression of a state of affairs that differ[s] in a material way from the one that actually exist[s].'"  87 F.4th 934, 950 (9th Cir. 2023) (quoting

---

[4] The misrepresentations about the growth rate the Company *had already achieved*, without the need to spend any money on marketing, were not "forward-looking statements" and thus not protected by the PSLRA's safe-harbor provision.

*Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002)).  Thus, the "no spending on marketing promotion" statement is at best half-truth, because a defendant who chooses to speak on a subject must disclose the whole truth and not conceal material information.  *See In re Hewlett Packard Co. Sec. Litig.*, 2013 U.S. Dist. LEXIS 168292, at *34 (N.D. Cal. Nov. 26, 2013).

Second, Cargile accuses Plaintiffs of "cherry-picking" isolated public statements, and argues that the Company had "clearly disclosed … [that it] would incur slotting fees."  Cargile's Mem. at 12 & n.5.  Even assuming that the Company's other unrelated public filings (such as its Form 8-K and Prospectus) can be considered to cure the falsity of the December 15, 2020 presentation, the purported curative disclosures submitted by Cargile say nothing about the accounting treatment of the slotting fees or the impossibility of aggressive growth in branded products without revenue reduction. Cargile's argument based on purported curative disclosures is unavailing.

In any event, "whether a public statement is misleading, or whether adverse facts were adequately disclosed is a mixed question to be decided by the trier of fact."  *Pirani v. Slack Techs., Inc.*, 445 F. Supp. 3d 367, 385 (N.D. Cal. 2020) (internal quotation marks and citations omitted).  "[R]esolving an issue as a matter of law is only appropriate when the adequacy of the disclosure is so obvious that reasonable minds [could] not differ."  *S.E.C. v. Todd*, 642 F.3d 1207, 1220 (9th Cir. 2011).  The Court should reject Cargile's attempt to raise the factual issues of falsity and materiality at the pleadings stage.  *See id*.

### b. The 2021 Revenue Projections Fall Outside Any Safe-Harbor Protection

Cargile challenges the falsity of the revenue projections in the December 15, 2020 presentation by claiming protection under the PSLRA's safe-harbor provision.  But the falsity of those projections are clear on their face:

**2021 GUIDANCE AND BEYOND**

| Year | Revenue | Gross Margin | Adjusted EBITDA |
| --- | --- | --- | --- |
| 2021 | $222 million | 20% - 25% | $8-10 million |
| 2022 | $300 million | 25% - 30% | mid-teens as % of sales |
| 2023 | $500 million | 30% - 35% | high-teens as % of sales |
| 2026 | $1 billion | 35%+ | 20%+ as % of sales |

¶ 45.  The revenue projections were "not accompanied by any meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the guidance."  ¶ 45 n.9.  Cargile "knew at the time that [TCI's] growth plan and projected revenues and gross profits/margins were predicated on an accounting scam pursuant by which the Company was improperly classifying the slotting fees and in-store promotion costs that were essential to the growth plan as 'operational expenses' instead of reductions to revenue."  *Id*.

Cargile's claim of safe-harbor protection is unavailing.  The Company's statements based on an ongoing accounting scam are not "forward-looking statements" and thus not protected by the PSLRA's safe-harbor provision.[5]  *See In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1142 (9th Cir. 2017) ("the safe

---

[5] Likewise, the revenue projections in the December 15, 2020 presentation are statements of opinion rather than forward-looking statements subject to the PSLRA safe-harbor provision. *E.g.*, *Markette v. XOMA Corp.*, 2017 WL 4310759, at *5 (N.D. Cal. Sept. 28, 2017) ("[t]here is no reasonable basis to read a statement of hopefulness, encouragement, or expectation as anything other than an opinion"); *Shreiber v. Synacor, Inc.*, 832 F. App'x 54, 57 (2d Cir. 2020) (statements "phrased in terms of … expectations and projections" are "quintessential opinion statements").  Under *Omnicare, Inc. v. Laborers Dist. Council Construction Industry Pension Fund*, 575 U.S. 175, 188–89 (2015), Cargile's opinion statements are actionable because he was aware of facts that contradicted or undermined the statements of belief.  *See Boston Ret. Sys. v. Uber Techs., Inc.*, 2020 U.S. Dist. LEXIS 141724, at *27 (N.D. Cal. Aug. 7, 2020).

8

harbor is not designed to protect companies and their officials when they knowingly make a materially false or misleading statement"). In any event, the PSLRA's safe harbor is limited to forward-looking statements "accompanied by meaningful cautionary statements." 15 U.S.C. § 78u-5(c). Cargile cannot meet his burden to show that the guidance was accompanied by "meaningful" cautionary statements that provided a high degree of specificity. *See In re InterMune, Inc. Sec. Litig.*, 2004 WL 1737264, at \*\*4–5 (N.D. Cal. July 30, 2004) (concluding that forward looking statements that are not based on the most accurate information available to defendants are not protected by the safe harbor). Here, the guidance issued was only accompanied by generic statements about "uncertainty surrounding the ultimate success of [TCI's] e-commerce platform" and "competition and the ability of the business to grow." Cargile's Mem. at 24–25. As a matter of law, such vague generalized uncertainties are insufficient to invoke the safe harbor. *See, e.g.*, *In re CV Therapeutics, Inc. Sec. Litig.*, 2004 WL 1753251, at \*11 (N.D. Cal. Aug. 5, 2004) (cautionary statements did not immunize defendants from liability when they failed to disclose pertinent risks that had already transpired before the statement was made). Nor can the safe-harbor provision apply because Cargile had actual knowledge of the issues regarding accounting treatment of promotion expenses, but failed to disclose them to investors. *See N.Y. Hotel Trades Council v. Impax Labs., Inc.*, 2021 WL 81719, at \*2 (9th Cir. Jan. 11, 2021) (reversing dismissal because revenue guidance figures were given with actual knowledge of facts that rendered the figures false).

The Court should reject Cargile's claim for safe-harbor protection.[6]

---

[6] Of course, even if the revenue projections are subject to safe-harbor protection, the remaining false statements in the December 15, 2020 presentation remain actionable. *See Azar v. Yelp, Inc.*, 2018 WL 6182756, at \*\*7–16 (N.D. Cal. Nov. 27, 2018) (ruling that false guidance figures were protected by the safe-harbor provision, but sustaining numerous non-forward looking, false statements of current fact).

**c.** **Particularized Allegations Demonstrate the Falsity of the Revenue Projections**

As detailed in the SAC, the revenue projections in the December 15, 2020 presentation were false because Cargile and the Individual Defendants failed to disclose that, to comply with GAAP, the upcoming significant slotting fees and in-store promotion fees — all expected to bring about the Company's aggressive growth — would have to be deducted from revenue. *See* ¶ 47. Feigning ignorance, Cargile disregards Plaintiffs' well-pleaded allegations of his direct involvement, as the Company's CFO, in accounting and revenue recognition. *See* ¶¶ 19, 38, 45, 48, 56, 64–65.

Specifically, Plaintiffs allege that "a significant reason for the delay in filing the Form 10-Q [for the fiscal quarter ended March 31, 2021] was the disagreement between the Company and its former CFO Cargile about accounting policies, including issues surrounding revenue recognition and the classification and timing of expenses." ¶ 67. CW#1, who served as the Company's Director of SOX Compliance, directly reported to Cargile (while he was CFO) "at least nine material weaknesses [in internal controls] at year end in 2020." ¶ 73. Cargile also gained "actual knowledge of the improper accounting" and GAAP violations through working directly with the other Individual Defendants and the Audit Committee. ¶¶ 75, 108. Detailed and particularized, these allegations are free from any defects of conclusory or "group" pleading and are more than sufficient to establish falsity in the revenue projections in the December 15, 2020 presentation. Moreover, the fact that the Company had to restate its financial statements further supports a finding of falsity and materiality for purposes of stating a Section 10(b) claim. *See, e.g., In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 486–87 (S.D.N.Y. 2004) ("the mere fact that financial results were restated is

10

sufficient basis for pleading that those statements were false when made"); *Police Ret. Sys. of St. Louis v. Granite Constr. Inc.*, 2021 U.S. Dist. LEXIS 257297, at *47 (N.D. Cal. Sept. 16, 2021) (same) (collecting cases).

### d.    The Allegations of Internal-Controls Deficiencies State a Claim

As discussed above, CW#1, a Director of SOX Compliance, directly reported to Cargile (while he was CFO) "at least nine material weaknesses [in internal controls] at year end in 2020." ¶ 73. The SAC alleges that Cargile "was directly … involved in the oversight … of the Company's internal controls." ¶ 19(e). And Cargile signed the SOX certifications in the 2020 Annual Report attesting to the accuracy of financial reporting, as well as the disclosure of any material changes to the Company's internal controls over financial reporting. ¶ 56. And the disclosures regarding internal controls in the 2020 Annual Report were false and misleading because they "misrepresented that the Company's financial statements complied with GAAP, [and] misrepresented the extent of the material deficiencies in the Company's internal controls[.]" ¶ 59. The same false and misleading disclosures were made in the Company's Q1 2021 Form 10-Q — which reported the financial results reviewed and approved by Cargile before his resignation (¶ 68). *See* ¶¶ 69, 76. In fact, that Q1 2021 Form 10-Q "*overstated revenue by $2.054 million, overstated gross profit by $2.173 million, and overstated operating expenses by $3.025 million.*" ¶ 69 (emphases in original). And those financial results were later restated. ¶¶ 71–72. The SAC also contains detailed allegations derived from two other confidential witnesses demonstrating that the Individual Defendants intentionally overrode the Company's internal controls and recognized inflated revenue during the Class Period despite knowing that GAAP required the substantial promotional and slotting fees that the Company had offered to

11

customers to be booked as reductions to revenue rather than operating expenses. *See ¶¶ 77–80.*

These allegations are more than sufficient to establish falsity and materiality with respect to Cargile's statements regarding the Company's internal controls. Contrary to Cargile's arguments, Plaintiffs do not attempt to plead "fraud by hindsight" because their allegations, such as the statements of CW#1, demonstrate Cargile's real-time knowledge of the Company's internal-controls deficiencies. *See ¶ 73.* Specific and particularized, Plaintiffs' allegations identify the Company's internal-control deficiencies. *See, e.g.,* ¶¶ 58–59, 73, 76. To the extent that Cargile argues that curative disclosures have been made, the Court should reject his attempt to raise a factual issue at the pleadings stage. *See Todd*, 642 F.3d at 1220.[7]

### 2. Plaintiffs Have Adequately Alleged Scienter

The core-operations doctrine permits courts to "impute scienter based on the inference that key officers have knowledge of the 'core operations' of the company." *Reese v. Malone*, 747 F.3d 557, 575 (9th Cir. 2014). Core-operations allegations satisfy the PSLRA's scienter pleading requirements where: (1) "the nature of the relevant [information] is of such prominence that it would be 'absurd' to suggest that management was without knowledge of the matter" (the absurdity test); or (2) the core-operations allegations are "particular and suggest that defendants had actual access to the disputed information" (the actual-access test). *S. Ferry LP v. Killinger*, 542 F.3d 776, 785–86 (9th Cir. 2008); *see also In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 706 (9th Cir. 2021) (scienter

___

[7] For the same reason, the Court should reject outright Cargile's attempt to contest the merits of Plaintiffs' allegations regarding the falsity of the 2020 Annual Report (*see ¶¶ 60–63*). *See In re Gilead Scis. Sec. Litig.*, 2005 WL 2649200, at *6 n.4 (N.D. Cal. Oct. 11, 2005) (refusing to wade into factual disputes at the pleadings stage); *see also Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 267 (5th Cir. 2009) (emphasizing that the PSLRA does not alter the pleading standard for any element of a securities fraud claim except for scienter).

pled where security concerns were "highly material" to operations).

With regard to Cargile and all other Individual Defendants, Plaintiffs' allegations satisfy the core operations' tests. In *Berson v. Applied Signal Tech., Inc.*, despite plaintiffs alleging "no particular facts" establishing that defendants knew of issues that led to a "precipitous drop in … revenue," the Ninth Circuit inferred that the executives responsible for day-to-day corporate operations knew about the issues "because of their devastating effect on the corporation's revenue." 527 F.3d 982, 987–88 (9th Cir. 2008). Here, as alleged in the SAC, TCI is a single-product company — the sale of frozen food products. ¶ 170. The accounting fraud alleged here pertained to the Company's core — and only — product. *Id.* It would be absurd for the Individual Defendants not to know about the Company's growth strategy of its single, core product. This is especially so with regard to Cargile, who, as CFO, "bore primary responsibility for addressing the material weakness in the Company's internal controls" (¶ 73) and worked directly with the Audit Committee and other executives on the Company's accounting issues (¶ 75). *See Reese*, 747 F.3d at 576 (imputing information that is "fundamental to operations of [the executive's] business over the tenure of her career").

Arguing the contrary, Cargile says that Plaintiffs' core-operations allegations are conclusory. But there is nothing conclusory about the allegations identifying TCI as a single-segment business. *See* ¶ 33. Application of the core-operations doctrine is particularly appropriate here because TCI is a small company with few decision makers. *See id.* ("[w]e have one operating segment and one reportable segment, as our chief decision maker, our Chief Executive Officer, reviews financial information on an aggregate basis for purposes of allocating resources and evaluating financial performance"). Accordingly, the Court should reject Cargile's attempt to evade the core-

13

operations doctrine.

Moreover, statements of the CWs support an inference of scienter on the part of Cargile. CW#1, the Company's Director of SOX Compliance, reported to Cargile "at least nine material weaknesses [in internal controls] at year end in 2020." ¶ 73. CW#3, whose tenure at TCI overlapped with Cargile's in March 2021, also shared Cargile's knowledge of TCI's liquidity problems, including that TCI "*was not paying its suppliers 'across the board.'*" *See* ¶ 137. In addition, the SAC alleges that Cargile also gained "actual knowledge of the improper accounting" and GAAP violations through working directly with the other Individual Defendants and the Audit Committee. ¶¶ 75, 108.

The SAC further alleges motive and opportunity. As CFO, Cargile's career and reputation would be ruined if the GAAP violations came to light. *See Reese*, 747 F.3d at 571 ("[t]he revelation that [the company] ignored red flags would portend serious corporate mismanagement, a portent that would be detrimental … [to the executive] personally"). Moreover, Cargile's employment at TCI was dependent on the approval of its few decision makers, such as Sam Galletti (*see* ¶ 33). He was therefore incentivized to partake in the accounting scheme.[8]

///

///

///

///

///

---

[8] Cargile requests that the Court draw an inference in his favor based on an allegation in the previous complaint that he resigned due to his disagreement with TCI about its accounting policies. *See* Cargile's Mem. at 6. This conflicts with the well-pleaded complaint rule — "the plaintiff is the master of the complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 398–99 (1987). The Court should deny the request also because it amounts to an improper challenge to the truth of Plaintiffs' allegations at the pleadings stage. *See Austin*, 925 F.3d at 1137.

14

On this point, Cargile's argument based on the purported lack of motive is meritless. As a matter of law, the "absence of a motive allegation, though relevant, is not dispositive." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 48 (2011). And, as demonstrated above, Plaintiffs have alleged motive (*see* ¶¶ 33, 64–65, 73). *See also Reese*, 747 F.3d at 576. Cargile's reliance on *Black v. Snap, Inc.* is misplaced because plaintiff in that case alleged no motive at all and the underlying issue had been "repeatedly disclosed." 2023 U.S. Dist. LEXIS 188695, at *47 (C.D. Cal. Sept. 26, 2023) (Wu, J.). Neither of these facts exists here. Cargile therefore cannot avoid a finding of scienter.

## B. Plaintiffs Have Stated a Section 20(a) Claim Against Cargile for Control-Person Liability

To state a Section 20(a) claim, a plaintiff need only allege "(1) a primary violation of federal securities laws"; and "(2) that the defendant exercised actual power or control over the primary violator." *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000). Such allegations are subject to a notice-pleading standard. *See Teamsters Local 617 Pension & Welfare Funds v. Apollo Grp., Inc.*, 690 F. Supp. 2d 959, 966–67 (D. Ariz. 2010).

Here, as discussed above, Plaintiffs have stated a claim for primary violation against Cargile. And Plaintiffs have alleged in detail that Cargile, together with the other Individual Defendants, controlled TCI and its financial reporting. *E.g.*, ¶¶ 19, 34, 108, 188, 198. Because Cargile does not challenge the sufficiency of the allegations of control, he has waived any argument on this point. Accordingly, the Court should deny Cargile's motion with respect to the Section 20(a) claim, if the Court finds that Plaintiffs have stated a claim against him under Section 10(b).

///

///

///

**C.     Should the Court Grant Defendants' Motions, the Court Should Grant Leave to Amend**

The Court should reject the request of Cargile, BDO, and the Individual Defendants for a with-prejudice dismissal in light of the policy favoring resolution of cases "on the merits." *Foman v. Davis*, 371 U.S. 178, 181–82 (1962). Rule 15 requires that leave to amend be "freely give[n]," FED. R. CIV. P. 15(a)(2), and with "'extreme liberality.'" *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987).

Leave to amend is particularly appropriate because the motion to dismiss relies on a heightened pleading standard. Any pleading deficiencies can be cured. *See United States ex rel. Tamanaha v. Furukawa Am., Inc.*, 445 F. App'x 992, 994 (9th Cir. 2011) (instructing the district court to grant leave to amend a complaint that failed to satisfy Rule 9(b)). Moreover, no conceivable prejudice can result from amending the SAC because this case remains at the pleadings stage. In fact, this Court has routinely granted plaintiffs leave to amend their securities-fraud complaints. *See, e.g., Jiangchen v. Rentech, Inc.*, 2017 U.S. Dist. LEXIS 222743, at *21 (C.D. Cal. Nov. 20, 2017) (Wu, J.); *Black*, 2023 U.S. Dist. LEXIS 188695, at *48.

## V.    CONCLUSION

For the reasons set forth above, the Court should deny Cargile's motion.

Dated:  April 14, 2025

Respectfully submitted,

BOTTINI & BOTTINI, INC.

s/ Francis A. Bottini, Jr.
Francis A. Bottini, Jr.
Albert Y. Chang
7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone:  (858) 914-2001
Facsimile:   (858) 914-2002
Email:       fbottini@bottinilaw.com
             achang@bottinilaw.com

*Counsel for Plaintiffs*

16

**Certificate of Compliance**

The undersigned, counsel of record for John Hancock, Shashank Bagul, John Spadaro, Dr. Mustapha Hotait, and Marco Starace, certifies that this brief contains 4,614 words, which complies with the 7,000-word limit set by L.R. 11-6.1.

Dated:  April 14, 2025

_s/ Francis A. Bottini, Jr._
Francis A. Bottini, Jr.

1