GIBSON, DUNN & CRUTCHER LLP
CRAIG VARNEN, SBN 172603
   cvarnen@gibsondunn.com
333 South Grand Avenue
Los Angeles, California 90071
Telephone:  213.229.7000
Facsimile:   213.229.7520

GIBSON, DUNN & CRUTCHER LLP
ALLISON KOSTECKA, Admitted *Pro Hac Vice*
   akostecka@gibsondunn.com
1900 Lawrence Street, Suite 3000
Denver, Colorado 80202
Telephone:  303.298.5700
Facsimile:   303.298.5907

GIBSON, DUNN & CRUTCHER LLP
BRIAN YANG, SBN 328551
   byang2@gibsondunn.com
3161 Michelson Drive
Irvine, California 92612
Telephone:  949.451.3800
Facsimile:   949.451.4220

*Attorneys for Defendants*
*SALVATORE GALLETTI, STEPHANIE DIECKMANN,*
*EDWARD GELFAND, PAULA CIARAMITARO, MARIE*
*QUINTERO-JOHNSON, and SARAH GALLETTI*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DINKO MIHAYLOV, JOHN HANCOCK, SHASHANK BAGUL, JOHN SPADARO, MUSTAPHA HOTAIT, and MARCO STARACE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TATTOOED CHEF, INC., SALVATORE GALLETTI, STEPHANIE DIECKMANN, CHARLES F. CARGILE, EDWARD GELFAND, PAULA CIARAMITARO, MARIE QUINTERO-JOHNSON, SARAH GALLETTI, and BDO USA, LLP,<br><br>Defendants. | CASE NO. 2:22-cv-09311-GW-E<br><br>**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>Date:     June 9, 2025<br>Time:     8:30 a.m.<br>Ctrm:    9D<br>Judge:   Hon. George H. Wu |

Gibson, Dunn & Crutcher LLP

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ..................................................................................................... 1

II.   ARGUMENT ............................................................................................................. 4

  A.   The Opposition Confirms Plaintiffs Have Not Pled an Actionable Misstatement or Omission ........................................................................... 4

    1.   Plaintiffs Have Not Alleged False Statements with Specificity and Particularity ........................................................... 4

    2.   The SAC Still Lacks Non-Conclusory Allegations Showing the Challenged Statements Were False or Misleading When Made ................................................................................................... 6

  B.   The Opposition Confirms Plaintiffs' Failure to Plead Scienter ............... 11

    1.   Plaintiffs Do Not Allege Scienter for Sarah Galletti, Ciaramitaro, Gelfand, and Quintero-Johnson .............................. 12

    2.   Confidential Witness Allegations Do Not Establish Scienter ....... 12

    3.   Sam Galletti's Stock Sales Do Not Establish Scienter ................. 15

    4.   The Core Product Theory Does Not Apply Here .......................... 16

  C.   Plaintiffs Fail to Plead Loss Causation ................................................... 18

  D.   The Complaint Fails to State a Claim Under Section 20(a) ................... 20

III.   CONCLUSION ....................................................................................................... 20

Gibson, Dunn & Crutcher LLP

i

## TABLE OF AUTHORITIES

**Page**

### Cases

*In re Alphabet, Inc. Sec. Litig.*,
  1 F.4th 687 (9th Cir. 2021) ................................................................................. 18

*Bao v. SolarCity Corp.*,
  2016 WL 4192177 (N.D. Cal. Aug. 9, 2016) ........................................................ 12

*Barry v. Colony NorthStar, Inc.*,
  2019 WL 13237710 (C.D. Cal. Jan. 24, 2019) ....................................................... 8

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988) ............................................................................................. 19

*Berson v. Applied Signal Tech., Inc.*,
  527 F.3d 982 (9th Cir. 2008) ............................................................................... 18

*Brown v. Ambow Educ. Holding Ltd.*,
  2014 WL 523166 (C.D. Cal. Feb. 6, 2014) ........................................................... 20

*Browning v. Amyris, Inc.*,
  2014 WL 1285175 (N.D. Cal. Mar. 24, 2014) ........................................................ 5

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
  856 F.3d 605 (9th Cir. 2017) ............................................................................... 15

*Destfino v. Reiswig*,
  630 F.3d 952 (9th Cir. 2011) ................................................................................. 3

*Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*,
  63 F.4th 747 (9th Cir. 2023) .......................................................................... 14, 15

*In re Hansen Nat. Corp. Sec. Litig.*,
  527 F. Supp. 2d 1142 (C.D. Cal. 2007) ............................................................... 12

*Hoang v. ContextLogic, Inc.*,
  2024 WL 4471316 (N.D. Cal. Aug. 22, 2024) ...................................................... 19

*Howard v. Everex Sys., Inc.*,
  228 F.3d 1057 (9th Cir. 2000) ............................................................................. 20

*Lomingkit v. Apollo Educ. Grp. Inc.*,
  275 F. Supp. 3d 1139 (D. Ariz. 2017) ................................................................. 13

*Loos v. Immersion Corp.*,
  762 F.3d 880 (9th Cir. 2014) ................................................................................. 3

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
  540 F.3d 1049 (9th Cir. 2008) ...................................................................... 14, 17

ii

Gibson, Dunn & Crutcher LLP

*Okla. Police Pension and Ret. Sys. v. LifeLock, Inc.*,
    780 F. App'x 480 (9th Cir. 2019) ............................................................... 18

*Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
    774 F.3d 598 (9th Cir. 2014) ...................................................................... 9

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
    759 F.3d 1051 (9th Cir. 2014) .......................................................... 8, 13, 14

*Prodanova v. H.C. Wainwright & Co., LLC*,
    993 F.3d 1097 (9th Cir. 2021) .............................................................. 17, 20

*Ryan v. FIGS, Inc.*,
    2024 WL 187001 (C.D. Cal. Jan. 17, 2024)............................................... 16

*S. Ferry LP, No. 2 v. Killinger*,
    542 F.3d 776 (9th Cir. 2008) ...................................................................... 18

*ScripsAmerica, Inc. v. Ironridge Glob. LLC*,
    119 F. Supp. 3d 1213 (C.D. Cal. 2015) ........................................................ 5

*In re Syntex Corp. Sec. Litig.*,
    95 F.3d 922 (9th Cir. 1996) .......................................................................... 7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)............................................................................. 11, 13

*Weiss v. Amkor Tech., Inc.*,
    527 F. Supp. 2d 938 (D. Ariz. 2007) .......................................................... 19

*Zhang v. Twitter Inc.*,
    2023 WL 5493823 (N.D. Cal. Aug. 23, 2023) ........................... 8, 11, 12, 16

**Statutes**

15 U.S.C. § 78u-4(b)(1)(B)............................................................................... 9

15 U.S.C. § 78u-5(c)(1) .................................................................................... 8

## I.    INTRODUCTION

The Opposition confirms that Plaintiffs' Second Amended Complaint (the "SAC") is nothing more than a thinly veiled motion for reconsideration of the Court's December 11, 2024 dismissal order. Dkt. 122 (tentative ruling adopted as final at Dkt. 123; hereinafter, "Order"). Despite having the benefit of the Court's discussion of the falsity and scienter deficiencies in the First Amended Complaint ("FAC"), Plaintiffs failed to meaningfully amend their allegations in the SAC. In their Opening Brief, the Tattooed Chef Defendants explained why the cosmetic changes made in the SAC fall short. *See* Dkt. 129-1 at 7–8, 12–13. In response, Plaintiffs filed an opposition brief that is *nearly identical* to the opposition brief filed in response to the Tattooed Chef Defendants' motion to dismiss the FAC. *Compare* Dkt. 114 (opposition to FAC), *with* Dkt. 137 (opposition to SAC; hereinafter, "Opp."). The opportunity to amend is not the equivalent of asking the Court for a redo. Plaintiffs have not "learned more" about their allegations, Order at 1, cannot meet the heightened pleading standards demanded under the PSLRA, and are wasting the parties' and the Court's resources by filing duplicative pleadings and briefs. This action should be dismissed, this time with prejudice.

The Court dismissed the FAC because Plaintiffs failed to allege falsity and scienter with the particularity required under the PSLRA. In the Opposition, Plaintiffs argue they "[f]ollow[ed] the Court's instructions" and amended the SAC by "specifying Defendants' false statements," "adding allegations of false statements," and "identifying statements from an additional Confidential Witness ('CW')." Opp. 1. But this argument overstates the extent of Plaintiffs' amendments to the SAC. Like the FAC, the SAC lacks specificity and any measure of particularity, and the "new" alleged false statement and CW allegations do not meet the PSLRA's heightened pleading standards and cannot save Plaintiffs' claims.

The minor amendments Plaintiffs made to the falsity allegations in the SAC are cosmetic and do not address the fundamental particularity and specificity deficiencies the Court identified. For example, the Opposition argues that Plaintiffs have addressed

the Court's concerns by adding references to paragraph numbers in paragraphs that purport to explain why statements are false or misleading. But adding a paragraph number does nothing to specify "[w]hat statements *in particular*" and what "sentence[s], or words, or representation[s]" in that paragraph Plaintiffs allege are false or misleading. Order at 4–5 (emphasis in original). Moreover, Plaintiffs challenge one new statement in the SAC. But Plaintiffs fail to respond to the arguments raised in Defendants' Opening Brief regarding this new challenged statement. *See* Dkt. 129-1 at 9–10. Indeed, the Opposition does not even mention this statement, much less rebut Defendants' arguments that it is inactionable as both a forward-looking statement and a statement of corporate optimism.

The Opposition does even less to explain how the SAC addresses Plaintiffs' "substantial scienter shortcomings." Order at 6. In direct contradiction of the Court's Order, *see id.* at 11–13, the SAC adds no new allegations supporting a cogent and compelling inference of scienter for Defendants Sarah Galletti, Edward Gelfand, Paula Ciaramitaro, and Marie Quintero-Johnson. The Opposition merely repeats the same deficient scienter arguments that the Court previously rejected with respect to these Defendants. *See id.* at 11–13. Plaintiffs' core product, stock ownership, and stock sale allegations are also identical to those in the FAC, and they similarly fail to allege a cogent and compelling inference of scienter with respect to a single Defendant.

The "new" scienter allegations in the SAC comprise a total of two paragraphs and include allegations from a new CW who purportedly "worked as a Data Analyst at the Company between November 2021 and December 2022." ¶168. This new CW, CW5, alleges that "during the Class Period … the Company had difficulties paying bills due to cash flow issues and lack of internal controls," and the "Company's financial reporting system encountered substantial data integrity issues," including "double-counting of sales due to a lack of diligence in accounting." ¶¶168–169. But, as with Plaintiffs' other CW allegations, the SAC fails to allege that CW5 had firsthand knowledge of what any Defendant knew and when, or that CW5's observations rendered

any challenged statement knowingly false when made.  Plaintiffs still have not alleged a cogent and compelling inference of scienter for any Defendant, and the SAC can be dismissed on that basis alone.

Finally, like the FAC, the SAC fails to plead loss causation.  Nothing in the Opposition explains how news of the restatement could possibly have "caused" Plaintiffs loss when the stock price increased when the restatement was initially disclosed.  Nor does the Opposition explain how the other alleged "corrective" disclosures revealed the "truth" about the alleged fraud involving slotting fees and in-store promotional expenses, when those disclosures do not mention slotting fees or promotional expenses.

At bottom, the Opposition only emphasizes that Plaintiffs did not meaningfully amend their allegations in the SAC because they cannot plead a viable claim for securities fraud.  In fact, Plaintiffs' entire theory of fraud is undermined by their own allegations.  The SAC hinges on allegations that the Defendants deceived investors regarding the technical accounting treatment used for slotting fees and in-store promotional expenses, claiming the "truth" was revealed when Tattooed Chef restated certain financial statements in 2022.  ¶¶47, 147.  While Tattooed Chef did restate its financial statements, the SAC itself alleges that the restatement involved the accounting treatment for two distinct transactions, one involving a multi-vendor mailer and the other involving a marketing services firm.  ¶146.  Neither the SAC nor the Opposition explain how Plaintiffs can allege a plausible theory that Defendants defrauded investors regarding the accounting treatment for slotting fees and other in-store promotions when the restatement did not involve these items.

The SAC and the Opposition confirm that Plaintiffs cannot address the fatal pleading deficiencies previously identified by the Court, and that no amount of repleading can cure their claims.  This action should be dismissed with prejudice.  *See Destfino v. Reiswig*, 630 F.3d 952, 959 (9th Cir. 2011) (affirming dismissal with prejudice where "the district court gave … detailed instructions as to what [plaintiffs]

Gibson, Dunn &
Crutcher LLP

3

needed to do … [and] Plaintiffs failed to comply with these orders"); *Loos v. Immersion Corp.*, 762 F.3d 880, 890–91 (9th Cir. 2014) (affirming dismissal with prejudice where plaintiff "essentially re-pled the same facts and legal theories in his amended complaint" despite the district court's "detailed explanation of why [plaintiff's] original theory of loss causation was deficient" (cleaned up)).

## II.   ARGUMENT

**A.   The Opposition Confirms Plaintiffs Have Not Pled an Actionable Misstatement or Omission**

**1.   Plaintiffs Have Not Alleged False Statements with Specificity and Particularity**

The Court dismissed the FAC in its entirety "because of specificity/particularity deficiencies." Order at 6. In dismissing the FAC, the Court provided Plaintiffs with a "clear roadmap" on how to plead their claims with the specificity and particularity required under Rule 9(b) and the PSLRA. *Id.* at 5. The Court encouraged Plaintiffs to "*specifically* list the sentence, or words or representation" "that is/are *specifically* asserted to be false/misleading, which of the particular defendants said or was otherwise responsible for … those statements, [and] *why* the statements where false *when made*." *Id.* (emphases in original). Plaintiffs declined to adopt the Court's recommendations in the SAC, and the Opposition confirms that Plaintiffs have failed to address these fundamental deficiencies.[1]

The Opposition claims that Plaintiffs "follow[ed] the Court's instructions" by

---

[1] In response to the Court's request that the parties "spend time (and some research-associated dollars)" on whether a court is required to analyze claims under Section 10(b) and Rule 10b-5 on a statement-by-statement basis, Order at 6, Defendants' Opening Brief explained that a statement-by-statement analysis is required to ensure that each alleged misstatement meets the pleading requirements. *See* Dkt. 129-1 at 7 (collecting cases). The Opposition fails to respond to Defendants' authority. And although Plaintiffs briefly address this issue in opposition to BDO's motion, the authority cited only confirms that the Court "is required to conduct a statement-by-statement analysis on a Rule 12(b)(6) motion." *See* Dkt. 135 at 10.

4

"specifying Defendants' false statements (*e.g.*, ¶47 (listing false statements); ¶136)." Opp. 1. But paragraph 47 of the SAC merely replaces "[t]hese statements" with "[t]he statements in paragraphs 38, 39, 45, and 46, made at the December 15, 2020 Investor Day presentation and incorporated in the Form 8-K." ¶47; *see also* ¶54 (replacing "[t]he statements in the press release" with "[t]he statements in the March 10, 2021 press release"); ¶¶59, 63, 100 (similar). These cosmetic additions still do not identify what specific statements in paragraphs 38, 39, 45, and 46 Plaintiffs allege to be false or misleading, much less why. Even with Plaintiffs' additions, the "generalized references" in the SAC leave the Court "at a loss as to which particular/specified statements are the targets of Plaintiffs' efforts" and "wondering 'What statements?' or 'What statements *in particular*?'" Order at 4 (emphasis in original).

Plaintiffs also argue that they adhered to the Court's directions by making additions to Paragraph 136. This argument fares no better. Paragraph 136 simply replaces "Individual Defendants" with "Sam Galletti, Dieckmann, Ciaramitaro, Gelfand, Quintero-Johnson, and Sarah Galletti." The Court (and Defendants) are aware of who the Individual Defendants in this action are, and this "amendment" does nothing to specify who made the allegedly false or misleading statement, nor what information he or she was aware of at the time that rendered the statement false or misleading when made, which is what the PSLRA demands. *Browning v. Amyris, Inc.*, 2014 WL 1285175, at *20 (N.D. Cal. Mar. 24, 2014) ("To successfully state a claim [under the PSLRA], the plaintiffs must plead with particularity what statements were made, when they were made, why they were false at the time they were made, and how the defendant who made the statement acted with scienter at the time the statements were made."). These additions do not demonstrate false or misleading statements with the particularity and specificity required under Rule 9(b) and the PSLRA. *See* Order at 5.

With respect to pleading with specificity and particularity, the Opposition repeats "many of the same arguments that the court previously found unavailing," and the SAC should be dismissed with prejudice for this reason alone. *See ScripsAmerica, Inc. v.*

Gibson, Dunn & Crutcher LLP

5

*Ironridge Glob. LLC*, 119 F. Supp. 3d 1213, 1237 (C.D. Cal. 2015).

### 2. The SAC Still Lacks Non-Conclusory Allegations Showing the Challenged Statements Were False or Misleading When Made

With the exception of one new alleged misstatement, the SAC challenges the same statements challenged in the FAC. These challenged statements are inactionable for the same reasons identified in Defendants' motion to dismiss the FAC, *see* Dkt. 129-1 at 9–11, and nothing in the SAC or the Opposition alters this conclusion.

**Statements About Marketing Promotion and Revenue Growth.** Plaintiffs claim that "Defendants made statements during an Investor Day Presentation that [Tattooed Chef] had achieved 645% growth with 'no spending on marketing promotion,'" and that these statements were false and misleading because they failed to disclose that Tattooed Chef's growth strategy "was premised on paying significant slotting fees and in-store promotion fees to get its products into the frozen food section of grocery stores, and that those expenses were required by GAAP to be booked as reductions to revenue and thus would decrease rather than increase the growth rate." Opp. 3–4 (citing ¶¶46–47). There are at least two issues with this allegation that neither the SAC, nor the Opposition, address.

First, the SAC lacks a single factual allegation indicating that Defendants *ever* mischaracterized slotting fees or in-store promotion fees, much less that they intentionally did so.[2]

Second, Plaintiffs mischaracterize statements about the Company's growth strategy.[3] For example, Plaintiffs claim that "Defendants made statements during an

---

[2] The Restatement concerned incorrectly recorded expenses related to two discrete transactions: "a multi-vendor mailer program with a large customer" and "advertising placement by a marketing services firm." ¶146. The Restatement did not address Tattooed Chef's classification of "slotting fees and in-store promotion fees" writ large, and no corrective disclosure or CW allegation indicates otherwise.

[3] Plaintiffs also mischaracterize the Investor Day presentation's impact on Tattooed Chef's stock price. Plaintiffs argue that Tattooed Chef's stock price rose dramatically after the Investor Day presentation on December 15, 2020. Opp. 6. They then point to

6

Gibson, Dunn & Crutcher LLP

Investor Day presentation that TCI had achieved 645% growth with 'no spending on marketing promotion,'" and that these statements were "false because the undisclosed 'slotting fees' were marketing expenses, which the Individual Defendants had falsely stated were zero." Opp. 3–4, 7 (citing ¶¶46–47). The Investor Day Presentation makes clear that this statement refers to the lack of spending on advertising costs like "media outreach" and "media partnerships," not the lack of spending on slotting fees. *See* ¶48 (describing "Tattooed Chef's First Marketing + Advertising Campaign – 2021," including "a 360-brand ecosystem of content, social, and advertising" through channels of "public relations," "investor relations," and "marketing"). Plaintiffs cannot adequately allege a false or misleading statement by focusing on a single sentence and ignoring the larger context of the statement. *See, e.g.*, *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 929 (9th Cir. 1996) (requiring evaluation of the "statement in full and in context at the time it was made").

Regardless, the SAC, like the FAC, does not allege facts indicating that Tattooed Chef did not grow its revenue and establish a successful branded product in 2020 without spending on marketing or promotion. The Opposition argues that Tattooed Chef's restatement of its financial statements for 2021 somehow demonstrates that these statements regarding growth in 2020 were false or misleading. Opp. 7. That argument misses the mark. Not only did the restatement of Tattooed Chef's 2021 financial statements have nothing to do with slotting fees—the restatement concerned expenses related to "a multi-vendor mailer program with a large customer" and "advertising placement by a marketing services firm," ¶146—that restatement did not affect Tattooed Chef's 2020 growth statistics or financial results, as alleged in the SAC itself. *See* ¶146 (announcing restatement of financial statements "for the quarters ended March 31, 2021,

the stock price on December 2, 2020, and compare that to the stock price after the presentation. Plaintiffs ignore that the stock price was steadily increasing from December 2, 2020 to December 14, 2020, and, in fact, dropped to $19.35 on December 15, 2020 from a closing price of $20.45 on December 14, 2020, the day before the Investor Day presentation. *See* Ex. 14.

Gibson, Dunn & Crutcher LLP

7

June 30, 2021, and September 30, 2021" and "for the year ended December 31, 2021").

The remaining statements about revenue growth, earnings guidance, and business plans, including the only new statement challenged in the SAC, ¶¶62, 99, are inactionable because they are forward-looking and accompanied by meaningful cautionary statements. These challenged statements are, therefore, protected under the PSLRA's safe harbor provision. *See* 15 U.S.C. § 78u-5(c)(1). Plaintiffs, for example, appear to challenge a slide in the Investor Day presentation that outlined Tattooed Chef's revenue guidance for 2021. ¶45. It is well-established that "revenue projections … are forward-looking on their face." *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1058 (9th Cir. 2014); *see also Barry v. Colony NorthStar, Inc.*, 2019 WL 13237710, at *11 (C.D. Cal. Jan. 24, 2019) (Wu, J.) (forward-looking statement is "any statement regarding (1) financial projections, (2) plans and objectives of management for future operations, (3) future economic performance, or (4) the assumptions underlying or related to any of these issues"). And the Investor Day presentation explicitly warned investors that these statements were "forward looking," "are not guarantees of future performance, conditions or results," and "involve a number of known and unknown risks, uncertainties, assumptions and other factors, many of which are outside Tattooed Chef's control, that could cause actual results or outcomes to differ materially from those discussed in the forward-looking statements." Dkt. 129-9 (Ex. 7 to Defendants' Opening Brief) at 5.

The conclusory footnote in the Opposition that certain unspecified statements "about TCI's current plan to maintain and increase its growth rate were not 'forward-looking statements' and thus not protected by the PSLRA's safe-harbor provision," Opp. 5 n.4, fails. This footnote fails to meaningfully address Defendants' arguments that these arguments are, in fact, forward-looking, warranting dismissal of these statements for that reason alone. *See Zhang v. Twitter Inc.*, 2023 WL 5493823, at *7 (N.D. Cal. Aug. 23, 2023) ("Where a party fails to address arguments against a claim raised in a motion to dismiss, the claims are abandoned and dismissal is appropriate."). Moreover, the

Gibson, Dunn & Crutcher LLP

8

Opposition does not specify *which* challenged statements this argument even applies to or which statements discuss Tattooed Chef's "current," as opposed to future, plans.

**Statements About Internal Controls.** The Opposition argues that Tattooed Chef's "2021 Annual Report was also false and misleading because it concealed additional known, then existing material deficiencies in [the Company's] internal controls." Opp. 13 (emphasis omitted). At the outset, this argument fails because Plaintiffs fail to identify a single specific statement in the 2021 Report that was rendered false or misleading on this basis. *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 604 (9th Cir. 2014) ("The PSLRA also requires that 'the complaint shall specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading.'" (quoting 15 U.S.C. § 78u-4(b)(1)(B))). Like the FAC, the SAC fails to allege a single particularized fact showing that there *were* known material deficiencies in the Company's internal controls that *weren't already* disclosed in the Company's 2021 Annual Report. As Defendants have argued previously, the 2021 Annual Report *did* disclose a number of internal control weaknesses, including "[i]nsufficient number of qualified resources and inadequate oversight and accountability over the performance of controls" and deficient "[c]ontrols over the tracking and accounting of promotional allowances granted to customers, including applicable adjustments to revenue for related variable consideration." *See* Dkt. 129-4 (Ex. 2 to Defendants' Opening Brief) at 42–43. Neither the SAC, nor the Opposition, indicates that there were material deficiencies beyond the deficiencies that investors were aptly made aware of.

Plaintiffs' attempt to allege falsity through allegations from CW1 and CW2 falls short. The CW allegations fail to identify (1) what controls purportedly were inadequate to ensure that slotting fees and promotional allowances were classified pursuant to GAAP, and (2) what management purportedly did to "override" such controls. *See* Opp. 13–14. Indeed, Plaintiffs' CW allegations say nothing at all about the Company's internal controls with respect to the classification of slotting fees, and nothing at all about

what Defendants knew that rendered their statements regarding internal controls false *when they were made*. *Id.* Moreover, Plaintiffs argue that all of the challenged statements regarding internal control weaknesses "referred or were related to specific metrics of the Company's financial results." *Id.* at 15. That is incorrect. Each of the challenged internal control statements appeared in a section of the SEC filings concerning weaknesses in internal controls generally, and were not tied to any specific metrics or financial statements, much less to the financial statements that ultimately had to be restated. *See, e.g.*, Dkt. 129-3 (Ex. 1 to Defendants' Opening Brief) at 38; Dkt. 129-4 at 42–43.

The challenged statements regarding internal controls should be dismissed.

**Statements About Line of Credit.** Statements about the Company's line of credit, ¶¶61, 122, 133, and 134, are not false and misleading. Paragraphs 61 and 133 are not alleged to be false at all, and Plaintiffs admit that the statements in paragraphs 122 and 134 are forward-looking. Opp. 16. The Opposition argues that some of these statements were not accompanied by cautionary language, *id.*, but that is incorrect. Each of the challenged statements concerning Tattooed Chef's line of credit was accompanied by meaningful cautionary language. *See* Dkt. 129-3 at 1, 15 (meaningful cautionary language accompanying ¶61); Dkt. 129-4 at 1, 17 (same for ¶122); Dkt. 129-15 (Ex. 13 to Defendants' Opening Brief) at 28, 37 (same for ¶¶133–134). For example, the statement challenged in paragraph 122 was accompanied by warnings that the Company "may require additional financing to achieve [its] goals including acquiring businesses, product lines, and/or facilities, and a failure to obtain this necessary capital when needed on acceptable terms, or at all, may negatively impact [its] product manufacturing and development, and other operations." Dkt. 129-4 at 17.

Plaintiffs' bare assertion that "the SAC alleges that the Individual Defendants knew the statements were false when made," Opp. 17 (citing ¶123), is belied by the SAC itself. The SAC fails to allege any particularized facts showing that Defendants knew statements regarding the line of credit were false or misleading when made. ¶¶122, 134.

To support this argument, Plaintiffs rely on allegations from CW2 and CW3 that the Company was "not paying [certain of] its suppliers and bills on time." ¶123. These allegations do not establish falsity because neither CW2 nor CW3 claim to have any knowledge about the Company's line of credit, nor whether the Company supposedly not paying suppliers and bills on time had anything to do with or any impact on that line of credit. Nor do Plaintiffs point to any allegations in the SAC indicating when Defendants supposedly obtained knowledge regarding not paying certain bills or suppliers, or how it contradicted any challenged statement regarding the Company's line of credit when that statement was made.

These challenged statements regarding Tattooed Chef's line of credit should be dismissed.

## B.    The Opposition Confirms Plaintiffs' Failure to Plead Scienter

Plaintiffs' failure to plead scienter "as to each individual defendant" is an independent reason to dismiss the SAC. Order at 7. The Court identified "fairly substantial scienter shortcomings" that Plaintiffs were required to address in an amended complaint. *Id.* at 6. Like the falsity deficiencies, the SAC did not remedy those shortcomings. Indeed, with the exception of allegations from a new confidential witness, Plaintiffs failed to amend their deficient scienter allegations at all.[4] Plaintiffs' recycled scienter allegations do not come close to pleading the "cogent and compelling" inference of scienter required under the PSLRA. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007).

---

[4] Plaintiffs do not address many of the arguments Defendants made regarding scienter. The Opposition, for example, does not contest Defendants' arguments concerning a more compelling non-fraudulent inference, motive and opportunity, and holdback shares. *Compare* Dkt. 129-1 at 17–19, *with* Opp. 17–22. By failing to address these arguments, Plaintiffs effectively concede that these theories fail to establish scienter. *See Zhang*, 2023 WL 5493823, at *7.

### 1. Plaintiffs Do Not Allege Scienter for Sarah Galletti, Ciaramitaro, Gelfand, and Quintero-Johnson

The Court held that Plaintiffs' FAC failed to plead *any* particularized facts supporting a strong inference of scienter as to Defendants Sarah Galletti, Ciaramitaro, Gelfand, and Quintero-Johnson. Order at 11–13. The SAC adds no meaningful scienter allegations for these Defendants, and the Opposition does not respond to Defendants' arguments that these defendants should be dismissed.[5] "Where a party fails to address arguments against a claim raised in a motion to dismiss, the claims are abandoned and dismissal is appropriate." *Zhang*, 2023 WL 5493823, at *7.

### 2. Confidential Witness Allegations Do Not Establish Scienter

Plaintiffs' primary scienter allegations come in the form of allegations from a new, low-level confidential witnesses. In the Opposition, Plaintiffs argue that their CW allegations are "more than sufficient because the SAC specifically alleges the CW's roles, to whom they reported, and why they were in a position to know the facts about the fraud." Opp. 18. But *none* of the CWs, including new CW5, are alleged to have had any personal knowledge regarding what the Defendants knew or did not know at any time, including when the alleged misstatements were made. *Bao v. SolarCity Corp.*, 2016 WL 4192177, at *9 (N.D. Cal. Aug. 9, 2016) (finding no inference of scienter where the CW lacked "personal knowledge of [defendants'] state of mind").

In their Opposition, Plaintiffs emphasize the single new scienter allegation in the SAC—the addition of allegations from CW5, a "Data Analyst" who purportedly "reported to Dieckmann and identified data-integrity and internal-control issues." Opp. 20. But as explained in Defendants' Opening Brief, the allegations from CW5 are insufficient to plead scienter as to Sam Galletti or Dieckmann because, as with all of

---

[5] For example, the Opposition does not address Defendants' argument that the mere signing of SEC filings does not give rise to a strong inference of scienter as a matter of law. *See* Dkt. 129-1 at 11–12 (citing *In re Hansen Nat. Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1159 (C.D. Cal. 2007)).

Gibson, Dunn & Crutcher LLP

12

Plaintiffs' CW allegations, the SAC fails to plead particularized facts demonstrating that CW5 had "firsthand knowledge regarding what the individual defendants knew or did not know" when the alleged misstatements were made. *Intuitive Surgical*, 759 F.3d at 1063. For example, Plaintiffs allege that CW5 "reported the data integrity issues to Dieckmann and others, by email, with copies to Defendant Sam Galletti," ¶169, but fail to show "proper temporal proximity between the witness observations and Defendants' purportedly false or misleading statements." *Lomingkit v. Apollo Educ. Grp. Inc.*, 275 F. Supp. 3d 1139, 1155 (D. Ariz. 2017). Even if CW5 reported these issues to Dieckmann and Sam Galletti during the alleged class period, Plaintiffs do not demonstrate how CW5's allegations show that any challenged statement was false or misleading when made. *See* ¶¶168–169.

Plaintiffs' conclusory assertion that a "finding of their knowledge is bolstered by the statements of CW#5" does not support a strong inference of scienter as to any Defendant. Opp. 20. Indeed, this is a perfect example of Plaintiffs' failure to address the particularity deficiencies identified by the Court—it is entirely unclear who "their" refers to. The preceding sentence refers to "Defendants Cargile, Dieckmann, Gelfand, Ciaramitaro, and Quintero-Johnson," but the SAC claims that CW5 only reported to Dieckmann.

The Opposition does little to show how Plaintiffs' other CW allegations, which remain unchanged from the FAC, support a "cogent and compelling" inference of scienter for any Defendant.[6] *Tellabs*, 551 U.S. at 324.

Plaintiffs argue that **CW1** "reported directly" to Dieckmann and "was the person who informed the Audit Committee when it was determined that a restatement was necessary." Opp. 19–20. But neither the SAC nor the Opposition address the Court's concern regarding CW1's allegations: Plaintiffs still fail to allege "*when* that report was

---

[6] The Opposition does not even mention CW4, much less address Defendants' arguments regarding the deficiency of CW4's allegations. Dkt. 129-1 at 14. Any arguments that CW4's allegations support a finding of scienter are therefore waived.

13

Gibson, Dunn & Crutcher LLP

made" or "what alleged misstatements or omissions … occurred at that same time or thereafter" by Dieckmann. Order at 12; *see* Dkt. 129-1 at 13.

Plaintiffs argue that **CW2** "report[ed] directly to Controller Mary Chesley, who in turn reported directly to" Dieckmann and "recalled once receiving only approximately $50,000 from KeHE for invoices that were worth approximately $1 million before discounts were applied." Opp. 20. But the Opposition fails to point to any allegations in the SAC that (i) indicate whether CW2 believed that discrepancy violated any internal controls, (ii) demonstrate that any statement regarding internal controls was false or misleading as a result of CW2's allegations, or (iii) indicate whether CW2 ever raised this issue to Dieckmann (or any other Defendant). *See* Dkt. 129-1 at 13–14.

Plaintiffs argue that **CW3** alleged the Company "was routinely not paying its bills and creditors" and "had direct discussions of these payment problems" with Sam Galletti. Opp. 19. But the Opposition fails to point to allegations in the SAC that explain when those supposed discussions took place or whether Sam Galletti (or any other Defendant) knew that later statements in SEC filings concerning liquidity were false or misleading as a result. Dkt. 129-1 at 14.

In sum, Plaintiffs' CW allegations do not contain the necessary particularized facts regarding the "specific information conveyed to management and related to the [alleged] fraud," and do not support a strong inference of scienter as to any Defendant. *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1068 (9th Cir. 2008); *see also Intuitive Surgical, Inc.*, 759 F.3d at 1063. Plaintiffs' citation to *Glazer Capital Management, L.P. v. Forescout Technologies, Inc.*, 63 F.4th 747, 771 (9th Cir. 2023), does not alter this conclusion. Plaintiffs' contention that they need only provide "a basis for each CW's knowledge about the specific statements he made," Opp. 18, rests on a misreading of *Glazer Capital*. *Glazer Capital* did not relieve plaintiffs of their burden of demonstrating that a CW has first-hand knowledge regarding what defendants knew or did not know. *Glazer Capital*, instead, stands for the proposition that a CW does not need to possess "inside knowledge about corporate-level trends" to show adequate

personal knowledge "sufficient to plead *falsity*."  63 F.4th at 771 (emphasis added).  Whether a CW's personal knowledge is sufficient to plead falsity is entirely separate from the requirement that a CW must have personal knowledge of a defendant's state of mind to adequately allege *scienter*.[7]  *See* Dkt. 129-1 at 12–14.

### 3.       Sam Galletti's Stock Sales Do Not Establish Scienter

Plaintiffs' stock sales allegations do not give rise to a strong inference of scienter as to Sam Galletti.[8]  "[S]tock sales by corporate insiders are suspicious only when they are dramatically out of line with prior trading practices at times calculated to maximize the personal benefit from undisclosed inside information."  *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 621 (9th Cir. 2017) (cleaned up).  The Opposition repeats the argument that Sam Galletti's disposition of "1.3 million shares on April 15, 2021 at inflated prices" indicates scienter because the Company's "written policies regarding insider sales prohibited [him] from selling stock outside of a Rule 10b5-1 plan" and the sales were "unusual in timing and amount."  Opp. 21.  As explained in Defendants' Opening Brief, each of these arguments fail.

*First*, the reference to the Company's insider trading policy is a red herring.  Plaintiffs do not allege that the insider trading policy referenced in the 2022 proxy

---

[7] Plaintiffs' CW allegations also fail to allege falsity because none of the CWs allege facts that, if true, show the challenged statements were false when made.  For example, the Opposition claims that allegations from CW1 and CW2 "demonstrate … the falsity of Defendants' statements."  Opp. 14–15.  But Plaintiffs fail to specify which statements are rendered false or misleading by these allegations.  Neither CW1 nor CW2 says anything about the Company's internal controls with respect to the classification of slotting fees.  *See* Opp. 13–15 (citing ¶¶73–75, 77–80).  Similarly, Plaintiffs cannot claim to have "adequately alleged the falsity of the statements about the line of credit" based on allegations from CW2 and CW3 about the Company "not paying its suppliers and other bills on time."  *See* Opp. 17 (citing ¶123).  Neither CW2 nor CW3 claim to have knowledge of the line of credit, nor whether the Company not paying bills on time had any impact on that line of credit.

[8] As the Court held, Plaintiffs' cursory reference to Sarah Galletti's motive based on her combined stock ownership with Sam Galletti, Opp. 22, is improper and unsupported by law.  Order at 12–13; Dkt. 129-1 at 12.

15

Gibson, Dunn & Crutcher LLP

statement was in effect on April 15, 2021, when the stock sales were made. ¶81 & n.17. And even if Plaintiffs had adequately pled that the insider trading policy referenced in the 2022 proxy statement was in effect when the stock sales were made, that does not show that the stock sales violated that policy, which only prohibits trading of the Company's stock "while in possession of material nonpublic information." *Id.* There are no particularized allegations in the SAC that Sam Galletti was in possession of any material, non-public information at the time of the stock sales in April 2021. *See id.*

*Second*, this stock sale was not "unusual" or "suspicious" because it was made pursuant to a pre-existing contractual arrangement—a contract reported in the relevant SEC Form 4—and represented only a small percentage of Sam Galletti's total holdings. Dkt. 129-1 at 15–16 (citing Ex. 6). And, as Plaintiffs themselves allege, Sam Galletti disposed of his shares at $10 per share, which was almost 50% below the closing price of $18.14 that day. *Id.* (citing Exs. 4, 6). Nor is it unusual or suspicious that Sam Galletti had not sold any stock prior to April 15, 2021. Tattooed Chef went public on October 15, 2020, and Sam Galletti, like other company insiders, was subject to a six-month lock-up period. *Id.* (citing Ex. 5 at F-11); *see Ryan v. FIGS, Inc.*, 2024 WL 187001, at *12 (C.D. Cal. Jan. 17, 2024) (stock sales by corporate insiders "following a lack of prior trading history [are] not suspicious or 'dramatically out of line' when individual defendants are subject to lock-up agreements").

The Opposition does not address any of these arguments. Plaintiffs thus concede that their stock sale allegations fail to establish a strong inference of scienter as to Sam Galletti. *See Zhang*, 2023 WL 5493823, at *7.

### 4. The Core Product Theory Does Not Apply Here

Finally, Plaintiffs cannot plead scienter through the core product theory. In the Opposition, Plaintiffs rely heavily on the same deficient allegations and arguments that this Court explicitly rejected—namely, Plaintiffs' theory that because Tattooed Chef "only had one business segment and line of business," "*everyone* would have been aware of, or recklessly disregarded, *everything* that related to that business segment/line of

business, even the application of a particular accounting rule to it." Order at 10 (emphases in original). In response to the Order, Plaintiffs add just one conclusory allegation—that "Defendants' scienter is established pursuant to the core product doctrine" because the "Company's accounting operations were so small." ¶170. This addition does nothing to raise a cogent and compelling inference of scienter here. As the Court made clear in the Order, the core product doctrine is not "that malleable/amorphous, even in connection with a small company," and "accounting and related tax determinations are not part of a company's core operations." Order at 10–11.

Plaintiffs' other arguments, copied directly from their prior opposition brief, fail to plead scienter under the core product theory. *First*, Plaintiffs do not plead any particularized facts showing that any of the Defendants had "actual access" to information that contradicted any of the challenged statements. *Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1111 (9th Cir. 2021); *see also Metzler*, 540 F.3d at 1068 ("[C]orporate management's general awareness of the day-to-day workings of the company's business does not establish scienter—at least absent some additional allegation of specific information conveyed to management and related to the fraud."). Plaintiffs' core theory of fraud is that Defendants *knew* the Company was incorrectly accounting for certain marketing expenses. But Plaintiffs do not allege any facts indicating the accounting treatment that was initially used was obviously incorrect, nor that the proper accounting treatment was so obvious that it must have been known to each Defendant. Plaintiffs' theory simply is not plausible, particularly because the Company's outside auditors initially approved of Defendants' accounting treatment.

*Second*, the core product theory does not apply where, as here, none of the challenged statements concern the Company's "core product," and the impact of the corrected statements was minimal. As alleged in the SAC, the Restatement involved two discrete categories of expenses—"expenses related to a multi-vendor mailer program with a large customer" and "expenses for advertising placement by a marketing

Gibson, Dunn & Crutcher LLP

17

service firm." ¶146.  When the Company restated these figures, the impact was minimal. *See* Dkt. 129-5 (Ex. 3 to Defendants' Opening Brief) at F-12, F-14 (restated financial statements reduced revenues by approximately $5 million and decreased operating expenses by the same amount, resulting in essentially the same net income for 2021).  In the cases cited in the Opposition, this was not the case, which renders those cases inapposite to the Court's analysis here.  *See In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 706 (9th Cir. 2021) (applying core operations theory where issues subject to alleged misstatement were "highly material" to operations); *Okla. Police Pension and Ret. Sys. v. LifeLock, Inc.*, 780 F. App'x 480, 484–85 (9th Cir. 2019) (similar); *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 987–88 (9th Cir. 2008) (scienter inferred where the issues subject to alleged misstatement would have a "devastating effect" on revenue); *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 785 (9th Cir. 2008) (holding core operations inference can be made from the "*importance* of the corporate information about which management made false or misleading statements" and the "management's role in a corporate structure" (emphasis added)).

## C.    Plaintiffs Fail to Plead Loss Causation

Nothing in the Opposition effectively rebuts the fact that Plaintiffs fail to adequately plead loss causation.

*First*, as explained in Defendants' Opening Brief, Plaintiffs fail to plead that any of the purported corrective disclosures revealed the supposed "truth" about any alleged misstatement that caused a stock price decline.  Dkt. 129-1 at 19–20.  Only one of the four alleged corrective disclosures—the October 12, 2022 restatement announcement— "announced the need to restate financial results based on improper recognition of revenue, which is the basis of the fraud alleged in the complaint," which Plaintiffs concede they need to show to plead loss causation.  Opp. 24.  But Plaintiffs cannot honestly contest that Tattooed Chef's stock price went up following this news, from a close of $4.49 on October 12 to a close of $4.62 the following day.  Dkt. 129-6 (Ex. 4 to Defendants' Opening Brief) at 1.  There can be no loss causation when "the stock

price actually increased" after "a corrective disclosure was issued." *Weiss v. Amkor Tech., Inc.*, 527 F. Supp. 2d 938, 947 (D. Ariz. 2007); *cf. Hoang v. ContextLogic, Inc.*, 2024 WL 4471316, at *8 (N.D. Cal. Aug. 22, 2024) ("Defendants have shown that the stock price went up following the March 8, 2021 news …. If the stock price does not go down, there is no loss.").

Faced with the insurmountable truth that Plaintiffs' only true "corrective disclosure" cannot establish loss causation, Plaintiffs continue to advance a novel theory of loss causation based on the stock's opening price—*i.e.*, relying on the stock's after-hours movement to plead loss causation. Opp. 24 (citing ¶149). After two complaints and two rounds of motion to dismiss briefing, Plaintiffs have yet to identify any case law in support of their unprecedented loss causation theory. Indeed, courts in the Ninth Circuit have rejected attempts to plead loss causation based on cherry-picked timeframes during after-hours trading.[9] *See, e.g.*, *Hoang*, 2024 WL 4471316, at *9 ("Plaintiffs allege loss based on a cherry-picked two-hour timeframe that conveniently follows that day's after-market high. No persuasive authority supports using that brief period to measure loss.").

*Second*, Plaintiffs fail to adequately allege that any of the three remaining disclosures in November 2022 revealed the "truth" about Tattooed Chef's purportedly fraudulent accounting practices. *See* Dkt. 129-1 at 19–20. Plaintiffs argue that each one of the November disclosures "provided additional incremental information about TCI's accounting restatement," but fail to identify what "additional incremental information" they claim was revealed. Opp. 24–25. As explained in Defendants' Opening Brief, these disclosures had nothing to do with the restatement announced in October 2022, and "while these announcements may have had a negative effect on [Tattooed Chef's] stock, they did not have a corrective effect on any prior misrepresentation" and therefore

---

[9] This theory of loss causation would eviscerate Plaintiffs' ability to rely on the fraud-on-the-market presumption to prove reliance, which depends on an efficient market. *See Basic Inc. v. Levinson*, 485 U.S. 224, 248–49 (1988).

REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS SAC
CASE NO. 2:22-CV-09311-GW-E

Gibson, Dunn & Crutcher LLP

cannot "constitute a corrective disclosure for purposes of pleading loss causation under Section 10(b)." *Brown v. Ambow Educ. Holding Ltd.*, 2014 WL 523166, at \*7 (C.D. Cal. Feb. 6, 2014).

### D.    The Complaint Fails to State a Claim Under Section 20(a)

Plaintiffs' inability to plead a primary violation of Section 10(b) or Rule 10b-5 by any defendant means that their allegations under Section 20(a) "necessarily fail." *Prodanova*, 993 F.3d at 1113.    Plaintiffs claim that "the Individual Defendants controlled TCI and its financial reporting," Opp. 25, but the paragraphs they cite fail to show that any of the Individual Defendants "had the requisite actual authority over the preparation of the financial statements necessary to find [them] a control person." *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1067 (9th Cir. 2000) ("Plaintiff simply points to [defendant's] general level of control but provides no specific indication that [defendant] supervised or had any responsibility for the preparation of the financial statements."); *see* ¶¶19, 34, 108, 191, 201.  Merely noting that the Individual Defendants "reviewed and approved" the financial statements as members of the Board, without showing that the Individual Defendants were "active in the day-to-day affairs" of the Company or "exercised any specific control over the preparation and release of the financial statements" "does not rise to a level of supervision or participation sufficient for a § 20(a) violation." *Howard*, 228 F.3d at 1067 n.13.

### III.    CONCLUSION

Despite the FAC's shortcomings, the Court gave Plaintiffs an opportunity to amend, with clear instructions on how to proceed.  Instead of heeding those instructions, Plaintiffs filed a largely identical SAC and a virtual copy-and-paste Opposition.  It is clear Plaintiffs "have not learned more about the alleged issues," Order at 1, and cannot plead a viable claim.  Plaintiffs are asking the Court to reconsider issues that it already decided, wasting both the parties' and the Court's time and resources.  This action should be dismissed, this time with prejudice.

DATED:  May 12, 2025

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Craig Varnen*
Craig Varnen
Allison Kostecka
Brian Yang

*Attorneys for Defendants SALVATORE GALLETTI, STEPHANIE DIECKMANN, EDWARD GELFAND, PAULA CIARAMITARO, MARIE QUINTERO-JOHNSON, and SARAH GALLETTI*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Defendants Salvatore Galletti, Stephanie Dieckmann, Edward Gelfand, Paula Ciaramitaro, Marie Quintero-Johnson, and Sarah Galletti, certifies that this brief contains 6,929 words, which complies with the word limit of L.R. 11-6.1.

Dated:  May 12, 2025               */s/ Craig Varnen*
                                              Craig Varnen

Gibson, Dunn &
Crutcher LLP

22