MARC J. SCHNEIDER, State Bar No. 214609
  mschneider@stradlinglaw.com
STEPHEN L. RAM, State Bar No. 240769
  sram@stradlinglaw.com
ANDREW B. MASON, State Bar No. 317944
  amason@stradlinglaw.com
MICHAEL B. MOSHER, State Bar No. 336160
  mmosher@stradlinglaw.com
STRADLING YOCCA CARLSON & RAUTH LLP
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660-6422
Telephone:  949 725 4000
Facsimile:  949 725 4100

Attorneys for Defendant
Charles F. Cargile

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| DINKO MIHAYLOV; JOHN HANCOCK; SHASHANK BAGUL; JOHN SPADARO; MUSTAPHA HOTAIT; and MARCO STARACE; individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>TATTOOED CHEF, INC.; SALVATORE GALLETTI; STEPHANIE DIECKMANN; CHARLES F. CARGILE; EDWARD GELFAND; PAULA CIARAMITARO; MARIE QUINTERO-JOHNSON; SARAH GALLETTI; and BDO USA, LLP,<br><br>Defendants. | CASE NO. 2:22-cv-9311-GW-E<br><br>Assigned to: Hon. Judge George H. Wu<br><br>**DEFENDANT CHARLES CARGILE'S REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT [DKT 124]**<br><br>Hearing:<br>Date:    June 9, 2025<br>Time:    8:30 a.m.<br>Ctrm.:   Courtroom 9D, 9th Floor<br>         350 West 1st Street, Los<br>         Angeles, CA  90012<br>Judge:   George H. Wu<br><br>Complaint Filed:  December 23, 2022<br>FAC Filed:        June 5, 2023<br>SAC Filed:        February 3, 2025 |

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT
4922-3735-8135v12/107730-0001

TABLE OF CONTENTS

I.    INTRODUCTION ......................................................................................... 6

II.   ARGUMENT ............................................................................................... 8

      A.   The SAC Still Fails To Allege Any Actionable
           Misrepresentation By Cargile. ....................................................... 8

           1.   The December 2020 Investor Day Presentation Statements
                Regarding Historic Revenues Are Not Actionable. .............. 10

                a.   Plaintiffs Concede The Accuracy Of The Company's
                     Statement That Its Historic Revenues Were Achieved
                     Without Marketing Promotion Expenditures. ............. 10

                b.   The Company Disclosed That It Would Incur Future
                     Marketing Promotion Expenses In The Investor Day
                     Presentation. ............................................................. 10

                c.   Plaintiffs' Argument That The December 2020
                     Investor Day Presentation Gives Investors A False
                     Impression About A Future Event Fails For
                     Multiple Reasons. ....................................................... 12

           2.   The Challenged Revenue Projections From The
                December 2020 Investor Day Presentation Are
                Protected By The PSLRA Safe Harbor. ............................... 15

           3.   The Financial Statements In The 2020 Annual Report
                Were Not Restated. .......................................................... 17

           4.   The SAC Alleges No Facts Supporting The Falsity
                Of The 2020 Annual Report's Statements Regarding
                Internal Controls. ............................................................ 18

           5.   Cargile Is Not Responsible For Statements Made
                After His Resignation. ...................................................... 19

      B.   The SAC Fails To Meet Its Burden Of Alleging Cargile
           Had Scienter To Commit Securities Fraud. .................................. 20

           1.   The Court Previously Held That Cargile Resigned In
                A "Stand on Principles," Which Created A Compelling
                Inference That Cargile Did Not Have Scienter To
                Commit Securities Fraud. ................................................. 20

           2.   Plaintiffs Plead No Facts Supporting That Cargile
                Had Scienter To Commit Securities Fraud .......................... 22

                a.   Plaintiffs Do Not Plead Factual Allegations
                     Supporting That Cargile Even Was Aware Of The
                     Alleged Accounting Scheme. ...................................... 22

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

TABLE OF CONTENTS

4922-3735-8135v12/107730-0001

b. Plaintiffs Have Not Added Any Allegations To Change This Court's Prior Conclusion That The Core Product Theory Is Inapplicable. .................. 23

C. The Section 20(a) Claim Fails. ........................................................ 24

D. Dismissal Should Be With Prejudice. ............................................. 25

III. CONCLUSION ......................................................................................... 25

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

TABLE OF CONTENTS
4922-3735-8135v12/107730-0001

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Austin v. Univ. of Or.*,
   925 F.3d 1133 (9th Cir. 2019)................................................................................20

*Caterpillar, Inc. v. Williams*,
   482 U.S. 386 (1987) ...............................................................................................19

*In re CIT Grp., Inc.*,
   349 F. Supp. 2d 685 (S.D.N.Y. 2004)....................................................................13

*Cullen v. Ryvyl Inc.*,
   2024 U.S. Dist. LEXIS 36420 (S.D. Cal. Mar. 1, 2024)........................................12

*In re Cutera Sec. Litig.*,
   610 F.3d 1103 (9th Cir. 2010)................................................................................14

*In re CV Therapeutics, Inc. Sec. Litig.*,
   2004 U.S. Dist. LEXIS 17419 (N.D. Cal. Aug. 5, 2004)......................................15

*In re Facebook, Inc. Sec. Litig*,
   87 F.4th 934 (9th Cir. 2023)..............................................................................11, 12

*In re Finjan Holdings, Inc. Sec. Litig.*,
   58 F.4th 1048 (9th Cir. 2023)............................................................................11, 15

*First Call Int'l, Inc. v. S&B Glob., Inc.*,
   2024 U.S. Dist. LEXIS 119437 (C. D. Cal. July 5, 2024) ....................................19

*Gaxiola v. City of L.A.*,
   2011 U.S. Dist. LEXIS 112958 (C.D. Cal. Aug. 30, 2011) ..................................20

*Golub v. Gigamon Inc.*,
   372 F. Supp. 3d 1033 (N.D. Cal. 2019) .................................................................15

*Gospel Missions of Am. v. City of L.A.*,
   328 F.3d 548 (9th Cir. 2003)..................................................................................20

*In re InterMune, Inc. Sec. Litig.*,
   2004 U.S. Dist. LEXIS 15382 (N.D. Cal. July 30, 2004) .....................................15

TABLE OF AUTHORITIES

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

4922-3735-8135v12/107730-0001

*Jaszczyszyn v. Sunpower Corp.*,
2024 U.S. Dist. LEXIS 126193 (N.D. Cal. July 17, 2024) ............................... 12

*Jui-Yang Hong v. Extreme Networks, Inc.*,
2017 U.S. Dist. LEXIS 64297 (N.D. Cal. Apr. 27, 2017) ................................ 14

*Knox v. Yingli Green Energy Holding Co.*,
242 F. Supp. 3d 950 (C.D. Cal. 2017) ................................................................. 13

*Lamontagne v. Tesla, Inc.*,
2024 U.S. Dist. LEXIS 178030 (N.D. Cal. Sept. 30, 2024) ............................... 12

*Lormand v. US Unwired, Inc.*,
565 F.3d 228 (5th Cir. 2009) .............................................................................. 17

*N.Y. Hotel Trades Council v. Impax Labs., Inc.*,
843 Fed. App'x 27 (9th Cir. 2021) ..................................................................... 15

*Olkey v. Hyperion 1999 Term Trust, Inc.*,
98 F.3d 2 (2d Cir. 1996) ...................................................................................... 13

*Rasof v. Lyubovny*,
2023 U.S. Dist. LEXIS 232210 (C.D. Cal. Nov. 20, 2023) ............................... 20

*In re SolarCity Corp. Sec. Litig.*,
274 F. Supp. 3d 972 (N.D. Cal. 2017) ................................................................ 14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007). ........................................................................................... 19

**Statutes**

Federal Rules of Civil Procedure, Rule 9 ........................................................... 5, 18

Private Securities Litigation Reform Act ....................................................... *passim*

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-5-
TABLE OF AUTHORITIES
4922-3735-8135v12/107730-0001

## I.    INTRODUCTION

Although this Court granted leave to amend, the Second Amended Complaint (the "SAC") filed by Plaintiffs[1] does not address, let alone cure, the deficiencies that this Court identified in its order of December 12, 2024.  (Dkt. No. 122 (the "Order").)  The Opposition just repeats many of the arguments that this Court previously rejected.  Indeed, the SAC and Plaintiffs' Opposition largely remain the same with respect to Defendant Charles F. Cargile and the result therefore also should be the same – dismissal, this time with prejudice.

As an initial matter, there is no well-pled allegation that any statement of Cargile is false or misleading under Rule 9 of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act (the "PSLRA").  Cargile resigned as the CFO of Tattooed Chef, Inc. (the "Company") on April 15, 2021, just four months into the class period.  There is not a single allegation in the SAC even suggesting that the purported plot to incorrectly account for slotting fees existed before Cargile resigned, let alone that Cargile participated in or was aware of any such scheme.  Indeed, the Court held in the prior Order that there are no factual allegations supporting that Cargile knew of the alleged accounting scheme before his departure.  The SAC does not add any allegation to fix this fundamental defect.  The SAC therefore must fail against Cargile.

Cargile resigned before the issuance of the Company's 2021 financial statements that were eventually restated and that mainly form the basis for the SAC.  The Opposition again wrongly asserts that the 2020 annual report also was restated, but that is demonstrably false.  The 2020 financials were not restated; the restatement of the 2021 financial statements "revised" certain 2020 financial information contained therein to address errors that were expressly deemed "immaterial."  Critically, those revisions had nothing to do with Plaintiffs' theory

---

[1] Plaintiffs are:  Dinko Mihaylov, John Hancock, Shashank Bagul, John Spadaro, Mustapha Hotait, and Marco Starace.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT
4922-3735-8135v12/107730-0001

that slotting fees were mischaracterized as expenses instead of as deductions to revenue.

Only two of the challenged disclosures – the December 15, 2020 Investor Day Presentation and the 2020 annual report – were issued during Cargile's tenure. But Plaintiffs cannot demonstrate that any false statement was made in those disclosures because – again – Plaintiffs do not allege that the purported plan to incorrectly account for slotting fees was hatched before these disclosures were issued. The Opposition cites confidential witness allegations, but those allegations do not even mention Cargile and largely concern events that purportedly took place after he already had left the Company.

As for scienter, regarding the prior complaint, this Court noted that Cargile was not even mentioned in its section addressing scienter. The SAC still does not mention Cargile in that section and does not even allege that Cargile owned any Company securities. This Court previously held that Plaintiffs' allegation that Cargile resigned due to a disagreement over revenue recognition and expense classification, *i.e.*, slotting fees, created a compelling inference that Cargile did not have scienter to commit securities fraud. In an attempt to avoid the Court's holding, the SAC just omits this allegation regarding Cargile's resignation. But the law prevents Plaintiffs from ignoring their prior factual allegations when they prove inconvenient. Moreover, Plaintiffs' Opposition still relies upon this allegation from the prior complaint and the SAC and public disclosures still show that Cargile resigned before the 2021 financials were disclosed.

Plaintiffs provide no reason for the Court to depart from its prior Order with respect to Cargile. Consequently, Cargile respectfully requests that the Court dismiss the SAC with prejudice as to him.

REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT
4922-3735-8135v12/107730-0001

## II.    ARGUMENT

### A.    The SAC Still Fails To Allege Any Actionable Misrepresentation By Cargile.

Despite amending their complaint twice, Plaintiffs have not meaningfully changed any of their allegations regarding Cargile.  Indeed, the Opposition basically is unchanged from the previous round of briefing – Plaintiffs have made no attempt to cure the many pleading defects that the Court and Cargile previously identified.  Cargile's Motion to Dismiss (Dkt. No. 128 (the "Motion")) highlighted the few purported misrepresentations made during Cargile's brief service as the Company's CFO.  (*See generally* Mot.)  Namely, the only challenged statements that can be attributable to Cargile are from the December 2020 Investor Day Presentation and the Company's 2020 Annual Report on Form 10-K, because he did not sign or participate in the other alleged misrepresentations at issue.  It is black letter law that a defendant cannot be liable for statements he did not make or approve.  (Mot. at 9 (citing *Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 141 (2011).)

In response, Plaintiffs conflate the statements attributable to Cargile with those made after he resigned.  For example, the Opposition makes the sweeping statement that Cargile "signed the false and misleading financial reports at issue." (Opp'n at 1.)  But that statement is demonstrably false, especially given that the crux of Plaintiffs' case relies on the Company's restatement of its 2021 financial statements (which Cargile did not sign). (*See, e.g.*, Opp'n at 1 (referencing "the accounting scheme that required [TCI] to restate its financial statements, and eventually brought it into bankruptcy").)  The Opposition similarly asserts that Cargile "was directly involved in the scheme." (*Id.* at 1; *see also id.* at 3.)  But none of the Opposition's citations for this bald assertion contain any factual allegations showing that the purported scheme existed before Cargile resigned, let alone Cargile's involvement.  (FAC ¶ 13 (alleging Cargile was CFO), ¶ 19

-8-

REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT
4922-3735-8135v12/107730-0001

(conclusory legal contention), ¶ 38 (alleging Cargile signed December 15, 2020 8-K with Investor Day Presentation that was not restated), ¶ 45 (alleging projections made in December 2020 Investor Presentation), ¶ 47 (conclusory legal contention), ¶ 56 (alleging Cargile signed 2020 Annual Report that was not restated) & ¶ 64 (alleging Cargile resigned before 2021 financials – which were restated – were released).)

As set forth in the Motion, none of the CWs mention Cargile. Only CW-3 even overlapped with Cargile's Company tenure, by only a single month. (Mot. at 19.) Citing Paragraph 137, the Opposition wrongly asserts that CW-3 "shared Cargile's knowledge of [the Company's] liquidity problems." (Opp'n at 14.) But Paragraph 137 does not even mention Cargile and instead expressly alleges that CW-3 "had frequent interactions with Defendants Sam Galletti and Dieckmann," Cargile's successor. (SAC ¶ 137.) Citing Paragraphs 73 and 75 of the SAC, the Opposition argues Cargile learned of the supposed plan through CW-1 and the Audit Committee. (Opp'n at 10, 14.) But Paragraph 73 again actually states that CW-1 reported to Dieckmann and *not* Cargile. (SAC ¶ 73 (CW-1 "directly reported to Defendant Dieckmann … at least nine material weaknesses [in the Company's internal controls]").) Paragraph 75 alleges that CW-1 informed the Audit Committee (not Cargile) that a restatement was necessary. (SAC ¶ 75.) The SAC does not allege that this Audit Committee meeting took place before the December 2020 Investor Day Presentation, that Cargile attended that meeting, or that CW-1 or the Audit Committee informed Cargile. This of course makes sense because Cargile resigned from the Company more than a year before the restatement was issued. (SAC ¶¶ 12, 64.)

Indeed, Plaintiffs' separate Opposition to the Company's and other individual defendants' motion to dismiss (the "TCI's Motion") *acknowledges* the alleged scheme did not begin until 2021, *i.e.*, after the challenged disclosures issued during Cargile's tenure:

-9-

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

4922-3735-8135v12/107730-0001

**But during 2021** the Individual Defendants faced a problem: they had promised very large promotions, slotting fees, and discounts to customers to convince them to buy TCI's products. And because GAAP required such expenses to be accounted for as reductions to revenue, correctly accounting for the costs would torpedo Defendants' high-growth narrative. ¶ 104. **Thus, Defendants embarked on a scheme** to book more amounts of revenue than warranted and misclassify the slotting and promotional fees as operational expenses instead of reductions to revenue[.]

(Dkt. No. 137 at 9 (emphasis added).)

Plaintiffs cannot avoid the obvious; the only statements for which Cargile is responsible are the December 2020 Investor Day Presentation and the 2020 Annual Report, both of which took place before Plaintiffs even allege the purported scheme to misclassify slotting fees was hatched.  As set forth in the Motion and below, these statements therefore cannot be misleading under the PSLRA's exacting pleading standards.

> **1.    The December 2020 Investor Day Presentation Statements Regarding Historic Revenues Are Not Actionable.**
>
> > **a.    Plaintiffs Concede The Accuracy Of The Company's Statement That Its Historic Revenues Were Achieved Without Marketing Promotion Expenditures.**

The Motion highlighted that the SAC's alleged misrepresentation that the Company had achieved revenue growth with "[n]o spending on marketing promotion" is in fact accurate.  (Mot. at 11-12.)  In response, Plaintiffs concede they allege no facts showing this historic statement was inaccurate.  (Opp'n at 6.)

> > **b.    The Company Disclosed That It Would Incur Future Marketing Promotion Expenses In The Investor Day Presentation.**

Forced to concede this statement regarding the lack of historic marketing promotion spending was true, the Opposition nevertheless asserts it was misleading because it "gives the impression that TCI would be able to continue its explosive growth, both in revenue and branded sales, without 'spending on marketing

STRADLING YOCCA CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT
4922-3735-8135v12/107730-0001

promotion.'" (Opp'n at 6.)  But as explained in the Motion, the Company disclosed *in the very next bullet point* of that presentation that it would embark on a marketing campaign in the coming year:  "We expect significant benefit from marketing efforts in 2021 and beyond."  (*See* Mot. at 11.)  Indeed, the Opposition even acknowledges that the Company "told the analysts that the Company would launch its first advertising campaign in 2021…." (Opp'n at 5.)  That comparison was the obvious point of this disclosure – the Company had managed to grow historically without marketing promotion expenditures and it hoped to grow even more in the future now that it was preparing to launch a marketing campaign.  Plaintiffs' attempt to sow confusion by ignoring the context of the actual statements from the presentation is unavailing.  (Mot. at 12 (citing, *e.g.*, *In re Finjan Holdings, Inc. Sec. Litig.*, 58 F.4th 1048, 1052 n.1 (9th Cir. 2023)) ("where a complaint incorrectly summarizes or characterizes a legally operative document attached to the complaint, incorporated by reference in the complaint, or subject to judicial notice, the document itself is controlling") (internal citations omitted).)

In its Prospectus released the month before the December 2020 Investor Day Presentation, the Company described in detail that planned 2021 marketing campaign.  (Dkt. 128-2 ID #2691.)  Contrary to Plaintiffs' assertion that these disclosures "say nothing about the accounting treatment of slotting fees" (Opp'n at 7), the Company specifically disclosed that it would incur slotting fees and the accounting treatment for those slotting fees:

> We anticipate that *marketing expenditures* will primarily be on product demonstration allowances, *slotting fees* (as we expand into conventional retail grocery stores), and other similar in-store marketing costs, which we believe will be effective. *Some of these expenses will be categorized as deductions to revenue under GAAP as opposed to marketing expense.*

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-11-
REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT
4922-3735-8135v12/107730-0001

(Dkt. 128-2 ID #2691 (emphasis added).)[2]

In short, the Company did not mislead shareholders into believing it would continue to increase revenues without marketing promotion expenditures. Instead, the Company clearly disclosed that it intended to incur marketing promotion expenses in the coming year.

### c. Plaintiffs' Argument That The December 2020 Investor Day Presentation Gives Investors A False Impression About A Future Event Fails For Multiple Reasons.

The Opposition reiterates the flawed theory that the Company misled investors by disclosing in the Investor Day Presentation that it "expect[s] significant benefits from marketing efforts in 2021 and beyond." (Opp'n at 6.) The Opposition theorizes that, at the time of the December 2020 Investor Day Presentation, Defendants knew that the "expect[ed] significant benefit" of the Company's future "marketing efforts" would not be realized because "to comply with GAAP, the *upcoming* significant slotting fees and in-store promotion fees would have to be deducted from revenue." (*Id.* (emphasis added).)

This statement is forward-looking about the Company's expectations for its future marketing campaign and therefore protected under the PSLRA's safe harbor. (*See* Section II.A.2, *infra*.) Quoting the Ninth Circuit's decision in *In re Facebook, Inc. Sec. Litig.*, Plaintiffs assert the Company's prediction of significant benefits from its future marketing campaign "create[d] an impression of a state of affairs that differ[ed] in a material way from the one that actually exist[ed]." 87 F.4th 934, 950 (9th Cir. 2023) (cited in Opp'n at 6:22-25). In *Facebook*, however, the company warned that security breaches and improper third-party access to user

---

[2] Another substantively identical disclosure appeared earlier in the Prospectus. (Dkt. No. 128-2 ID #2659.) The Company's 10-K from March 2021 also contained the same disclosures. (Dkt. No. 128-4 ID #2915 & ID #2929.)

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT
4922-3735-8135v12/107730-0001

data "could harm" its business, but the company failed to disclose that a data breach already had occurred and user data had already been improperly harvested. 87 F.4th at 949-50.  The Ninth Circuit concluded: "The problem is that Facebook represented the risk . . . as purely hypothetical when that exact risk had already transpired.  A reasonable investor reading the 10-K would have understood the risk of a third party accessing and utilizing Facebook user data improperly to be merely conjectural." *Id.* at 949.

Here, in contrast, the marketing expenses at issue had not yet been incurred – they were "***upcoming***" with the Company's planned 2021 marketing campaign. (*See* Opp'n at 6 (emphasis added).)  Plaintiffs point to no allegation suggesting that the Company had already incurred promotional expenses or slotting fees ***and*** incorrectly accounted for them as of the date of the presentation or even that the Company adopted the supposed scheme as of the date of the presentation (and Cargile was aware of the plot).  (*See* Opp'n *passim*.)  The *Facebook* decision does not apply to events that have not yet taken place.  *See, e.g., Jaszczyszyn v. Sunpower Corp.*, 2024 U.S. Dist. LEXIS 126193, at *21 (N.D. Cal. July 17, 2024) (rejecting argument premised on *Facebook* because plaintiff failed to allege facts demonstrating that risk disclosed as hypothetical had already materialized); *Lamontagne v. Tesla, Inc.*, 2024 U.S. Dist. LEXIS 178030, at *21 (N.D. Cal. Sept. 30, 2024) (finding no falsity because plaintiff "failed to point to allegations showing that the risk that the FSD technology could not be achieved by the projected timeline had 'already come to fruition'"); *Cullen v. Ryvyl Inc.*, 2024 U.S. Dist. LEXIS 36420, at *29 (S.D. Cal. Mar. 1, 2024) (finding no falsity because plaintiff failed to allege risk had occurred before disclosures at issue).

Plaintiffs essentially are arguing that Cargile should be held liable for failing to predict how successful the upcoming marketing campaign would be — for failing to disclose that future revenues created by this upcoming marketing campaign would be less than anticipated and outweighed by the need to deduct

-13-

slotting fees from those revenues.[3]  Courts repeatedly have rejected such attempts to hold defendants liable for failing to "predict the future."  *Knox v. Yingli Green Energy Holding Co.*, 242 F. Supp. 3d 950, 963 (C.D. Cal. 2017) ("Section 10(b) does not require that companies predict the future, and thus '[a] plaintiff may not plead 'fraud by hindsight'; *i.e.*, a complaint 'may not simply contrast a defendant's past optimism with less favorable actual results' in support of a claim of securities fraud.") (quoting *ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 62 (1st Cir. 2008)); *see, e.g.*, *Olkey v. Hyperion 1999 Term Trust, Inc.*, 98 F.3d 2, 7-8 (2d Cir. 1996) (finding allegations that prospectus concealed risk of loss was improper fraud-by-hindsight claim that defendants predicted market less skillfully than plaintiffs would have liked); *In re CIT Grp., Inc.*, 349 F. Supp. 2d 685, 689 (S.D.N.Y. 2004) (finding hindsight allegation that reserves were inadequate "is nothing more than an assertion that [issuer] was incorrect or unskillful in determining exactly what amount of reserves would be adequate").

Moreover, these statements of corporate optimism are not even actionable, as explained in TCI's Motion (which Cargile joined).  (Dkt. No. 129-1 at 10.)  The Company's stated expectation of a "significant benefit" is the type of optimistic statement that is not capable of objective verification and therefore is inactionable puffery.  *See, e.g.*, *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111 (9th Cir. 2010) (finding company's description of its relations with employees as "good" was a "mildly optimistic, subjective assessment [that] hardly amounts to a securities violation"); *In re SolarCity Corp. Sec. Litig.*, 274 F. Supp. 3d 972, 995 (N.D. Cal.

---

[3] Plaintiffs' argument assumes a hypothetical world in which the 2021 marketing campaign did not result in a "significant benefit" to the Company.  In fact, the Company achieved revenues of $148,492,000 in 2020 and $207,994,000 in 2021, *i.e.*, a revenue increase of $59,502,000.  (*Compare* Mason Dec., Ex. 3 (Dkt. No. 128-4 at ID # 2934) *with id.*, Ex. 4 (Dkt. No. 128-5 at ID # 3017).)  Therefore, even if Defendants were responsible for correctly predicting the future (which they were not), Defendants accurately predicted "significant benefits from marketing efforts in 2021 and beyond."

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT
4922-3735-8135v12/107730-0001

2017) (statements that "'demand in California'" for company's products was "'as strong as ever'; in the northeast, demand 'gained significant steam'; and in Rhode Island and New Hampshire, SolarCity 'gained early traction'" were "general and vague . . . nonactionable statements of corporate optimism"); *Jui-Yang Hong v. Extreme Networks, Inc.*, 2017 U.S. Dist. LEXIS 64297, at *37 (N.D. Cal. Apr. 27, 2017) ("statements that the acquisition is expected to be immediately accretive . . . and would produce significant value, are non-actionable").

### 2.    The Challenged Revenue Projections From The December 2020 Investor Day Presentation Are Protected By The PSLRA Safe Harbor.

The revenue projections from the December 2020 Investor Day Presentation are forward-looking estimates of future financial performance, protected under the PSLRA's safe harbor.  (Mot. at 13.)  The Opposition asserts that the projections "were 'not accompanied by any meaningful cautionary statements.'"  (Opp'n at 8 (citing SAC ¶ 45 n.9).)  However, Plaintiffs ignore that the projections were accompanied by two, separate sets of cautionary statements:  (1) in the Form 8-K that published the projections and (2) at the beginning of the Investor Day slide deck.  (Mot. at 13 citing Form 8-K at 1; *id.*, Ex. 99.1, Slide 2.)  The Opposition still fails to analyze these cautionary statements, but instead just baldly characterizes them as generic.  (Opp'n at 9.)

Cautionary language satisfies the PSLRA's safe harbor when it discloses "important factors that could cause actual results to differ materially from those in the forward-looking statement."  (Mot. at 13 (citing 15 U.S.C. § 78u-5(c)(1)(A)(i)).)  Here, the Company explained that results could differ from the projections due to, among other things, "competition and the ability of the business to grow and manage growth profitably; the ability to meet Nasdaq's listing requirements; costs related to its recent business combination; [and] anticipated

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT
4922-3735-8135v12/107730-0001

increased costs associated with its transition to a public company." (Dkt. No. 128-3 at ID # 2885; *id.* at ID # 2887.)

A company need not be clairvoyant for cautionary language to satisfy the PSLRA. Instead, safe harbor protection applies if cautionary statements sufficiently inform shareholders that actual results may differ. *See Golub v. Gigamon Inc.*, 372 F. Supp. 3d 1033, 1050 (N.D. Cal. 2019) (collecting cases). The Company's cautionary language is substantially similar to cautionary statements that courts repeatedly have found adequate. (Mot. at 13 (citing authority).)

The Opposition entirely ignores the authority from the Motion. Instead, Plaintiffs cite decisions that do not analyze cautionary language at all; each case cited by Plaintiffs concerned defendants that knew forward-looking statements were based upon inaccurate information. (Opp'n at 9.) For example, in *In re CV Therapeutics, Inc. Sec. Litig.*, the court found that the challenged statements were not forward-looking and, even if they were, the statement about prospects for FDA approval was contrary to known facts. 2004 U.S. Dist. LEXIS 17419, at *33-34 (N.D. Cal. Aug. 5, 2004). *See N.Y. Hotel Trades Council v. Impax Labs., Inc.*, 843 Fed. App'x 27, 32 (9th Cir. 2021) (cited by Plaintiffs; complaint alleged defendants knew medicine's past revenues were inaccurately represented); *In re InterMune, Inc. Sec. Litig.*, 2004 U.S. Dist. LEXIS 15382, at *13-15 (N.D. Cal. July 30, 2004) (cited by Plaintiffs; complaint alleged defendants knew statements concerning patient estimates were inaccurate).

Attempting to fit into that inapposite authority, the Opposition argues the Company's projections were somehow based upon the purported accounting scheme. (Opp'n at 8-9.) But the SAC, like the FAC, does not allege any decision or even a conversation about improperly classifying slotting fees ***before*** the December 2020 Investor Day presentation, or, more critically, that Cargile was aware of any such decision or conversation. (Mot. at 12; *see supra* at Sec. II.A.)

-16-

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT
4922-3735-8135v12/107730-0001

The Opposition attacks these cautionary statements by pointing to Cargile's April 2021 resignation, but that took place months *after* the December 2020 Investor Day Presentation.

Indeed, Plaintiffs' theory is implausible.  The Opposition fails to address that the Prospectus from November 2020 and the 2020 Annual Report both disclosed that the Company may incur slotting fees as part of its future marketing campaign and that such fees may correctly "be categorized as net deductions to revenue under GAAP as opposed to marketing expense."  (Mot. at 10 (citing Prospectus at 24); *see also id.* at 5 (citing 2020 Form 10-K at 29).)  The Company's actual disclosures therefore demonstrate that there was no scheme to misreport slotting fees during Cargile's tenure.  (Mot. at 10.)

### 3. The Financial Statements In The 2020 Annual Report Were Not Restated.

As set forth in the Motion, the SAC's challenge to the financial statements in the 2020 Annual Report fails for two reasons.  First, the 2020 financial statements were not "restated."  Instead, the restatement of the 2021 financial statements "revised" certain 2020 financial information contained therein for "immaterial" corrections.  (Mot. at 15 (citing Form 10-K/A at F-9).)  Second, those "revisions" were *not* corrections to the accounting treatment for slotting fees, but instead unrelated reclassifications of inventory and prepaid operating expenses.  (Mot. at 16 (citing Form 10-K/A at F-9).)

Despite having a second bite at the apple, the Opposition still does not address this glaring deficiency except in a footnote.  (Opp'n at 12 n. 7.)  Instead of addressing the true contents of the Form 10-K/A, that footnote only contends factual disputes cannot be resolved at the pleading stage.  (*Id.*)  But there is no factual dispute – the Form 10-K/A simply does not say what Plaintiffs allege.  Because the SAC incorporates by reference the Form 10-K/A, the true contents of

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-17-
REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT
4922-3735-8135v12/107730-0001

that document control.  (Mot. at 16 (citing, *e.g.*, *In re Finjan Holdings, Inc. Sec. Litig.*, 58 F.4th 1048, 1052 n.1 (9th Cir. 2023)).)[4]

### 4.    The SAC Alleges No Facts Supporting The Falsity Of The 2020 Annual Report's Statements Regarding Internal Controls.

As the Motion highlighted, the SAC, like the FAC, still does not identify any internal control weakness that the Company failed to disclose in the 2020 Annual Report.  (Mot. at 14-15.)  Citing paragraph 73 of the SAC, the Opposition incorrectly argues that CW-1 "directly reported to [Cargile] at least nine material weaknesses."  (Opp'n at 1.)  But the SAC specifically alleges that CW-1 reported to Cargile's successor, ***not Cargile***.  (SAC ¶ 73.)  Moreover, while the Opposition contends that nine weaknesses existed, the Opposition still fails to identify even one weakness that was not disclosed and also does not connect any such weakness to Plaintiffs' theory regarding improper accounting for slotting fees.  (Opp'n at 11.)

The Opposition also attacks as misleading the statement that the 2020 financial statements complied with GAAP.  However, there is no allegation that Cargile knew the 2020 financial statements did not comply with GAAP at the time the Company issued the annual report.  (Mot. at 14.)  The Opposition cites CW-2, but CW-2 started working at the Company approximately eight months ***after*** Cargile had already resigned.  (Opp'n at 11-12 (citing SAC ¶¶ 77-80).)  The Opposition then resorts to a general allegation that Cargile oversaw the Company's

---

[4] In the Opposition's cited authority, unlike here, a document incorporated by reference did not directly contradict a complaint's allegations.  (Opp'n at 12 n.7 (citing *In re Gilead Sec. Litig.*, 2005 U.S. Dist. LEXIS 46910, at *19 n.4. (N.D. Cal. Oct. 11, 2005)) (issue was "proper interpretation of the FDA's approval of Viread and Viread Package Labeling") & *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 267 (5th Cir. 2009) (no document incorporated by reference)).)

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT
4922-3735-8135v12/107730-0001

internal controls, but that general allegation does not show that Cargile knew that the financial statements did not comply with GAAP particularly under Rule 9 and the PSLRA.  (*See* Opp'n at 11 (citing SAC ¶ 19(e).)  As explained in Section II.A., the SAC simply makes no allegation supporting that Cargile had knowledge of any purported accounting fraud.[5]

### 5.    Cargile Is Not Responsible For Statements Made After His Resignation.

In a misguided attempt to save their case against Cargile, Plaintiffs attribute to Cargile Company statements from ***after*** he had already resigned.  But it is settled law that a defendant cannot be liable for statements he did not make or approve.  (Mot. at 9 (citing *Janus Capital Grp., Inc.* 564 U.S. at 141).)  Despite that settled law, the Opposition continues to falsely attribute the first quarter results reported in the Q1 2021 Form 10-Q to Cargile.  (Opp'n at 11.)  Citing paragraph 68 of the SAC, the Opposition asserts that those "financial results [were] reviewed and approved by Cargile before his resignation." (*Id.*)  But Paragraph 68 does not allege Cargile approved that 2021 quarterly financial report.  It does not even mention Cargile.  Indeed, the SAC alleges the opposite – that Cargile had already resigned.  (SAC ¶ 64.)  In fact, the Opposition's contention is contrary to Plaintiffs' prior binding allegation that Cargile resigned rather than approve the first quarter results.  (*See* Section II.B.1.)

---

[5] The SAC continues to challenge the 2020 Annual Report's statement that there were no changes to internal controls, but the latest Opposition abandoned this theory just as Plaintiffs' previous briefing did.  (Mot. at 15; Opp'n *passim*.)  Plaintiffs did not heed the Court's suggestion that a "thoughtful pruning may be in order." (Order at 5.)  Instead, the SAC again asserts allegations that Plaintiffs implicitly conceded were not accurate during the first round of motion practice.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT
4922-3735-8135v12/107730-0001

**B.      The SAC Fails To Meet Its Burden Of Alleging Cargile Had Scienter To Commit Securities Fraud.**

**1.      The Court Previously Held That Cargile Resigned In A "Stand on Principles," Which Created A Compelling Inference That Cargile Did Not Have Scienter To Commit Securities Fraud.**

The FAC previously alleged that Cargile resigned due to a disagreement with the Company's proposed accounting policies, including "revenue recognition [and] classification and timing of expenses." (Mot. at 19 (citing FAC ¶ 65; *see also* FAC ¶¶ 64, 66-69).) The Court aptly termed this a "stand on principles," which supported a cogent and compelling competing inference that Cargile did not have scienter to commit securities fraud under *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308 (2007). (Mot. at 19 (citing Order at 11).)

Plaintiffs cannot simply disregard their prior factual allegation in an amended complaint when it becomes inconvenient, certainly not without any explanation. (Mot. at 19 (SAC ¶ 65 & citing authority).) Yet, the SAC provides no explanation at all for why Plaintiffs left this allegation out of the SAC. The Opposition does not address the case law cited by Cargile in support of the principle that Plaintiffs cannot ignore their prior factual allegation. Indeed, this Court reaffirmed this principle just recently. *See First Call Int'l, Inc. v. S&B Glob., Inc.,* 2024 U.S. Dist. LEXIS 119437 at *15, 20-21, 27-28 (C. D. Cal. July 5, 2024) (Wu, J.) (dismissing complaint in part because the Court "may consider Plaintiff's earlier allegation" even though the plaintiff left it out of the operative complaint).

Instead, in a footnote, the Opposition cites *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 398-99 (1987), for the unremarkable proposition that "the plaintiff is the master of the complaint." (Opp'n 14 at n.8.) The Supreme Court did not consider omitted allegations in amended pleadings in *Caterpillar*. 482 U.S. at 399. The

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-20-

REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT
4922-3735-8135v12/107730-0001

Opposition also cites *Austin v. Univ. of Or.*, 925 F.3d 1133, 1137 (9th Cir. 2019), but that case likewise has nothing to do with omitted allegations.  925 F.3d at 1137-38.  Plaintiffs simply have offered no basis at all for ignoring the allegation from their FAC.  Plaintiffs therefore are bound by the FAC's allegation that Cargile resigned in protest.

Indeed, the Opposition still relies upon that allegation from the FAC to make its arguments:  "Plaintiffs allege that 'a significant reason for the delay in filing the Form 10-Q … was the disagreement between the Company and its former CFO Cargile about accounting practices, including issues surrounding revenue recognition and the classification and timing of expenses."  (Opp'n at 10 (citing ¶ 67).)  That specific allegation is not in Paragraph 67 of the SAC, but instead the abandoned portion of Paragraph 67 from the FAC.  (*Compare* SAC ¶ 67 *with* FAC ¶ 67.)  Plaintiffs cannot have it both ways; they cannot rely upon this allegation themselves while denying Cargile the ability to rely upon this same allegation. *See, e.g.*, *Gospel Missions of Am. v. City of L.A.*, 328 F.3d 548, 557 (9th Cir. 2003) ("We have discretion to consider a statement made in briefs to be a judicial admission;" exercising discretion to find claim preclusion based upon statements in briefs and at oral argument relied upon by plaintiffs); *Rasof v. Lyubovny*, 2023 U.S. Dist. LEXIS 232210, at *16 (C.D. Cal. Nov. 20, 2023) (dismissing claims as untimely based upon judicial admission in plaintiff's brief opposing motion to dismiss); *Gaxiola v. City of L.A.*, 2011 U.S. Dist. LEXIS 112958, at *55 n.30 (C.D. Cal. Aug. 30, 2011) (same).

Even if Plaintiffs could disregard their prior factual allegation, the Motion explains that the SAC still supports the same inference – that Cargile resigned ***before*** the Company issued its first quarter results for 2021 that Plaintiffs allege incorrectly account for slotting fees.  (Mot. at 20 (SAC ¶¶ 64, 65, 68).)  The SAC therefore still supports the competing inference that Cargile resigned, rather than certify the (later restated) quarterly financial results.  (Mot. at 20.)

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT
4922-3735-8135v12/107730-0001

**2.      Plaintiffs Plead No Facts Supporting That Cargile Had Scienter To Commit Securities Fraud.**

**a.      Plaintiffs Do Not Plead Factual Allegations Supporting That Cargile Even Was Aware Of The Alleged Accounting Scheme.**

Plaintiffs do not dispute that it is their burden to allege particularized facts showing Cargile individually had scienter to commit securities fraud.  (Mot. at 18 (citing, *e.g.*, *Mendoza v. HF Foods Grp., Inc.*, 2021 U.S. Dist. LEXIS 160982, at *23-24 (C.D. Cal. Aug. 25, 2021)).)  This Court previously noted that the FAC contained an entire section devoted to scienter that never once mentioned Cargile (Order at 10); the SAC still contains an entire section devoted to scienter that never mentions Cargile (SAC 166-77).  Indeed, the SAC does not contain a single allegation suggesting that Cargile even had any knowledge of the purported scheme to misclassify slotting fees, let alone that he participated in such a scheme. (*See above* Section II.A.)

As set forth in the Motion, there is no allegation that Cargile owned any Company securities or otherwise had any economic motive to commit fraud.  (Mot. at 20-21.)  The Opposition does not dispute this fact.  (*See* Opp'n *passim*.)

This Court already found that Cargile's resignation defeated Plaintiffs' argument that Cargile had "the sufficient securities fraud state-of-mind out of concern over his career and reputation." (Order at 11 n.10.)  Ignoring the Court's prior Order, the Opposition just repeats this same failed argument that Sam Galletti controlled Cargile because Cargile was scared for his job.  (Opp'n at 14; *see also* Dkt. No. 115 at 12.)[6]  But the Opposition cannot and does not dispute the import of

---

[6] The Opposition cites Paragraph 33 for support.  (Opp'n at 14.)  However, that paragraph contains only an innocuous allegation that the Company had a small leadership team with Sam Galletti at the helm; it does not even purport to allege that Galletti controlled Cargile.  (SAC ¶ 33.)

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-22-

4922-3735-8135v12/107730-0001

Cargile's resignation – it shows that his employment was not important enough to him to commit any purported fraud to save his job.

**b.      Plaintiffs Have Not Added Any Allegations To Change This Court's Prior Conclusion That The Core Product Theory Is Inapplicable.**

The Order rejected application of the core product doctrine because accounting errors are not part of a company's core product or operations.  (Mot. at 21 (citing Order at 10).)  The SAC and now Opposition do not address the Court's express holding.  (*See* Opp'n *passim*.)

Additionally, the Opposition does not refute that the Company actually had separate branded and private label product lines, distinct distribution channels (big box and retail grocery stores), and internal divisions for the different product lines (and multiple products within each product line).  (Mot. at 21 (citing SAC ¶¶ 35-37).)  These Company characteristics also defeat application of the core product doctrine.

The Opposition once again claims that it would be "absurd" for Cargile not to know about the allege scheme.  (Opp'n at 13.)  However, the Motion highlighted that the Company publicly stated during Cargile's tenure in both the Prospectus and 2020 Annual Report that it intended to ***correctly*** account for slotting fees as deductions to revenue.  (Prospectus at 24; *see also* 10-K at 8 & 29.)  There is nothing absurd about Cargile expecting the Company to correctly account for slotting fees as disclosed during his tenure.  (Mot. at 21 (citing, *e.g.*, *City of Hollywood Firefighters Pension Fund*, 2024 U.S. Dist. LEXIS 144335, at *31-32 (N.D. Cal. Aug. 13, 2024) (although particular product constituted 90% of business, finding no fact of such prominence that it would be absurd for defendants to be unaware); *Axonic Capital LLC v. Gateway One Lending*, 2018 U.S. Dist. LEXIS 244609, *45-46 (C.D. Cal. Dec. 18, 2018) (rejecting plaintiffs' absurdity argument)).)

REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT
4922-3735-8135v12/107730-0001

Finally and most fundamentally, the core products doctrine is based upon a group's knowledge of a shared scheme. (Mot. at 22 (citing *S. Ferry LP v. Killinger*, 542 F.3d 776, 784–85 (9th Cir. 2008).) But the SAC does not allege any facts supporting that the supposed scheme existed as of the Investor Day Presentation or the 2020 Annual Report (or ever). (*See* Section II.A.) Without such allegations, it simply does not matter if Cargile can be held responsible for the group's knowledge during his tenure at the Company.

***

The SAC fails to assert well-plead factual allegations regarding Cargile as required to satisfy the PSLRA's requirement to show a "strong inference" of scienter. On the other hand, Cargile's resignation demonstrates a competing, nonculpable inference that is far more compelling.

**C.     The Section 20(a) Claim Fails.**

With the absence of a predicate violation of Section 10(b), the Section 20(a) claim fails as a matter of law. (Mot. at 22.)

The Opposition argues that Cargile along with others controlled the Company. (Opp'n at 15 (citing SAC ¶¶ 19, 34, 108, 188, 198).) Contrary to Plaintiffs' contention, Cargile addressed this argument in his Motion. (Mot. at 22.) More importantly, none of the Opposition's cited allegations support this theory. Paragraph 19 is a general, conclusory group-pled allegation without any specific factual basis suggesting any control by Cargile. (SAC ¶ 19.) Paragraph 34 does not mention Cargile; the allegation pertains to Sam and Sarah Galletti. (SAC ¶ 34.) Paragraph 108 is a general allegation that Cargile and his successor served as CFOs for the Company. (SAC ¶ 108.) Paragraphs 188 and 198 do not mention Cargile; Paragraph 188 is a pure legal contention and Paragraph 198 merely reincorporates prior allegations. (SAC ¶¶ 188, 198.) Indeed, the Opposition (wrongly) argues that Sam Galletti controlled Cargile, which means Cargile could not be a control person. (*See* Opp'n at 14.) Plaintiffs cannot have it both ways.

REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT
4922-3735-8135v12/107730-0001

**D.    Dismissal Should Be With Prejudice.**

The Court gave Plaintiffs leave because "the Court cannot at this time rule out the possibility that Plaintiffs have not learned more about the alleged issues addressed in the FAC since the filing of the FAC or even since the time they filed their oppositions to the three motions." (Order at 2.)  Yet, Plaintiffs did not add any allegations as to Cargile.  Indeed, the Opposition almost entirely excerpts from the previous round of briefing, despite the Court identifying many infirmities with Plaintiffs' pleading.

Dismissal with prejudice of the claims against Cargile is now appropriate. (Mot. at 23 (citing *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1072 (9th Cir. 2008) (affirming dismissal of securities fraud complaint with prejudice because plaintiff failed to cure deficiencies that trial court previously identified) & *Coady v. Indymac Bancorp, Inc.*, 2012 U.S. Dist. LEXIS 196211, at *9 (C.D. Cal. Jun. 6, 2012) (dismissing securities fraud claim with prejudice where plaintiff amended complaint without correcting defects identified by court)).)

**III.    CONCLUSION**

For the foregoing reasons and those set forth in the Motions, Defendant Cargile respectfully requests that the Court dismiss the SAC as to him with prejudice.

DATED:  May 12, 2025          STRADLING YOCCA CARLSON & RAUTH LLP


By: _____
          Marc J. Schneider
          Stephen L. Ram
          Andrew B. Mason
          Michael B. Mosher
     Attorneys for Defendant
     Charles F. Cargile

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-25-

REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT
4922-3735-8135v12/107730-0001

**CERTIFICATION RE L.R. 11-6.1**

The undersigned, counsel of record for Defendant Charles F. Cargile certifies that this brief contains 6,114 words, which complies with the word limit of L.R. 11-6.1.

_____
Marc J. Schneider

REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

4922-3735-8135v12/107730-0001